A-3740

REVISED: 12/1/09

FIRST: BRIAN
LAST: PFAIL
MR#: 000000923907
ACC#: 90442906
DOB: ████████ I: HMT

 orth **Transitions**
shore**LIJ** of Long Island®

*1554 NORTHERN BOULEVARD, MANHASSET, NEW YORK 11030*
*Phone: 516-719-3700          Fax: 516-365-4748*

## PSYCHOLOGY & REHAB COUNSELING SUPERBILL AND PROGRESS NOTE

Date: 07/27/2012

Client Name: Pfail, Brian
Diagnosis: Major Depression, Recurrent, Moderate (296.32)
Therapist Name (print): Rosanne Pachilakis, Psy.D.

Date of Birth: ████████
Date of Onset: ████████
Pt. Acct #:

Insurance Carrier:    ☐ Medicare          ☐ Medicaid          ☐ Commercial

| CHARGE CODE | MODALITY | CPT/HCPCS | ENTER TIME |
|---|---|---|---|
| | NOTE: H&B Codes are not accepted for all insurances: VERIFY first. | | |
| 2908000 | HEALTH&BEHAV ASSESS,EA 15M;INIT : *MEDICAL DX ONLY* | 96150 | |
| 2908001 | HEALTH&BEHAV EA 15 M;RE-ASSESS *MEDICAL DX ONLY* | 96151 | |
| 2908002 | HEALTH&BEHAV INTR,EA 15M,INDIV *MEDICAL DX ONLY* | 96152 | |
| 2908003 | HEALTH&BEHAV INTRVN;EA 15M;GRP *MEDICAL DX ONLY* | 96153 | |
| 2908004 | HEALTH&BEHV INT;EA15M;FAM W/PT *MEDICAL DX ONLY* | 96154 | |
| 2908006 | PSYCH DIAGNOSTIC INTERVIEW EXAM *PSYCH DX ONLY* | 90801 | ▓▓▓ |
| 2908007 | INDIV PSYCHTHERPY 20-30 MIN *PSYCH DX ONLY* | 90804 | |
| 2908008 | INDIV PSYCHTHERPY 45-50 MIN *PSYCH DX ONLY* | 90806 | X |
| 2908009 | GROUP PSYCHOTHERAPY *PSYCH DX ONLY* | 90853 | |
| 2908010 | FAMILY PSYCHOTHERAPY (W/PAT) *PSYCH DX ONLY* | 90847 | ▓▓▓ |
| 2908012 | NEUROBEHAVIOR STATUS EXAM/HR *MEDICAL DX ONLY* | 96116 | |
| 2908013 | NEUROPSYCH TESTING/DOC,PER HR *MEDICAL DX ONLY* | 96118 | |
| 2908312 | NEUROPSYCH TEST/TECH, PER HR *MEDICAL DX ONLY* | 96119 | |
| 2908320 | NEUROPSYCH TEST/COMPUTER | 96120 | ▓▓▓ |
| 2908014 | ASSESS APHASIA W/INTER-REP/HR *MEDICAL DX ONLY* | 96105 | |
| 2908109 | DEV COGNITIVE SKILLS 1:1 EA 15: *ONLY W/ DX 310.0 & 310.8* | 97532 | |

TOTAL MIN.: _60 min_

Subjective: Mr. Pfail stated that he is not doing well.

Objective: Mr. Pfail indicated that he feels as if he is not motivated.

Assessment: Mr. Pfail appears to have personality aspects that suggest a self-sabotaging tendency as well as other personality aspects that serve as a barrier to his moving forward. This was presented to him and he was receptive. Discussion of motivation, personality and mood factors ensued and was beneficial in giving him a well-rounded perspective.

Plan: Continue weekly counseling sessions to address mood and to help foster positive coping strategies.

Therapist Signature: _____          Date: 7/27/12 /Start Time 2pm

A-3741

REVISED: 12/1/09

FIRST: BRIAN
LAST: PFAIL
MR#: 000000923907
ACC#: 90442906  I: HMT
DOB:

**North Shore LIJ** Transitions of Long Island®

*1554 NORTHERN BOULEVARD, MANHASSET, NEW YORK 11030*
Phone: 516-719-3700          Fax: 516-365-4748

## PSYCHOLOGY & REHAB COUNSELING SUPERBILL AND PROGRESS NOTE

Date: 08/02/2012

Client Name: Pfail, Brian

Diagnosis: Major Depression, Recurrent, Moderate (296.32)

Therapist Name (print): Rosanne Pachilakis, Psy.D.

Date of Birth:
Date of Onset:
Pt. Acct #:

Insurance Carrier: ☐ Medicare   ☐ Medicaid   ☐ Commercial

| CHARGE CODE | MODALITY | CPT/HCPCS | ENTER TIME |
|---|---|---|---|
| | NOTE: H&B Codes are not accepted for all insurances: VERIFY first. | | |
| 2908000 | HEALTH&BEHAV ASSESS,EA 15M;INIT : *MEDICAL DX ONLY* | 96150 | |
| 2908001 | HEALTH&BEHAV EA 15 M;RE-ASSESS *MEDICAL DX ONLY* | 96151 | |
| 2908002 | HEALTH&BEHAV INTR,EA 15M,INDIV *MEDICAL DX ONLY* | 96152 | |
| 2908003 | HEALTH&BEHAV INTRVN;EA 15M;GRP *MEDICAL DX ONLY* | 96153 | |
| 2908004 | HEALTH&BEHV INT;EA15M;FAM W/PT *MEDICAL DX ONLY* | 96154 | |
| 2908006 | PSYCH DIAGNOSTIC INTERVIEW EXAM: *PSYCH DX ONLY* | 90801 | ▓▓▓ |
| 2908007 | INDIV PSYCHTHERPY 20-30 MIN *PSYCH DX ONLY* | 90804 | ▓▓▓ |
| 2908008 | INDIV PSYCHTHERPY 45-50 MIN *PSYCH DX ONLY* | 90806 | X |
| 2908009 | GROUP PSYCHOTHERAPY *PSYCH DX ONLY* | 90853 | ▓▓▓ |
| 2908010 | FAMILY PSYCHOTHERAPY (W/PAT) *PSYCH DX ONLY* | 90847 | ▓▓▓ |
| 2908012 | NEUROBEHAVIOR STATUS EXAM/HR *MEDICAL DX ONLY* | 96116 | |
| 2908013 | NEUROPSYCH TESTING/DOC,PER HR *MEDICAL DX ONLY* | 96118 | |
| 2908312 | NEUROPSYCH TEST/TECH, PER HR *MEDICAL DX ONLY* | 96119 | |
| 2908320 | NEUROPSYCH TEST/COMPUTER | 96120 | ▓▓▓ |
| 2908014 | ASSESS APHASIA W/INTER-REP/HR *MEDICAL DX ONLY* | 96105 | |
| 2908109 | DEV COGNITIVE SKILLS 1:1 EA 15: *ONLY W/ DX 310.0 & 310.8* | 97532 | |

TOTAL MIN.: _60 min_

Subjective:    Mr. Pfail stated that he is taking an online calculus class.

Objective:    Mr. Pfail discussed the free math class he is taking and how he is trying to do well despite chronic shoulder pain.

Assessment:   Mr. Pfail is focused on his pain and his mood symptoms. Support was given and strategies to maximize his study efforts were reviewed.

Plan:  Continue weekly counseling sessions to address mood and to help foster positive coping strategies.

Therapist Signature: _____    Date: 8/2/12    /Start Time: 3pm

GRIX                                                        524

A-3742

REVISED: 12/1/09

FIRST: BRIAN
LAST: PFAIL
MR#: 000000923907
ACC#: 90442906
DOB: ▮▮▮▮▮▮ I: HMT

*irth*
*hore LIJ* **Transitions**
*of Long Island®*

OULEVARD, MANHASSET, NEW YORK 11030
Phone: 516-719-3700          Fax: 516-365-4748

## PSYCHOLOGY & REHAB COUNSELING SUPERBILL AND PROGRESS NOTE

Date: 08/17/2012

Client Name: Pfail, Brian
Diagnosis: Major Depression, Recurrent, Moderate (296.32)
Therapist Name (print): Rosanne Pachilakis, Psy.D.

Date of Birth: ▮▮▮▮▮
Date of Onset: 04/09/2007
Pt. Acct #:

Insurance Carrier:   ☐ Medicare        ☐ Medicaid        ☐ Commercial

| CHARGE CODE | MODALITY | CPT/HCPCS | ENTER TIME |
|---|---|---|---|
| | NOTE: H&B Codes are not accepted for all insurances: VERIFY first. | | |
| 2908000 | HEALTH&BEHAV ASSESS,EA 15M;INIT : *MEDICAL DX ONLY* | 96150 | |
| 2908001 | HEALTH&BEHAV EA 15 M;RE-ASSESS *MEDICAL DX ONLY* | 96151 | |
| 2908002 | HEALTH&BEHAV INTR,EA 15M,INDIV *MEDICAL DX ONLY* | 96152 | |
| 2908003 | HEALTH&BEHAV INTRVN;EA 15M;GRP *MEDICAL DX ONLY* | 96153 | |
| 2908004 | HEALTH&BEHV INT;EA15M;FAM W/PT *MEDICAL DX ONLY* | 96154 | |
| 2908006 | PSYCH DIAGNOSTIC INTERVIEW EXAM; *PSYCH DX ONLY* | 90801 | ▮▮▮ |
| 2908007 | INDIV PSYCHTHERPY 20-30 MIN *PSYCH DX ONLY* | 90804 | ▮▮▮ |
| 2908008 | INDIV PSYCHTHERPY 45-50 MIN *PSYCH DX ONLY* | 90806 | X |
| 2908009 | GROUP PSYCHOTHERAPY *PSYCH DX ONLY* | 90853 | ▮▮▮ |
| 2908010 | FAMILY PSYCHOTHERAPY (W/PAT) *PSYCH DX ONLY* | 90847 | ▮▮▮ |
| 2908012 | NEUROBEHAVIOR STATUS EXAM/HR *MEDICAL DX ONLY* | 96116 | |
| 2908013 | NEUROPSYCH TESTING/DOC,PER HR *MEDICAL DX ONLY* | 96118 | |
| 2908312 | NEUROPSYCH TEST/TECH, PER HR *MEDICAL DX ONLY* | 96119 | |
| 2908320 | NEUROPSYCH TEST/COMPUTER | 96120 | ▮▮▮ |
| 2908014 | ASSESS APHASIA W/INTER-REP/HR *MEDICAL DX ONLY* | 96105 | |
| 2908109 | DEV COGNITIVE SKILLS 1:1 EA 15: *ONLY W/ DX 310.0 & 310.8* | 97532 | |

TOTAL MIN.:   _60 min _

Subjective: ___ Mr. Pfail stated that he would like the undersigned to speak with the staff at Villanova.

Objective: ___ Mr. Pfail indicated that he is trying to work with advisors at Villanova and he is getting some resistance.

Assessment: ___ Mr. Pfail was focused on some comments that were made to him about not being a "good student." Re-focusing him to the more pertinent issue of trying to meet the requirements in order to resume college courses. He has made numerous calls to the undersigned and sent an email yesterday. The level of attention that he is requiring at this time was discussed with him. Discussed the appropriateness of discharge within the upcoming month in order to establish more long-term counseling within the community. Client was receptive. PHI release was signed by the client to allow communication between Villanova and the undersigned.

Plan: ___ Continue weekly counseling sessions to address mood and to help foster positive coping strategies. **Plan for discharge next month.**

Therapist Signature: _____          8/17/12 Date: ___ /Start Time: 12pm

GRIX

525

A-3743

REVISED: 12/1/09

FIRST: BRIAN
LAST: PFAIL
MR#: 000000923907
ACC#: 90442906
DOB: ███████ 989 I: HMT

*brth*
*hore LIJ* **Transitions**
*of Long Island®*

.OULEVARD, MANHASSET, NEW YORK 11030
*Phone: 516-719-3700          Fax: 516-365-4748*

## PSYCHOLOGY & REHAB COUNSELING SUPERBILL AND PROGRESS NOTE

Date: 08/31/2012

Client Name: Pfail, Brian
Diagnosis: Major Depression, Recurrent, Moderate (296.32)
Therapist Name (print): Rosanne Pachilakis, Psy.D.

Date of Birth: ███████ 9
Date of Onset: ███████
Pt. Acct #: _____

Insurance Carrier:          ☐ Medicare          ☐ Medicaid          ☐ Commercial

| CHARGE CODE | MODALITY | CPT/HCPCS | ENTER TIME |
|---|---|---|---|
| | NOTE: H&B Codes are not accepted for all insurances: VERIFY first. | | |
| 2908000 | HEALTH&BEHAV ASSESS,EA 15M;INIT : *MEDICAL DX ONLY* | 96150 | |
| 2908001 | HEALTH&BEHAV EA 15 M;RE-ASSESS *MEDICAL DX ONLY* | 96151 | |
| 2908002 | HEALTH&BEHAV INTR,EA 15M,INDIV *MEDICAL DX ONLY* | 96152 | |
| 2908003 | HEALTH&BEHAV INTRVN;EA 15M;GRP *MEDICAL DX ONLY* | 96153 | |
| 2908004 | HEALTH&BEHV INT;EA15M;FAM W/PT *MEDICAL DX ONLY* | 96154 | |
| 2908006 | PSYCH DIAGNOSTIC INTERVIEW EXAM: *PSYCH DX ONLY* | 90801 | ████ |
| 2908007 | INDIV PSYCHTHERPY 20-30 MIN *PSYCH DX ONLY* | 90804 | ████ |
| 2908008 | INDIV PSYCHTHERPY 45-50 MIN *PSYCH DX ONLY* | 90806 | X ███ |
| 2908009 | GROUP PSYCHOTHERAPY *PSYCH DX ONLY* | 90853 | ████ |
| 2908010 | FAMILY PSYCHOTHERAPY (W/PAT) *PSYCH DX ONLY* | 90847 | ████ |
| 2908012 | NEUROBEHAVIOR STATUS EXAM/HR *MEDICAL DX ONLY* | 96116 | |
| 2908013 | NEUROPSYCH TESTING/DOC,PER HR *MEDICAL DX ONLY* | 96118 | |
| 2908312 | NEUROPSYCH TEST/TECH, PER HR *MEDICAL DX ONLY* | 96119 | |
| 2908320 | NEUROPSYCH TEST/COMPUTER | 96120 | ████ |
| 2908014 | ASSESS APHASIA W/INTER-REP/HR *MEDICAL DX ONLY* | 96105 | |
| 2908109 | DEV COGNITIVE SKILLS 1:1 EA 15: *ONLY W/ DX 310.0 & 310.8* | 97532 | |

TOTAL MIN.: _60 min_

**Subjective:** Mr. Pfail stated that he does not know if he wants to return to counseling.

**Objective:** Mr. Pfail indicated that he was thinking that since he is being discharged soon that he may not want to come back and he almost didn't.

**Assessment:** Mr. Pfail was angry and he remained silent for at least 10 minutes during the session. He appeared angry and possible is reacting to his pending discharge from these sessions. He did not want to speak about many topics and when he did speak, he did so with a sarcastic tone. He abruptly left the session about 5 minutes early and stated that he wanted to leave.

**Plan:** Client was encouraged to return for several more sessions in order to prepare for pending discharge and transfer to another psychologist within the community for long-term counseling. **Plan for discharge next month.**

Therapist Signature: _____          Date: 8/31/12 /Start Time: 10 05 am

A-3744

REVISED: 12/1/09

FIRST: BRIAN
LAST: PFAIL
MR#: 000000923907
        00442906

**th oreLIJ** Transitions of Long Island®

NORTHERN BOULEVARD, MANHASSET, NEW YORK 11030
Phone: 516-719-3700          Fax: 516-365-4748

## PSYCHOLOGY & REHAB COUNSELING SUPERBILL AND PROGRESS NOTE

Date: 09/14/2012

Client Name: Pfail, Brian
Diagnosis: Major Depression, Recurrent, Moderate (296.32)
Therapist Name (print): Rosanne Pachilakis, Psy.D.

Date of Birth: ▮▮▮▮
Date of Onset: 04/09/2007
Pt. Acct #:

Insurance Carrier: ☐ Medicare   ☐ Medicaid   ☐ Commercial

| CHARGE CODE | MODALITY | CPT/HCPCS | ENTER TIME |
|---|---|---|---|
| | NOTE: H&B Codes are not accepted for all insurances: VERIFY first. | | |
| 2908000 | HEALTH&BEHAV ASSESS,EA 15M;INIT : *MEDICAL DX ONLY* | 96150 | |
| 2908001 | HEALTH&BEHAV EA 15 M;RE-ASSESS *MEDICAL DX ONLY* | 96151 | |
| 2908002 | HEALTH&BEHAV INTR,EA 15M,INDIV *MEDICAL DX ONLY* | 96152 | |
| 2908003 | HEALTH&BEHAV INTRVN;EA 15M;GRP *MEDICAL DX ONLY* | 96153 | |
| 2908004 | HEALTH&BEHV INT;EA15M;FAM W/PT *MEDICAL DX ONLY* | 96154 | |
| 2908006 | PSYCH DIAGNOSTIC INTERVIEW EXAM: *PSYCH DX ONLY* | 90801 | |
| 2908007 | INDIV PSYCHOTHERPY 20-30 MIN *PSYCH DX ONLY* | 90804 | |
| 2908008 | INDIV PSYCHOTHERPY 45-50 MIN *PSYCH DX ONLY* | 90806 | X |
| 2908009 | GROUP PSYCHOTHERAPY *PSYCH DX ONLY* | 90853 | |
| 2908010 | FAMILY PSYCHOTHERAPY (W/PAT) *PSYCH DX ONLY* | 90847 | |
| 2908012 | NEUROBEHAVIOR STATUS EXAM/HR *MEDICAL DX ONLY* | 96116 | |
| 2908013 | NEUROPSYCH TESTING/DOC,PER HR *MEDICAL DX ONLY* | 96118 | |
| 2908312 | NEUROPSYCH TEST/TECH, PER HR *MEDICAL DX ONLY* | 96119 | |
| 2908320 | NEUROPSYCH TEST/COMPUTER | 96120 | |
| 2908014 | ASSESS APHASIA W/INTER-REP/HR *MEDICAL DX ONLY* | 96105 | |
| 2908109 | DEV COGNITIVE SKILLS 1:1 EA 15: *ONLY W/ DX 310.0 & 310.8* | 97532 | |

TOTAL MIN.: _45 min_

Subjective: Mr. Pfail stated that he got a "B" on his sociology assignment.

Objective: Mr. Pfail discussed how his college courses at Adelphi have been going and some difficulties he is having with the communication between him and the professor.

Assessment: Mr. Pfail was talkative and his mood was more euthymic than in the last session. He is looking for a therapist as a next step and he wants to avoid Zucker Hillside because of the memories associated with his former treatment.

Plan: Prepare client for discharge.

Therapist Signature: _____

Date: 9/14/12          /Start Time: 2 pm

GRIX                                    527

A-3745

REVISED: 12/1/09

FIRST: BRIAN
LAST: PFAIL
MR#: 000000923907
ACC#: 90442906
DOB: 89 I: HMT


North Shore LIJ Transitions of Long Island®

1334 NORTHERN BOULEVARD, MANHASSET, NEW YORK 11030
Phone: 516-719-3700          Fax: 516-365-4748

## PSYCHOLOGY & REHAB COUNSELING SUPERBILL AND PROGRESS NOTE

Date: 09/27/2012

Client Name: Pfail, Brian
Diagnosis: Major Depression, Recurrent, Moderate (296.32)
Therapist Name (print): Rosanne Pachilakis, Psy.D.

Date of Birth: ▉
Date of Onset: ▉
Pt. Acct #: _____

Insurance Carrier:      ☐ Medicare      ☐ Medicaid      ☐ Commercial

| CHARGE CODE | MODALITY | CPT/HCPCS | ENTER TIME |
|---|---|---|---|
| | NOTE: H&B Codes are not accepted for all insurances: VERIFY first. | | |
| 2908000 | HEALTH&BEHAV ASSESS,EA 15M;INIT : *MEDICAL DX ONLY* | 96150 | |
| 2908001 | HEALTH&BEHAV EA 15 M;RE-ASSESS *MEDICAL DX ONLY* | 96151 | |
| 2908002 | HEALTH&BEHAV INTR,EA 15M,INDIV *MEDICAL DX ONLY* | 96152 | |
| 2908003 | HEALTH&BEHAV INTRVN;EA 15M;GRP *MEDICAL DX ONLY* | 96153 | |
| 2908004 | HEALTH&BEHV INT;EA15M;FAM W/PT *MEDICAL DX ONLY* | 96154 | |
| 2908006 | PSYCH DIAGNOSTIC INTERVIEW EXAM: *PSYCH DX ONLY* | 90801 | ▉ |
| 2908007 | INDIV PSYCHTHERPY 20-30 MIN *PSYCH DX ONLY* | 90804 | ▉ |
| 2908008 | INDIV PSYCHTHERPY 45-50 MIN *PSYCH DX ONLY* | 90806 | X |
| 2908009 | GROUP PSYCHOTHERAPY *PSYCH DX ONLY* | 90853 | ▉ |
| 2908010 | FAMILY PSYCHOTHERAPY (W/PAT) *PSYCH DX ONLY* | 90847 | ▉ |
| 2908012 | NEUROBEHAVIOR STATUS EXAM/HR *MEDICAL DX ONLY* | 96116 | |
| 2908013 | NEUROPSYCH TESTING/DOC,PER HR *MEDICAL DX ONLY* | 96118 | |
| 2908312 | NEUROPSYCH TEST/TECH, PER HR *MEDICAL DX ONLY* | 96119 | |
| 2908320 | NEUROPSYCH TEST/COMPUTER | 96120 | ▉ |
| 2908014 | ASSESS APHASIA W/INTER-REP/HR *MEDICAL DX ONLY* | 96105 | |
| 2908109 | DEV COGNITIVE SKILLS 1:1 EA 15: *ONLY W/ DX 310.0 & 310.8* | 97532 | |

TOTAL MIN.:  _45 min _

**Subjective:** Mr. Pfail stated that he has not selected another psychologist yet.

**Objective:** Mr. Pfail discussed some recent events at college and at home that have caused him stress.

**Assessment:** Mr. Pfail was encouraged to make an appointment with a new therapist. He was given approximately six weeks notice and two names were provided to him, which he decided not to use. He also is under the care of a psychiatrist and was encouraged to contact his psychiatrist regularly for additional support. Lastly, he was also told that he could continue to reach out to the undersigned and/or come in for an extra support session if needed until he is able to resume counseling services with his next therapist.

**Plan:** Client is discharged from counseling at this time. Client will follow-up with his neuropsychiatrist and is working towards establishing a new psychotherapist to work with.

Therapist Signature: _____     Date: 9/27/12 /Start Time: 2¹⁵ ___

A-3746

# AUTHORIZATION FORM (HIPAA)
## Authorization for Disclosure of Protected Health Information

Name of Patient: _BRIAN PFAIL_

1. I authorize the healthcare practitioner _GAD KLEIN, Ph.D._

_____(the 'Practitioner") and/or the administrative and clinical staff of the Practitioner to disclose my protected health information, as specified below, to :

MAUREEN C. GRIX PhD
233 SEVENTH ST. SUITE 200
GARDEN CITY, NY 11530

2. I am hereby authorizing the disclosure of the following protected health information:

NEUROPSYCHOLOGICAL EVALUATION REPORTS
+/OR
ALL RECORDS PERTAINING TO THE PATIENT

3. This protected health information is being used or disclosed for the following purposes:

AT THE REQUEST OF THE PATIENT

4. This authorization shall be in force and effect until one (1) year after the date below at which time this authorization to disclose protected health information shall expire.

5. I understand that I have the right to revoke this authorization, in writing, at any time by sending such written notification to the Practitioner at the address above. I understand that a revocation is not effective to the extent that the Practitioner has relied on my authorization or if my authorization was obtained as a condition of obtaining insurance coverage and the insurer has a legal right to contest a claim.

6. I understand that information disclosed pursuant to this authorization may be disclosed by the recipient and may no longer be protected by HIPAA or any other federal or state law.

7. The Practitioner will not condition my treatment on whether I provide an authorization for disclosure except if health care services are provided to me solely for the purpose of creating protected health information for disclosure to a third party.

_____          _7/18/18_
Signature of Patient, or Parent of Minor Patient,          Date
or Personal Representative of Patient


_____
Print Name of Patient, Parent of Minor Patient
or Personal Representative of Patient (If a Personal
Representative, also state relationship to patient.)

A-3747



# Neurological Surgery, P.C.

100 Merrick Road • Suite 128W • Rockville Centre, NY 11570 • (516) 255-9031 • Fax (516) 255-6010

www.nspc.com • (855) 263-0000

**NEUROSURGERY**

STEPHEN D. BURSTEIN, M.D.
MICHAEL H. BRISMAN, M.D.
WILLIAM J. SONSTEIN, M.D.
JEFFREY A. BROWN, M.D.
BENJAMIN R. COHEN, M.D.
ARTEM Y. VAYNMAN, M.D.
LEE ERIC TESSLER, M.D.
JONATHAN L. BRISMAN, M.D.
RAMIN RAK, M.D.
ALAN MECHANIC, M.D.
DONALD S. KRIEFF, D.O.
‌. J. SNYDER, M.D.
L‌. ‌BETH TRINIDAD, M.D.
MIHAI D. DIMANCESCU, M.D.
ROBERT N. HOLTZMAN, M.D.
STEPHEN T. ONESTI, M.D.
MATTHEW B. KERN, M.D.
SACHIN N. SHAH, M.D.
VLADIMIR Y. DADASHEV, M.D.
JOHN A. GRANT, M.D.
ZACHARIAH M. GEORGE, M.D.
GERALD M. ZUPRUK, M.D.

**ENDOVASCULAR NEURORADIOLOGY**

JOHN PILE-SPELLMAN, M.D.

**NEURO-ONCOLOGY**

‌AUL DUIC, M.D.
‌GREWAL, M.D.

**NEURO-OPHTHALMOLOGY**

SCOTT URETSKY, M.D.

**EPILEPSY NEUROLOGY**

ALAN ETTINGER, M.D.

**PAIN MANAGEMENT**

MADAN K. RAJ, M.D.

**CRITICAL CARE NEUROLOGY**

IVAN MIKOLAENKO, M.D.

**NEUROPHYSIOLOGY**

JOSEPH MOREIRA, M.D.
MARAT AVSHALUMOV, Ph. D.

**NEUROPSYCHOLOGY**

GAD KLEIN, Ph. D.

## NEUROPSYCHOLOGICAL REPORT

Patient: Brian Pfail
Age: 22
Date of Consult: September 13, 2012
Date of Birth: █████████
Referral Source: Alan Ettinger, M.D.

**REFERRAL:** Mr. Pfail is a 22-year-old left-handed male with a psychiatric history and possible seizure history as well. The current evaluation is part of a larger neurologic evaluation to determine his current cognitive status.

## HISTORY & BACKGROUND:

The following information was obtained from Mr. Pfail and his mother. Mr. Pfail was struck in the head on April 9, 2007, while coming to the aid of a friend who was involved in a fight. According to his prior neuropsychological evaluation, his first memory prior to being hit was punching someone else during the fight and his initial memory after the injury was seeing his mother and friend at the hospital approximately one day later. Again obtained from the prior neuropsychological evaluation (August 2008) according to a witness, Mr. Pfail had been knocked over and was kicked in the head several times. He was then taken to Winthrop Hospital where he presented with confusion and disorientation and remained at the hospital for three days. A week later, he was seen by Dr. Vijaya Atluru who diagnosed him with concussion and performed a CT which was negative at that time.

Full history can be obtained from his prior neuropsychological evaluation; however, Mr. Pfail was in and out of college at Villanova University with multiple psychiatric issues. This occurred throughout the years of 2008 and 2009, and at the time was being followed by a psychiatrist here and near Villanova University. He states in 2009, he was on "a lot of meds" and was not functioning well. In 2009, he tried to overdose on Wellbutrin and was brought to Winthrop Hospital. He states that again in 2010, he tried to overdose on Ativan and possibly pain killers and was once again brought to the hospital. Mr. Pfail eventually underwent ECT treatments and according to both he and his mother, underwent approximately 48 to 50 treatments over the course of a little over a year. They state that the last treatment was approximately one year ago and he states that this treatment was helping his depression. Currently, he is being treated by Dr. Adarsh Gupta and he states that his depression is significantly improved.

| 600 Northern Boulevard Suite 113 Great Neck, NY 11021 (516) 478-0008 FAX (516) 478-0013 | 255 East 77th Street New York NY 10021 (646) 370-6211 FAX (646) 370-6115 | 353 Veterans Memorial Highway Suite 305 Commack, NY 11725 (631) 864-3900 FAX (631) 864-2954 | 500 Montauk Highway Suite K West Islip, NY 11795 (631) 983-2400 FAX (631) 983-8403 | 112-03 Queens Boulevard Suite 300 Forest Hills, NY 11375 (718) 263-1414 FAX (718) 261-1416 | 1991 Marcus Avenue Suite 108 Lake Success, NY 11042 (516) 442-2250 FAX (516) 442-2251 | 55 Medford Avenue/Rte. 112 Suite E Patchogue, NY 11772 (631) 569-9325 FAX (631) 569-8333 | 1500-8A Route 112 Port Jefferson Station NY 11776 (631) 828-5001 FAX (631) 828-3901 | 4230 Hempstead Turnp. Suite 205 Bethpage NY 11714 (516) 605-3720 FAX (516) 605-2726 |

A-3748

Pfail, Brian 09/13/12

Despite the fact that he is endorsing significantly less depressive symptomatology, he is still endorsing intermittent depressive symptomatology. He also states that he is tensed, irritable, and anxious. He had been seeing Dr. Rosanne Pachilakis for therapy; however, he states that she had told him that she was recommending him to go elsewhere for therapy at this time.

Mr. Pfail was not endorsing any significant cognitive symptoms until he began his ECT treatments. He states that his memory functions progressively worsened during his treatments and has stayed poor. This is causing him significant problems at school, forgetfulness at home, and forgetfulness during conversations and where he placed objects. He is also endorsing some word finding difficulties and some difficulties with conceptualization which is also bothersome in school.

Mr. Pfail's seizure history is somewhat unclear. He apparently has not had any clear evidenced seizure episodes, but does endorse what he describes as "deep personalization" incidents. He describes these as perhaps being "déjà vu," but these no longer occur. Recent EEG at Winthrop University Hospital noted right temporal spikes, but no seizure episodes.

Developmentally, Mr. Pfail was an honor student at Chaminade School and there is no history of learning disability or ADHD.

Medical history is otherwise unremarkable. Surgical history is also otherwise unremarkable. Psychiatric history and developmental history are as stated above. He does not currently smoke nor does he drink alcohol. Current medications include Effexor, Xanax, Depakote, vitamin D, fish oil, Ambien, and Vicodin as needed. Mr. Pfail is currently living with his family in Garden City, New York.

**BEHAVIORAL OBSERVATIONS:**
Mr. Pfail was evaluated as an outpatient at Neurological Surgery, P.C. He was alert and oriented. Psychomotor activity was intact. His speech was fluent and grammatical and normal in rate, volume, and prosody. Comprehension appeared intact and there are no word finding difficulties noted spontaneously. Mr. Pfail made minimal eye contact through most of the interview and testing sessions; however, when spoken directly to, he did make eye contact. Both he and his mother were somewhat poor historians and the dates of the history were somewhat vague and needed to be checked from prior medical charts.
Mr. Pfail also demonstrated some emotional lability during the testing session, at certain points laughing or tearing for no apparent reason. He is denying any hallucinations or delusions at this time. Thought processes were coherent and goal-oriented. He is denying any suicidal ideation at this time. Mr. Pfail appeared to be trying his best on all his tasks and the current evaluation should be considered to be a valid estimate of his overall level of cognitive function.

GRIX                                                                       531

A-3749

Pfail, Brian 09/13/12

*TESTS ADMINISTERED*:
*Wechsler Adult Intelligence Scale-IV (selected subtests); Wechsler Test of Adult Reading; Delis-Kaplan Executive Functioning Scale (selected subtests); California Verbal Learning Test (Second Edition); Rey–Osterrieth Complex Figure Test; Oral Trail Making Test; Boston Naming Test; Controlled Oral Word Association; Semantic Fluency (animals); Rey 15-Item Test; Grooved Pegboard Test; Nelson-Denny Reading Test; Beck Depression Inventory; Beck Anxiety Inventory; and Clinical Interview.*

**RESULTS:**
General Cognitive Functioning: An estimate of Mr. Pfail's premorbid intellectual functioning fell in the average range.

Attention & Executive Functions: Mr. Pfail's performance on a simple auditory attention task fell in the low average range while his performance on a slightly more complex task of working memory fell in the average range. Rapid numeric sequencing fell in the borderline range. Cognitive processing speed as measured by rapid color naming and rapid word reading generally fell in the average range. His performance on tasks of graphomotor cognitive processing speed fell in the average range.

Mr. Pfail's ability to rapidly shift cognitive set while sequencing in alternation to a well-learned alphanumeric series was impaired. His ability to rapidly inhibit his responses in the face of competing salient stimulus characteristics fell in the average range; however, he showed some weakness in his ability to rapidly shift cognitive set while rapidly inhibiting his responses. His performance on a task of phonemic verbal fluency fell at the very low end of the low average range.

Learning and Memory: Mr. Pfail's ability to learn a supraspan word list presented over serial trials fell in the average range. His ability to recall a brief distractor list also fell in the high average range. His ability to recall the initial learned material after a brief and longer distraction-filled delay both fell in the average range. His ability to recognize this information similarly fell in the average range.

Language Functions: Mr. Pfail's performance on a formal task of visual confrontation naming fell in the low average range. His performance on a task of semantic verbal fluency fell in the average range.

Mr. Pfail's performance on a reading comprehension task fell in the average range. However, his reading rate as measured on the same task fell in the borderline range.

A-3750

Pfail, Brian 09/13/12

<u>Visuospatial and Motor Functions</u>: Mr. Pfail's performance on a complex visuospatial construction task fell in the superior range. His recall of this same material fell in the average range. Mr. Pfail's performance on a task of fine motor speed and dexterity fell in the high average range with his dominant left hand and in the average range with his nondominant right hand.

<u>Mood</u>: Mr. Pfail completed two self-report inventories of emotional distress. He is endorsing moderate symptoms of anxiety and severe depressive symptomatology at this time. However, despite his high endorsements, he states that these symptoms are significantly reduced from what they were prior to his going to see Dr. Gupta.

**SUMMARY:**
Mr. Pfail is a 22-year-old left-handed male with a history of concussive injury, possible seizure episodes, and a long-standing psychiatric history. An estimate of his premorbid intellectual functioning fell in the average range. The results of the current neuropsychological evaluation reveal weaknesses in the domain of executive functioning as well as in reading rate. These findings are consistent with his prior evaluation. However, his performance in all other cognitive domains was generally intact and this seems to be a significant improvement from his prior neuropsychological evaluation.

**IMPRESSIONS AND RECOMMENDATIONS:**
Overall, despite Mr. Pfail's subjective reports of memory difficulty, his performance on the current neuropsychological evaluation was generally intact. It is certainly possible that his repeated ECT treatments have caused a subjective change in his day to day memory function that is not easily detected by the current formal neuropsychological evaluation. Additionally, his overall cognitive profile seems to have improved significantly from his prior evaluation; however, Mr. Pfail does continue to display weakness in the domain of executive functioning including rapid set shifting, phonemic fluency, and variable evidence of somewhat weaker processing speed. He is also presenting with slowed reading rate. However, at this time, given these findings, it is unclear as to whether these are lingering effects of his past concussive injury and are therefore consistent with his prior evaluation, or if these are the result of his current affective status as we know depression can result in both subjective feelings of, and measured evidence of cognitive dysfunction.

1) At this time, there are no clear localizing findings and certainly nothing that is consistent with his EEG findings of right temporal spikes.

2) Mr. Pfail is currently taking classes at Adelphi University. Given his past diagnosis and the results of the current neuropsychological findings, he is certainly entitled to accommodations under a Section 504 Plan and the Americans with Disabilities Act. These accommodations should include, but are not limited to for:
A. Extended time on testing (50%).
B. Distraction free test environment.
C. Note taker in class or access to the instructor's notes.

**A-3751**

Pfail, Brian 09/13/12

The appropriate office at Mr. Pfail's school should feel free to call this office if there are any specific questions.

3)      At this time, repeat neuropsychological evaluation is likely unnecessary.  However, if Mr. Pfail's affective status further stabilizes and he still notices cognitive difficulties, repeat neuropsychological evaluation may be warranted.  Certainly, if Mr. Pfail is ever to be considered possible epilepsy surgical candidate in the future, repeat evaluation is warranted at that time.

Thank you for your kind referral and for the opportunity to participate in the care of Mr. Pfail.  Please do not hesitate to contact this office at (516) 442-2250 with any questions you may have.

Gad Klein, Ph.D.
Neuropsychologist
Neurological Surgery, P.C.

GEK/gisl/tej/alb/092112/GEK10708-1

cc:      Alan Ettinger, M.D.

        Adarsh Gupta, M.D.

A-3752

2008

**BRIAN'S MEDICATIONS**

Morning:
Effexor – 150 mg. – 2 tablets
Xanax XR – 0.5 mg. – 1 tablet
Depakote – 500 mg. – 1 tablet
Fish Oil – 1000 mg. – 1 tablet
Vitamin D3 – 2000 I.U. – 1 tablet


Afternoon:
Depakote – 500 mg. – 1 tablet

Evening:
Xanax XR – 0.5 mg. – 1 tablet
Depakote –750 mg. – 1 tablet
Fish Oil – 1000 mg. – 1 tablet
Ambien - 12.5 mg. – 1 tablet

*Vicodin – 500 mg. – for physical therapy  3x/week

A-3753



**MOUNT SINAI**
**SCHOOL OF**
**MEDICINE**

Department of Rehabilitation Medicine

Wayne A. Gordon, Ph.D., A.B.P.P./Cn
Jack Nash Professor

Associate Director
Department of Rehabilitation Medicine

Director, Rehabilitation Psychology/
Neuropsychology Service

One Gustave L. Levy Place
Box 1240
New York, NY 10029-6574

Tel: 212.659.9372
Fax: 212.348.5901
E-mail: wayne.gordon@mssm.
Website: www.thisemira.org

## Neuropsychological Evaluation

**Name:** Brian Pfail

**Diagnosis:** Cognitive Disorder NOS
**Reason for Referral:** To determine the nature and extent of cognitive difficulties
**Referring Physician:** Douglas Detrick, M.D.
**Referral:** To determine the nature and extent of cognitive difficulties
**Dates of Evaluation:** 6/4/08, 6/17/08, 6/30/08, 7/2/08

**Tests Administered:**
Behavioral Assessment of Dysexecutive Syndrome (BADS)
Beck Anxiety Inventory (BAI)
Beck Depression Inventory (BDI)
Boston Naming Test (BNT)
Brain Injury Screening Questionnaire (BISQ)
California Verbal Learning Test- Second Edition (CVLT-II)
Conners' Continuous Performance Test (CCPT)
Controlled Oral Word Association Test (COWAT)
Frontal Systems Behavior Scale (Frsbe)
Grooved Pegboard Test (GP)
Hooper Visual Organization Test (HVOT)
Iowa Silent Reading Test, Level 2, Selected Subtests
Purdue Pegboard Test (PPT)
Rey 15-Item Memory Test
Rey-Osterrieth Complex Figure Test (Rey-O)
Trail Making Test (TMT), Parts A & B
Tinker Toy Test (TTT)
Structured Clinical Interview for DSM-IV Disorders (SCID)
Short Category Test (SCT)
Stroop Color Word Test (Stroop)
Watson Glaser: Critical Thinking Appraisal
Wechsler Adult Intelligence Scale- Third Edition (WAIS-III)
Wechsler Memory Scale-Third Edition (WMS-III)
Wechsler Test of Adult Reading (WTAR)
Wisconsin Card Sorting Test (WCST)
Woodcock Johnson Test of Cognitive Abilities (WJTC), Selected Subtests

A-3754

Neuropsychological Evaluation                                                            Brian Pfail
8/12/08 .                                                                                                     2

**Review of Medical Documents:**

- North Shore-Long Island Jewish Hospital- Zucker Hillside Evaluation Center DSM-IV Axis Diagnosis and Plan 12/17/2007-Deborah Kurre: Mr. Pfail presented to the Hillside Evaluation Center with a chief complaint of depressed mood and recent visual hallucinations. He was diagnosed with Major Depressive Disorder, Recurrent with a rule out of Psychotic Disorder NOS. He was given Zoloft 50 mg per day and Ativan .5 mg to take as needed for anxiety. It was recommended that he obtain a psychiatrist near Villanova for continued follow-up as well as an appointment with a neurologist for EEG testing and brain MRI.
- North Shore-Long Island Jewish Hospital- Zucker Hillside Evaluation Center General Progress Note 12/27/2007- Senada Bajmakovic-Kacila: On 12/27/2007, his mood was "neutral" and expressed some depressive symptoms. He had started taking Zoloft 50 mg/day, 10 days prior. He reported two days prior seeing something out of the corner of his eye, specifically, "something of a man's figure" for a split second. He reported that he took Ativan several times when he was feeling "down" and will continue to take it PRN if he experiences anxiety.
- North Shore-Long Island Jewish Hospital- Zucker Hillside Evaluation Center General Progress Note 1/7/2008- Senada Bajmakovic-Kacila: Mr. Pfail reported feeling better on Zoloft and had "more motivation to do things and doesn't wake up upset anymore". Mr. Pfail reported that he took Ativan 2 Mg 2-3 times since 12/27/2007 and that it worked well. He was instructed to increase Zoloft to 75 mg for the next 4 days.
- Winthrop Radiology Associates, ▮▮▮▮▮ An unenhanced MRI of the brain was within normal limits.

**Social and Medical History:**

Mr. Pfail was born and raised in Floral Park, New York. He graduated from Chaminade High School in 2007 with a GPA of 3.5 and received a score of 620 on the verbal and 640 on the math part of the SAT. He attended Villanova University from the fall of 2007 to spring of 2008 where he maintained a GPA of approximately 2.7 and was majoring in computer engineering.

Mr. Pfail is single and lives with his family in Garden City, New York.

He has no history of a learning disorder or psychiatric disorder. Mr. Pfail's past medical history consists of: mononucleosis in December 2006 and hitting his head on a steal beam while playing basketball at age, receiving stitches as a result.

Mr. Pfail has no significant history of substance use. Currently he uses alcohol approximately twice a week.

**Description of the Assault:**

Mr. Pfail was assaulted on April 9, 2007, while coming to the aid of a friend who was involved in a fight. Mr. Pfail's first memory prior to being hit was of punching someone during this altercation. Mr. Pfail's first memory after the assault was seeing his mother and friend at the hospital approximately one day later. Thus, the period of post traumatic

Neuropsychological Evaluation
8/12/08

Brian Pfail

3

amnesia was approximately one day. As reported by a witness to the event, Mr. Pfail had been knocked over and was kicked in the head several times. After the assault, a friend took Mr. Pfail to his home, during which Mr. Pfail's mother reported that she knew "something was wrong" due to him asking questions and appearing disoriented. Mr. Pfails's mother took him to the emergency room at Winthrop Hospital where he evidenced confusion and disorientation. He stayed at Winthrop Hospital for three days. A week after being discharged from the hospital, Mr. Pfail was seen by a neurologist, Dr. Atluru, who diagnosed him with a concussion and gave a CT scan which was deemed to be normal. Mr. Pfail returned to school after spring break and did not report experiencing symptoms at this time.

It is important to note, that Mr. Pfail experienced a number of incidents prior to this assault that resulted in psychiatric and cognitive seqeale. In the summer of 2007, Mr. Pfail's girlfriend ended their relationship after which he experienced depression. During Thanksgiving break in the fall of 2007, Mr. Pfail called a relationship hotline to which the police of his town responded, coming into his home and telling him to go outside. At this time, at least two cops pushed him to the ground and he hit the front of his head. He reported no loss of consciousness. He was taken to Nassau County Hospital at this time at the police's request to be evaluated due to a supposed threat to his ex-girlfriend that was heard during his conversation to the person on the relationship hotline. He returned to Villanova University the next day. A couple of months later, Mr. Pfail began to experience visual hallucinations that consisted of seeing a man in a trench coat asking him to follow him. This occurred approximately four times while he was at school. Mr. Pfail saw a psychologist within the university due to his concern about the hallucinations. At this time, the psychologist recommended that he leave school and return home. Upon return home, Mr. Pfail's mother took him to be evaluated at Hillside Evaluation Center on 12/17/2007. At the Hillside Evaluation Center, he was diagnosed with Major Depressive Disorder, Recurrent, with a rule out of Mood Disorder NOS and Psychotic Disorder NOS. Subsequently, he was given Zoloft and Lorazapam by Dr. Kacila and was given medical clearance to return to school. Visual hallucinations stopped after taking these prescribed medications.

During Christmas break of 2007, Mr. Pfail was involved in a fight with his brother resulting in him breaking his nose, however did not loose consciousness after this event. In February 2007, Mr. Pfail was involved in another fight in which a man threw "something" at his face, re-breaking his nose, however he did not report a loss of consciousness at this time.

Upon return to school after Christmas break, Mr. Pfail noticed that was sleeping through classes and that his memory declined. Additionally, he was having difficulty getting along with his roommate. A local psychiatrist changed his prescription from Lorazpam to Cloncpin, after which his memory improved slightly. When Mr. Pfail returned to school after Christmas break, he experienced numerous difficulties. On March 28, 2008 an incident occurred with Mr. Pfail and his girlfriend at that time, in which he put his hands around her neck in a "joking" fashion. Her roommate reported the incident to public safety and was subsequently reported to the dean. The dean met with Mr. Pfail

A-3756

Neuropsychological Evaluation
8/12/08

Brian Pfail
4

expressing that he was banned from going to her dorm and suggested he take a leave of absence from school. He did not take a leave of absence at this time and finished the spring semester. Additionally, at this time, he was accused of plagiarism by a professor of a seminar which Mr. Pfail reports was untrue. During this time, Mr. Pfail's grandfather died during this week, causing Mr. Pfail to experience depressive symptoms. Mr. Pfail finished the semester, however experienced sleep and memory difficulties throughout the remainder of the semester. As a result, his grades declined from the first semester.

Currently, Mr. Pfail is on summer break from Villanova and is working at the Gap. Mr. Pfail currently experiences some fatigue and cognitive problems including memory difficulties, specifically not recalling what people say and appointments.

On a 100- item self-report brain injury screening questionnaire (BISQ), Mr. Pfail endorsed 68/100 symptoms with the majority of his symptoms being cognitive in nature (68%). A recent publication[1] has demonstrated that there are 25 symptoms that are sensitive (likely to occur in those with a mild brain injury) and specific (unlikely to occur in those without a brain injury) in distinguishing individuals with mild traumatic brain injury from those with other disabilities and those without a brain injury. Mr. Pfail endorsed 16 of the symptoms, which suggests that his report of symptoms is similar to individuals with known TBI relative to those individuals without TBI and other disabilities.

| BISQ Items | | | | Total Endorsement |
|---|---|---|---|---|
| Physical (Max. = 19) | 3 | 2 | 8 | 19% 13/68 |
| Cognitive (Max. = 48) | 5 | 8 | 14 | 40% 27/68 |
| Behavioral (Max. = 33) | 13 | 8 | 7 | 41% 28/68 |
| Total of items endorsed | 21 | 18 | 29 | 68 |

16/25 sensitive and specific to TBI

**Behavioral Observations:**
Mr. Pfail was cooperative throughout testing and rapport was readily established. He displayed adequate prosody of speech and comprehended test instructions. Mr. Pfail ambulated with a steady gait. There was no evidence of hallucinations, delusions, or homicidal or suicidal ideation. His thought process was normal. He displayed adequate frustration tolerance during tasks that he expressed were difficult for him. There was no evidence of inadequate effort, lack of motivation or malingering during the evaluation (Rey-15 = 15/15 & TOMM= 49/50, 50/50). The current data is an accurate reflection of his current level of functioning.

---

[1] Gordon, W.A., Haddad, L. , Brown, M., Hibbard, M. & Sliwinski, M. (2000). The sensitivity and specificity of self-reported symptoms in individuals with traumatic brain injury. *Brain Injury*, 14 (1), 21-33.

A-3757

Neuropsychological Evaluation
8/12/08

Brian Pfail

5

Test Results:

Orientation:

Mr. Pfail was oriented to person, place and time (WMS-III: Orientation=14/14).

Motor Speed:

Mr. Pfail's motor speed is not consistent with his intellectual capacity. On a measure of gross motor speed (Purdue Pegboard), Mr. Pfail performed at the 27th percentile with his dominant hand and at the 16th percentile with his non-dominant hand. On a measure of fine motor speed (Grooved Pegboard), he performed at the 46th percentile with his dominant hand and at the 16th percentile with his non-dominant hand.

Information Processing Speed:

On a test of verbal processing speed, Mr. Pfail performed at the 31st percentile when stimuli were simple (Stroop: Word) and more complex (Stroop: Color). He performed at the 64th percentile on a task requiring him to identify two identical numbers in a row of six numbers (WJTC: Visual Match) and at the 32nd percentile on a task requiring him to cross out 5 replications of a stimuli in an array of 19 stimuli (WJTC: Cross Out). Similarly, he performed at the 21st percentile on a measure requiring him to connect numbers in a sequential order (TMT: Part A). Thus, his performance declined as complexity of the task increased.

Attention/Concentration:

On a timed task that required sustained and focused attention, Mr. Pfail performed within normal limits, suggesting no apparent attention difficulties. However, he displayed some impulsive response tendencies.

Visual Perception:

On a non-motor task requiring analysis and synthesis of fragmented visual information (Hopper Visual Organization Test), he performed in the 62nd percentile. His performance was within normal limits on a measure of his ability to copy complex figures (Rey-Copy). Thus, his visual perceptual abilities were within normal limits.

Language/Verbal Abilities:

Mr. Pfail had difficulties on linguistic tasks. Specifically, Mr. Pfail performed in the 31st percentile on a task requiring rapid generation of words that begin with specific letters (COWAT: FAS). On a confrontation naming task (BNT), Mr. Pfail performed at the 12th percentile. He performed at the 18th percentile on a task in which he had to generate more specific verbal information (COWAT: Animal Naming). Thus, his speed of retrieval declines with the specificity of the stimulus.

Mr. Pfail performed at the 15th percentile under standard conditions on a task of rapid processing of contextual information, relative to students attending a 4 year college (Iowa: Reading Efficiency-Level II). When given an additional 3 minutes and 40 seconds to complete the task, he performed at the 89th percentile. Thus, it took him 7 minutes to complete a task that should have been completed in 4 minutes. On a test of

A-3758

Neuropsychological Evaluation
8/12/08

Brian Pfail
6

reading comprehension, Mr. Pfail performed at the 57th percentile under standard conditions on a reading comprehension task, relative to students planning to attend a 4 year college (Iowa: Reading Comprehension- Level III).

General Intellectual Functioning:

On the WAIS-III, Mr. Pfail obtained a Full Scale IQ (FSIQ) of 115 (84th percentile), a Verbal IQ of 116 (86th percentile) and a Performance IQ of 111 (77th percentile). Index scores provide another way of looking at scores on the WAIS. His Index Scores on the WAIS-III were:

- Verbal Comprehension Index= 114 (82nd percentile; High Average range)
- Perceptual Organization Index= 118 (88th percentile; High Average range)
- Working Memory Index= 115 (84th percentile; High Average range)
- Processing Speed Index= 103 (58th percentile; Average range)

An examination of Mr. Pfail's WAIS-III Index Scores revealed that his Processing Speed score (103) was significantly lower than his Perceptual Organization score (118). Thus, the speed at which he processes information was significantly reduced relative to his ability to organize patterns of information (p<.05).

Mr. Pfail did not exhibit significant scatter on verbal subtests. His verbal subtest scores ranged from the 63rd percentile (Information) to the 91st percentile (Vocabulary). His remaining scores were at the 75th percentile (Comprehension & Letter-Number Sequencing), and the 84th percentile (Similarities, Arithmetic & Digit Span). Mr. Pfail did exhibit significant scatter on performance subtest scores. Mr. Pfail's scores on performance subtests ranged from the 37th percentile (Picture Completion) to the 98th percentile (Block Design). His remaining subtest scores were at the 50th percentile (Digit Symbol & Picture Arrangement), the 63rd percentile (Symbol Search) and the 91st percentile (Matrix Reasoning). He demonstrated a significant strength on a measure of visual-motor construction abilities (Block Design=16)

Memory & Learning:

On the WMS-III, Mr. Pfail obtained the following index scores:

Table 3. WMS-III Index Scores

| Index | Index Score | Percentile | Range |
|---|---|---|---|
| Auditory Immediate Memory | 117 | 87 | High Average |
| Visual Immediate Memory | 112 | 79 | High Average |
| Immediate Memory | 118 | 88 | High Average |
| Auditory Delayed Memory | 114 | 82 | High Average |
| Visual Delayed Memory | 112 | 79 | High Average |
| General Memory | 115 | 84 | High Average |
| Working Memory | 115 | 84 | High Average |

There was no variability among Mr. Pfail's memory index scores. Additionally, there were no significant differences between his memory functioning and intellectual functioning.

A-3759

Neuropsychological Evaluation
8/12/08.

Brian Pfail
7

On a verbal memory test in which he was given 5 trials to learn a list of 16 words (maximum= 80 words), Mr. Pfail was able to recall 62 of the words which was at the 88th percentile (CVLT-II: Trials 1-5). He was able to recall 7 words on the first trial and 13 words by the fifth trial (CVLT-II: Trial 1= 50th percentile; CVLT-II: Trial 5= 50th percentile). He was able to learn words within normal limits (CVLT Total Learning Slope Trials 1-5: 31st percentile).

On visual memory tasks, Mr. Pfail's encoding and recall of simple geometric figures was within normal limits. More specifically, on a measure of his ability to recall simple figures after immediate recall, he performed at the 75th percentile (WMS-III: Visual Reproduction I) and at the 91st percentile after a long delay (WMS-III: Visual Reproduction II). However, his performance declined when stimuli was more complex. More specifically, he performed at the 58th percentile after an immediate recall of a complex figure and at the 46th percentile after a delay (Rey-O). There was a significant discrepancy between his delayed recall of a simple visual information (WMS-III: Visual Reproduction II =91st percentile; WMS-III) and more complex visual information (Rey-O Delayed Recall= 46th percentile), suggesting that his delayed visual memory is diminished with greater complexity of stimuli.

Executive Functioning:
Mr. Pfail's performance on measures of executive functioning was variable and task dependent. His score was at the 69th percentile on a task measuring the ability to attend to and inhibit a competing automatic response on a timed verbal task (Stroop: Color Word). On a task that Mr. Pfail was provided feedback on the adequacy of his performance (SCT), he performed at the 38th percentile. He performed at the 35th percentile on a verbally mediated task requiring higher level reasoning, specifically abstract thinking, inductive and deductive reasoning (Watson Glaser, Freshmen in 4 year colleges). He performed within normal limits on a task involving the construction of an object from smaller parts (TTT=9/12) and on a test of planning, self-monitoring and time management (BADS= 118), and on a test of mental flexibility and set shifting (WCST Categories Completed= >16th percentile; WCST Total Errors= 94th percentile).
    In contrast, he performed at the 18th percentile on a timed motor task requiring mental flexibility (TMT: Part B). On a self report measure of executive dysfunction, Mr. Pfail reported having significantly more executive dysfunction currently compared to prior to the brain injury sustained on April 9, 2007 (Frsbe, Executive Dysfunction Before= 15th percentile; After= 99th percentile). Additionally, on this measure he reported experiencing significantly more apathy currently than before the aforementioned injury (Frsbe Apathy Before= 18th percentile; After= 98th percentile).

Emotional Functioning:
On self report questionnaires, Mr. Pfail reported that he was severely depressed (BDI= 29) and mild anxiety (BAI= 10). Additionally, when given a structured clinical interview Mr. Pfail reported experiencing a Major Depressive Episode with psychotic features in December 2007 (SCID).

A-3760

Neuropsychological Evaluation
8/12/08

Brian Pfail
8

Summary & Recommendations:
The results of this evaluation indicate that Mr. Pfail has cognitive impairments in the following domains: processing speed, language, delayed recall of visual information and executive functioning, likely secondary to the assault he was involved in on April 9, 2007. In addition, it is clear that Mr. Pfail has psychiatric challenges with which he is attempting to cope.

In order to facilitate treatment of Mr. Pfail's cognitive challenges, he would benefit from cognitive remediation to improve his processing speed. In order to facilitate dealing with his psychiatric challenges, Mr. Pfail should receive an evaluation for appropriate psychiatric medication. Additionally, Mr. Pfail should receive psychotherapy in order to help him so that he is better able to cope with future stressors.

Thank you for the courtesy of this referral.

Amanda L. Sacks, Ph.D.
Fellow, Clinical Neuropsychology

Wayne Gordon, Ph.D., ABPP/Cn.
Board Certified in Clinical Neuropsychology

A-3761

**Maureen C. Grix, Ph.D.**
LICENSED PSYCHOLOGIST

16 CARDINAL COURT
GLEN COVE, NEW YORK 11542

FEDERAL TAX ID #20-3123410
NYS LICENSE #014284

516-746-3691
FAX 516-801-3426

6/2/20

Hi Denise,

Attached is the letter you requested regarding Brian's new Social Security Card.

I apologize for the delay. I do not check my emails regularly & overlooked your email until Brian asked me about it last week.

In the future, if you email me please follow up with a telephone call (516-330-5370 cell) to confirm that I saw it.

If you need anything further, please let me know. Hope you are well & safe during this tragic time.

Sincerely,
Dr. Grix

GRIX

544

A-3762

*Maureen C. Grix, Ph.D.*
LICENSED PSYCHOLOGIST

16 CARDINAL COURT
GLEN COVE, NEW YORK 11542

FEDERAL TAX ID #20-3123410
NYS LICENSE #014284

516-746-3691
FAX 516-801-3426

June 2, 2020

United States
Social Security Administration

Gentlemen:

I am writing to verify the identity of Brian J. Pfail. Mr. Pfail has been in treatment with me on a weekly basis since October 2, 2012. His most recent visit with me was on Tuesday, May 26, 2020.

A copy of his New York State Driver's License is in my possession as proof of his identity. The following is the information as shown on his NYS Driver's License:

Name: Brian J. Pfail
Address: 35 Roxbury Road
Garden City, NY 11530
Date of Birth: ████████

I hereby verify that Brian J. Pfail is who he says he is. If you need anything further, please feel free to contact me.

Very truly yours,

*Maureen C. Grix*

Maureen C. Grix, Ph.D.
Clinical Neuropsychologist
Psychodynamic Psychotherapist

GRIX

545

A-3763

6/2/2020                                                    New Social Security Card

**From:** dgalloway42001@yahoo.com,
**To:** NeuroG@aol.com
**Subject:** New Social Security Card
**Date:** Wed, Feb 12, 2020 1:11 pm

Hello Dr Grix,

I am sure that Brian has shared with you that he is attempting to get a new social security card due to all of the identity thief that's been going on with his information. I came by SSA office just a while ago to check up on the application and was told that he needs a Medical Provider letter as proof of his identity, since he very well cannot send in his Driver's License. So I am asking you if you can write that letter of identity on your office letter head for him. This would take forever to get from his PCP. That he is who he says he is; date of the letter; his first and last name; date of birth; date of last visit; and your info: name, address, license number and signature.

They may every thing so difficult. His Medicaid Card though acceptable is not good enough because he got it more than 2 years ago.

Just so you are aware, this approval for a new number is not given at the local office so this is going to take a while.

Please call me if you have any questions. Oh, please mail the letter to me because they need your original signature.

Denise Galloway
479 Middle Country Rd.
Coram, NY 11727

Thank you.
Denise

GRIX                                                             546

A-3764

00432213 — **State of New York**
$10.00
DEPARTMENT OF TAXATION AND FINANCE
DIVISION OF THE TREASURY
FEBRUARY 26, 2018    TDA01

Check No. 06170599

29-55 / 213    **A**

KNOW YOUR ENDORSER

$10.00

Pay to the Order of:  **MAUREEN C GRIX**

Thomas P. DiNapoli
State Comptroller

KeyBank N.A.

Nonie Manion
Exec. Deputy Commissioner, Dept. of Taxation and Finance

GRIX    547

A-3765

HP OfficeJet Pro 8710 Series

**Fax Log for**
MAUREEN C. GRIX, Ph.D
516-801-3426
Feb 19 2018 1:54PM

**Last Transaction**

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|-----------|----------|-------|--------|
| | | | | Digital Fax | | |
| Feb 19, | 1:50PM | Fax Sent | 18663238335 | 4:37<br>N/A | 5 | OK |

GRIX                                              548

A-3766

FAX COVER LETTER

Maureen C. Grix, Ph.D.
Licensed Psychologist
~~233 Seventh St. Suite 200~~
~~Garden City, NY 11530~~

FROM (NAME AND ADDRESS): _____

TELEPHONE: 516-746-3691   FAX: _____

4: 516-801-3426

PLEASE DELIVER THE ATTACHED TO:

NAME: S. COLLIER - DISABILITY ANALYST  FAX NUMBER: 1-866-323-8335

FROM: UNIT NR09   TOTAL NUMBER OF PAGES: 5

NYS OFFICE OF TEMPORARY & DISABILITY ASSISTANCE   (including Fax Letter)

TIME SENT: 1:52 PM   DATE: 2/19/18

MESSAGE: _____

IF YOU HAVE ANY PROBLEMS IN RECEIVING THE ATTACHED, PLEASE CONTACT
DR. GRIX   AT 516-746-3691 .

## CONFIDENTIALITY NOTICE

The information and material contained in this fax message are intended only for the use of the recipient named above. Persons responsible for delivering this communication to the intended recipient are instructed not to disclose, copy or distribute this communication and are not authorized to take any action with respect to it other than to assure its proper delivery to the person to whom it is addressed. If you are not the recipient named above, then you have received this communication in error, and it is requested that you notify DR. GRIX 516-746-3691 immediately by telephone to arrange for its proper return.

This fax contains protected health information and has been disclosed to you from records protected by Federal (HIPAA) and New York State privacy and confidentiality laws and regulations. This is strictly confidential material and is for the information of only the person or entity to whom it is addressed. No responsibility can be accepted if it is made available to any other person or entity. Federal and New York State laws and regulations prohibit you from making any further disclosure of this information unless further disclosure is expressly permitted by the written authorization of the person to whom it pertains, or is otherwise permitted by law. Re-disclosure in violation of applicable laws and regulations may result in a fine or jail sentence or both. In certain instances, a general authorization for the release of health information is not sufficient authorization for further disclosure.

E

GRIX                                                                549

A-3767

**New York State Office of Temporary and Disability Assistance**
**Division of Disability Determinations**
P.O. BOX 8783
LONDON, KY 40742
**Phone: (212)240-3066 Toll Free: 1-800-522-5511 Ext. 3066 Fax: 1-866-323-8335**

`www.OTDA.State.NY.US/DDD`

E64                                                                          January 25, 2018

**In Reference to Claimant**

| | |
|---|---|
| SSN: | ████12 DOB: ██89 |
| Name: | BRIAN J. PFAIL |

MAUREEN GRIX, PHD
233 7TH ST  STE 200
GARDEN CITY, NY  11530

MER ORDER#:  **B001C2CFF**

**Please use MER ORDER# for Dictation and Remittance Tracking.**

This agency is responsible for the adjudication of disability claims on behalf of the federal government under the Social Security Act. Your patient has made an application for benefits and we need medical evidence from treatment sources to evaluate the claim. A written consent is enclosed for us to receive this information from you.

Social Security Regulations require us to obtain complete medical documentation of the impairment. Attached is a medical questionnaire related to your patient's medical condition, which will help you provide us with the information we need to evaluate the impairment in terms of the standards for the program. At times we need additional medical information beyond that which you supply in your report. If you would be willing to perform consultative examinations, if needed, for us of your own patients on a fee for service basis, please let us know when you respond to this letter.

You may reply directly on the questionnaire, submit a copy of your records, or provide a report on your letterhead, whichever is most convenient. If you prefer to use our toll free dictation service, please call any time, day or night: 1-800-250-1996 from anywhere in New York State. If you require assistance with dictation, call 1-800-556-6666.

Your cooperation is appreciated.

Sincerely yours,
**S. Collier**
Disability Analyst - Unit NR09

**\*\*PLEASE FOLLOW INSTRUCTIONS TO RECEIVE PAYMENT\*\***
VOUCHER INSTRUCTIONS: Billed Amount: $10.00
We are authorized to pay for medical information which is useful and relevant. If you wish payment, please **COMPLETE ALL BOXES BELOW** or **REVIEW PREPRINTED INFORMATION.** Preprinted information needing correction must be authorized via signed correspondence on the facility letterhead and returned with this letter.
Payee ID: Enter the **9-Digit Federal ID** assigned to you as an employer. If you are operating as an individual in business, enter your Social Security Number. The ID number MUST belong to the payee.
Payee Name: Enter your name and address **AS YOU WISH IT TO APPEAR ON THE CHECK.**

| | | |
|---|---|---|
| Payee ID: | 20 - 3123410 | **Payee Certification:** I certify that the above is just, true and correct and that no part thereof has been paid except as stated and that the balance is actually due and owing, and that taxes from which the State is exempt are excluded. |
| Payee Name: | MAUREEN C. GRIX | |
| Address: | 233 SEVENTH ST. | |
| Address: | SUITE 200 | Payee's Signature in ink: *Maureen C. Grix* |
| City, State, ZIP: | GARDEN CITY, NY 11530 | Title: Ph.D.   Date: 2/19/18 |

Off. Use Only: RO Signature/Date:                                    CO - Signature/Date/Interest:

**PLEASE RETURN THIS LETTER WITH YOUR REPLY IN THE ENCLOSED ENVELOPE OR FAX TO THE NUMBER ABOVE**

Patient ID Number: **N/A**  Date of Last ~~Exam:~~ APPT: **2/13/18**

Frequency of Treatment: **IX A WEEK**  Date First Seen: **10/2/2012**

Height: **N/A**  Weight: **N/A**

Blood Pressure, Most Recent, Significant Changes Noted: **N/A**

Treating Diagnoses: **TRAUMATIC BRAIN INJURY, MAJOR NEUROCOGNITIVE IMPAIRMENT DUE TO TBI, WITH BEHAVIORAL DISTURBANCE, MAJOR DEPRESSIVE DISORDER, RECURRENT, SEVERE, WITHOUT PSYCHOTIC SYMPTOMS, POST-TRAUMATIC STRESS DISORDER**

Please indicate current symptoms: **SEVERE DEPRESSION NEUROCOGNITIVE IMPAIRMENT DUE TO TRAUMATIC BRAIN INJURY, WITH BEHAVIORAL DISTURBANCE, POST TRAUMATIC STRESS DISORDER - SYMPTOMS RELATED TO ALL DIAGNOSES LISTED**

Treatment and Response: **PT. DOES BENEFIT FROM TREATMENT - ↓ anxiety + depress**
Please include medications prescribed with dosage and frequency, side effects and any not surgical procedures performed: **CONTACT PATIENT'S TREATING PSYCHIATRIST FOR THIS INFORMATION**

Please indicate the expected duration and prognosis of the claimant's condition: **CHRONIC - TBI SEQUELAE ARE LIFELONG. PTS PROGNOSIS FOR RECOVERY FROM THESE SEQUELAE IS POOR.**

Please provide the dates and results of any special testing performed (EEG, psychometric tests, etc.) as well as any information you may have concerning other medical impairments: **CONTACT NYU WINTHROP HOSPITAL, CAROLE M. FILANGIERI PhD, Clinical Neuropsychologist for patients most recent evaluation results.**

Presenting Problem:
Please include history, findings on initial comprehensive mental status examination, and diagnosis per APA DSM-IV: **See Diagnoses above**

Clinical Course:
Please include dates and type of treatment, names and dosages of all drugs prescibed, response to treatment, and any untoward reactions to medication: **Treating pt. since Oct. 2, 2012 with breaks in treatment where pt. was either hospitalized or at a TBI Rehab facility (inpatient); weekly individual therapy sessions**

Mental Status:
Please give findings as of the most recent status examination to include a full description of the following categories with examples: **Contact psychiatrist for Medication**
- Attitude, appearance, behavior: **Compliant to treatment receptive to treatment neat Impulse Disinhibition Anger Management issues information**
- Speech, thought, perception: **Normal slowed; at times distorted processing**
- Mood and affect: **Depressed mood; flattened affect**

- Sensorium and intellectual functions
  - attention and concentration: **Impaired**
  - orientation: **Intact**
  - memory: **Decline in memory functioning since 2ND TBI in 2014**
  - information: **Variable - affected by Post Traumatic Stress Disorder**

- ability to perform calculations, serial sevens, etc.:

- Insight and judgement: *Poor judgment secondary to frontal lobe dysfunction. Insight variable - poor to fair secondary to frontal lobe*

Current Functional Assessment. *Poor secondary to ongoing TBI sequelae and emotional disorders dysfunction*

Activities of daily living:
- Please include a full description of how the claimant spends a typical day with specific examples of grooming and hygiene, maintenance of residence, shopping, cooking, taking public
  transportation, interest and hobbies, etc. *Pt. currently living at home. - is able to maintain appropriate grooming + hygiene; however pt's mother assists pt. with medication regimen and other ADLs e.g. cooking shopping etc.*

Ability to Function in a Work Setting:
- Please describe in full any difficulties at work or in a work-like setting (e.g., workshops, service in community groups,
  volunteer work) especially regarding relationships with supervisor & peers, performance of job duties or episodes of decompensation.  Give dates, if possible.
*NONE - pt. has been unemployed since treatment began; currently volunteering at Senator Kemp Hannon's office. no difficulty (when he is up to it) reported with interactions with others.*

Are suicidal features present?                                          [ ] No  [X] Yes
If yes, please describe including whatever management steps have been taken or contemplated: *At times, pt. reports suicidal ideation without a plan but states he could not do that to his parents.* *'No set schedule)*

Is patient capable of handling any payment benefits?          [ ] Yes  [X] No
If no, please explain: *Pt's mother handles his finances. Pt's attentional difficulties compromise his ability in this area*

Based on the medical findings provided in my report, my medical opinion regarding this individual's ability to do work related mental activities
is as follows:

- Understanding and Memory
  [ ] No Limitation                          [X] Limited (please describe below)
*Pt's memory is significantly declined since 2012 particularly visual memory, secondary to 2ND TBI sustained in 2014*

- Sustained Concentration and Persistence (e.g. follow simple or detailed instructions, follow schedules, work with others, follow a reasonable
  pace, sustain ordinary routine without supervision, maintain customary attendance and punctuality, etc.)
  [ ] No Limitation                          [X] Limited (please describe below)
*Pt's attention + concentration is lower than expected. these difficulties are being exacerbated by his diagnoses of Major Depressive Disorder + PTSD*

- Social Interaction (e.g. interact with the public, ask simple questions, accept supervisory instructions, get along appropriately with co-workers,
  adhere to basic neatness and cleanliness, etc.)
  [ ] No Limitation                          [X] Limited (please describe below)
*Pt's speed of processing is affecting his ability to maintain continued interactions in a work setting on a daily basis.*

A-3770

- Adaption (e.g. respond appropriately to changes in the work setting, be aware of hazards, travel/use public transportation, set realistic goals,
  make plans independently, etc.)
  [ ] No Limitation                [X] Limited (please describe below)

Pt. does want to live a normal life but up to this point is having difficulty accepting his limitations which at times affects his decision making

- Other (please describe any other significant limitations below)

When significantly stressed, pt. is vulnerable to seizure activity.

[ ] I cannot provide a medical opinion regarding this individual's ability to do work-related activities.

Are there any other conditions significant to recovery?      [X] No    [ ] Yes
 - If yes, please record your comments below. (If necessary, the reverse of this page may be used.) All of pt's diagnoses listed above + on previous pages are significant to his recovery, without any other conditions added to them.

Please indicate the best days and times for us to call if we need to ask for additional or clarifying information.   Day:              Time:

Facility  PRIVATE PRACTICE           Phone 516-246-3691

Signature Maureen C. Grix, PhD.     Title Clinical Neuropsychol & gie

Name Printed MAUREEN C. GRIX, PhD   Date 2/19/18   Clinical Psychotherapi

A-3771

New York State Office of Temporary and Disability Assistance
Division of Disability Determinations
P.O. BOX 8783
LONDON, KY 40742-9927

(212)240-3066    Toll Free: 1-800-522-5511 Ext. 3066  Fax: 1-866-323-8335
http://otda.ny.gov                                  02/08/18

E124

MAUREEN C GRIX,PH.D.
233 7TH ST  STE 200
GARDEN CITY, NY 11530

**In Reference to Claimant**
MER ORDER #: B001C2CFF
Case:    232921313
Name:    BRIAN J PFAIL
Address:

## THIS IS A FOLLOW-UP TO OUR LETTER DATED 01/25/18

This agency is responsible for the adjudication and review of disability claims
on behalf of the federal government under the Social Security Act. The above
individual has made an application for benefits and we need evidence from you to
evaluate the claim. Our original letter included a written consent for us to
receive this information from you.

**A response from you is essential for the proper review and evaluation of this
application.**  Please see our original letter for information on submitting your
response and provide us with report as soon as possible.  If you have any ques-
tions, please call me at the number indicated above.
Your cooperation is appreciated.

                              Sincerely yours,
                              **S COLLIER**
                              Disability Analyst - Unit NR09

2/07/8701/NR09/MAUREEN C GRIX,PH.D.          /DDD-4333-SOURCE

GRIX                                                              554

A-3772

New York State Office of Temporary and Disability Assistance
Division of Disability Determinations
P.O. BOX 8783
LONDON, KY 40742
Phone: (212)240-3066 Toll Free: 1-800-522-5511 Ext. 3066 Fax: 1-866-323-8335

www.OTDA.State.NY.US/DDD

E64                                    January 25, 2018

                                       **In Reference to Claimant**

       MAUREEN GRIX, PHD              SSN:        12 DOB:      9
       233 7TH ST  STE 200           Name:   BRIAN J. PFAIL
       GARDEN CITY, NY  11530

                                       MER ORDER#:  B001C2CFF

**Please use MER ORDER# for Dictation and Remittance Tracking.**

This agency is responsible for the adjudication of disability claims on behalf of the federal government under the Social Security Act. Your patient has made an application for benefits and we need medical evidence from treatment sources to evaluate the claim. A written consent is enclosed for us to receive this information from you.

Social Security Regulations require us to obtain complete medical documentation of the impairment. Attached is a medical questionnaire related to your patient's medical condition, which will help you provide us with the information we need to evaluate the impairment in terms of the standards for the program. At times we need additional medical information beyond that which you supply in your report. If you would be willing to perform consultative examinations, if needed, for us of your own patients on a fee-for-service basis, please let us know when you respond to this letter.

You may reply directly on the questionnaire, submit a copy of your records, or provide a report on your letterhead, whichever is most convenient. If you prefer to use our toll free dictation service, please call any time, day or night: 1-800-250-1996 from anywhere in New York State. If you require assistance with dictation, call 1-800-556-6666.

Your cooperation is appreciated.

                                       Sincerely yours,
                                       S. Collier
                                       Disability Analyst - Unit NR09

**\*\*PLEASE FOLLOW INSTRUCTIONS TO RECEIVE PAYMENT\*\***

VOUCHER INSTRUCTIONS: Billed Amount: $10.00
We are authorized to pay for medical information which is useful and relevant. If you wish payment, please **COMPLETE ALL BOXES BELOW** or **REVIEW PREPRINTED INFORMATION.** Preprinted information needing correction must be authorized via signed correspondence on the facility letterhead and returned with this letter.
Payee ID: Enter the 9-Digit Federal ID assigned to you as an employer. If you are operating as an individual in business, enter your Social Security Number. The ID number MUST belong to the payee.
Payee Name: Enter your name and address **AS YOU WISH IT TO APPEAR ON THE CHECK.**

| | |
|---|---|
| Payee ID: 20 - 3123410 | **Payee Certification:** I certify that the above is just, true and correct and that no part thereof has been paid except as stated and that the balance is actually due and owing, and that taxes from which the State is exempt are excluded. |
| Payee Name: MAUREEN C. GRIX | |
| Address: 233 SEVENTH ST. | |
| Address: SUITE 200 | Payee's Signature in ink: Maureen C. Grix |
| City, State, ZIP: GARDEN CITY, NY 11530 | Title: Ph.D.  Date: 2/19/18 |

Off. Use Only: RO Signature/Date:                    CO - Signature/Date/Interest:

**PLEASE RETURN THIS LETTER WITH YOUR REPLY IN THE ENCLOSED ENVELOPE OR FAX TO THE NUMBER ABOVE**

A-3773

Patient ID Number: _N/A_   Date of Last ~~Exam:~~ APPT: _2/13/18_

Frequency of Treatment: _IX A WEEK_   Date First Seen: _10/2/2012_

Height: _N/A_   Weight: _N/A_

Blood Pressure, Most Recent, Significant Changes Noted: _N/A_

Treating Diagnoses: _TRAUMATIC BRAIN INJURY, MAJOR NEUROCOGNITIVE IMPAIRMENT DUE TO TBI, WITH BEHAVIORAL DISTURBANCE, MAJOR DEPRESSIVE DISORDER, RECURRENT SEVERE, WITHOUT PSYCHOTIC SYMPTOMS, POST-TRAUMATIC STRESS DISORDER_

Please indicate current symptoms: _SEVERE DEPRESSION, NEUROCOGNITIVE IMPAIRMENT DUE TO TRAUMATIC BRAIN INJURY, WITH BEHAVIORAL DISTURBANCE, POST TRAUMATIC STRESS DISORDER - SYMPTOMS RELAT TO ALL DIAGNOSES LISTED_

Treatment and Response: _PT. DOES BENEFIT FROM TREATMENT - ↓anxiety +depress_
Please include medications prescribed with dosage and frequency, side effects, any not surgical procedures performed: _short term but not long term CONTACT PATIENT'S TREATING PSYCHIATRIS FOR THIS INFORMATION_

Please indicate the expected duration and prognosis of the claimant's condition: _CHRONIC - TBI SEQUELAE ARE LIFELONG ; PT'S PROGNOSIS FOR RECOVERY FROM THESE SEQUELAE IS POOR._

Please provide the dates and results of any special testing performed (EEG, psychometric tests, etc.) as well as any information you may have concerning other medical impairments: _CONTACT NYU WINTHROP HOSPITAL, CAROLE M. FILANGIERI PhD, Clinical Neuropsychologist for patients most recent evaluation results._

Presenting Problem:
Please include history, findings on initial comprehensive mental status examination, and diagnosis per APA DSM-IV: _See Diagnoses above_

Clinical Course:
Please include dates and type of treatment, names and dosages of all drugs prescibed, response to treatment, and any untoward reactions to medication: _Treating pt. since Oct. 2, 2012 with breaks in treatment when pt. was either hospitalized or at a TBI Rehab facility (inpatient); weekly individual therapy sessions_

Mental Status:
Please give findings as of the most recent status examination to include a full description of the following categories with examples: _Contact psychiatrist for medication_
- Attitude, appearance, behavior: _Compliant + receptive to treatment, neat Impulse Disinhibition, Anger Management issues_
- Speech, thought, perception: _Normal, Slowed Processing at times distorted_
- Mood and affect: _Depressed mood; flattened affect_

- Sensorium and intellectual functions
  - attention and concentration: _Impaired._
  - orientation: _Intact_
  - memory: _Decline in memory functioning since 2ND TBI in 2014_
  - information: _Variable - affected by Post Traumatic Stress Disorder_

GRIX

2/00027854009/**LEX**: 8701/NR09/MAUREEN GRIX, PHD          /DDD-3883          Page 2 of

A-3774

- Adaption (e.g. respond appropriately to changes in the work setting, be aware of hazards, travel/use public transportation, set realistic goals, make plans independently, etc.)

[ ] No Limitation      [X] Limited (please describe below)

*Pt. does want to live a normal life but up to this point is having difficulty accepting his limitations which at times affects his decision making*

- Other (please describe any other significant limitations below)

*When significantly stressed, pt. is vulnerable to seizure activity.*

[ ] I cannot provide a medical opinion regarding this individual's ability to do work-related activities.

Are there any other conditions significant to recovery?    [X] No    [ ] Yes
 - If yes, please record your comments below. (If necessary, the reverse of this page may be used.) *All of pt's diagnoses listed above + on previous pages are significant to his recovery without any other conditions added to them.*

Please indicate the best days and times for us to call if we need to ask for additional or clarifying information.    Day:      Time:

Facility   PRIVATE PRACTICE      Phone 516-246-3691

Signature *Maureen C. Grix, PhD.*    Title *Clinical Neuropsychol gist*

Name Printed MAUREEN C. GRIX, PhD    Date 2/19/18   *+ Clinical Psychotherapist*



- ability to perform calculations, serial sevens, etc.:

- Insight and judgement: *Poor judgment secondary to frontal lobe dysfunction. Insight variable - poor to fair secondary to frontal lobe dysfunct.*

Current Functional Assesment: *Poor secondary to ongoing TBI sequelae and emotional disorders*

Activities of daily living:
- Please include a full description of how the claimant spends a typical day with specific examples of grooming and hygiene, maintenance of residence, shopping, cooking, taking public
transportation, interest and hobbies, etc. *Pt. currently living at home. - is able to maintain appropriate grooming & hygiene. however pt's mother assists pt. with medication regimen and other ADLs eg. cooking, shopping etc.*

Ability to Function in a Work Setting:
- Please describe in full any difficulties at work or in a work-like setting (e.g., workshops, service in community groups,
volunteer work) especially regarding relationships with supervisor & peers, performance of job duties or episodes of decompensation. Give dates, if possible. *NONE - pt. has been unemployed since treatment began. currently volunteering at Senator Kemp Hannon's office. no difficulty (when he is up to it) reported with interactions with others.*

*(No set schedule)* Are suicidal features present? [ ] No [X] Yes
If yes, please describe including whatever management steps have been taken or contemplated: *At times, pt. reports suicidal ideation without a plan but states he could not do that to his parents.*

Is patient capable of handling any payment benefits? [ ] Yes [X] No
If no, please explain: *Pt's mother handles his finances. Pt's attentional difficulties compromise his ability in this area*

Based on the medical findings provided in my report, my medical opinion regarding this individual's ability to do work related mental activities
is as follows:

- Understanding and Memory
[ ] No Limitation          [X] Limited (please describe below)
*Pt's memory is significantly declined since 2012 particularly visual memory, secondary to* *2nd* *TBI sustained in 2014*

- Sustained Concentration and Persistence (e.g. follow simple or detailed instructions, follow schedules, work with others, follow a reasonable
pace, sustain ordinary routine without supervision, maintain customary attendance and punctuality, etc.)
[ ] No Limitation          [X] Limited (please describe below)
*Pt's attention & concentration is lower than expected. these difficulties are being exacerbated by his diagnoses of Major Depressive Disorder & PTSD*

- Social Interaction (e.g. interact with the public, ask simple questions, accept supervisory instructions, get along appropriately with co-workers,
adhere to basic neatness and cleanliness, etc.)
[ ] No Limitation          [X] Limited (please describe below)
*Pt's speed of processing is affecting his ability to maintain continued interactions in a work setting on a daily basis*

A-3776

MAUREEN GRIX, PHD
233 7TH ST STE 200
GARDEN CITY, NY 11530

**WHOSE** *Records to be Disclosed*

Form Approved
OMB No. 0960-0623

NAME *(First, Middle, Last, Suffix)*
Brian James Pfail

| SSN | | Birthday *(mm/dd/yy)* | |

# AUTHORIZATION TO DISCLOSE INFORMATION TO
# THE SOCIAL SECURITY ADMINISTRATION (SSA)

## ** PLEASE READ THE ENTIRE FORM, BOTH PAGES, BEFORE SIGNING BELOW **

I voluntarily authorize and request disclosure (including paper, oral, and electronic interchange):

**OF WHAT**  *All my medical records; also education records and other information related to my ability to perform tasks. This includes specific permission to release:*

1. All records and other information regarding my treatment, hospitalization, and outpatient care for my impairment(s) *Including*, and **not limited to** :
   - Psychological, psychiatric or other mental impairment(s) (excludes "psychotherapy notes" as defined in 45 CFR 164.501)
   - Drug abuse, alcoholism, or other substance abuse
   - Sickle cell anemia
   - Records which may indicate the presence of a communicable or noncommunicable disease; and tests for or records of HIV/AIDS
   - Gene-related impairments (including genetic test results)
2. Information about how my impairment(s) affects my ability to complete tasks and activities of daily living, and affects my ability to work.
3. Copies of educational tests or evaluations, including Individualized Educational Programs, triennial assessments, psychological and speech evaluations, and any other records that can help evaluate function; also teachers' observations and evaluations.
4. Information created within 12 months after the date this authorization is signed, as well as past information.

**FROM WHOM**
- **All medical sources** (hospitals, clinics, labs, physicians, psychologists, etc.) including mental health, correctional, addiction treatment, and VA health care facilities
- **All educational sources** (schools, teachers, records administrators, counselors, etc.)
- Social workers/rehabilitation counselors
- Consulting examiners used by SSA
- Employers, insurance companies, workers' compensation programs
- Others who may know about my condition (family, neighbors, friends, public officials)

THIS BOX TO BE COMPLETED BY SSA/DDS (**as needed**) Additional information to identify the subject (e.g., other names used), the specific source, or the material to be disclosed:

**TO WHOM**   The Social Security Administration and to the State agency authorized to process my case (usually called "disability determination services"), **including contract copy services, and doctors or other professionals consulted during the process.** [Also, for international claims, to the U.S. Department of State Foreign Service Post.]

**PURPOSE**   Determining my eligibility for benefits, including looking at the combined effect of any impairments that by themselves would not meet SSA's definition of disability; and whether I can manage such benefits.
☐ Determining whether I am capable of managing benefits ONLY (check only if this applies)

**EXPIRES WHEN**   This authorization is good for 12 months from the date signed (below my signature).

- I authorize the use of a copy (including electronic copy) of this form for the disclosure of the information described above.
- I understand that there are some circumstances in which this information may be redisclosed to other parties (see page 2 for details).
- I may write to SSA and my sources to revoke this authorization at any time (see page 2 for details).
- SSA will give me a copy of this form if I ask; I may ask the source to allow me to inspect or get a copy of material to be disclosed.
- I have read both pages of this form and agree to the disclosures above from the types of sources listed.

**PLEASE SIGN USING BLUE OR BLACK INK ONLY** | **IF not signed by subject of disclosure, specify basis for authority to sign**

**INDIVIDUAL** authorizing disclosure

**SIGN** ▶ *Electronically Signed By:*
Brian James Pfail

☐ Parent of minor  ☐ Guardian  ☐ Other personal representative (explain)

(Parent/guardian/personal representative sign here if two signatures required by State law) ▶

| Date Signed | Street Address | | |
| 12/27/17 | 35 ROXBURY RD | | |
| Phone Number (with area code) | City | State | ZIP |
| 516-739-3252 | GARDEN CITY | NY | 11530 |

**WITNESS** *I know the person signing this form or am satisfied of this person's identity:*

**SIGN** ▶ *Attested by SSA or Designated State Agency Employee:*
B Bressler

IF needed, second witness sign here (e.g., if signed with "X" above)
**SIGN** ▶

| Phone Number (or Address) | Phone Number (or Address) |
| 866-758-1318 MINEOLA NY 11501-4242 | |

*This general and special authorization to disclose was developed to comply with the provisions regarding disclosure of medical, educational, and other information under P.L. 104-191 ("HIPAA"); 45 CFR parts 160 and 164; 42 U.S. Code section 290dd-2; 42 CFR part 2; 38 U.S. Code section 7332; 38 CFR 1.475; 20 U.S. Code section 1232g ("FERPA"); 34 CFR parts 99 and 300; and State law.*

Form SSA-827 (11-2012) ef (11-2012) Use 4-2009 and Later Editions Until Supply is Exhausted       559 Page 1 of 2

A-3777

### Explanation of Form SSA-827,
### "Authorization to Disclose Information to the Social Security Administration (SSA)"

We need your written authorization to help get the information required to process your application for benefits, and to determine your capability of managing benefits. Laws and regulations require that sources of personal information have a signed authorization before releasing it to us. Also, laws require specific authorization for the release of information about certain conditions and from educational sources.

You can provide this authorization by signing a Form SSA-827. Federal law permits sources with information about you to release that information if you sign a single authorization to release all your information from all your possible sources. We will make copies of it for each source. A few States, and some individual sources of information, require that the authorization specifically name the source that you authorize to release personal information. In those cases, we may ask you to sign one authorization for each source and we may contact you again if we need you to sign more authorizations.

You have the right to revoke this authorization at any time, except to the extent a source of information has already relied on it to take an action. To revoke, send a written statement to any Social Security Office. If you do, also send a copy directly to any of your sources that you no longer wish to disclose information about you; SSA can tell you if we identified any sources you didn't tell us about. Information disclosed prior to revocation may be used by SSA to decide your claim.

It is SSA's policy to provide service to people with limited English proficiency in their native language or preferred mode of communication consistent with Executive Order 13166 (August 11, 2000) and the Individuals with Disabilities Education Act. SSA makes every reasonable effort to ensure that the information in the SSA-827 is provided to you in your native or preferred language.

### IMPORTANT INFORMATION, INCLUDING NOTICE REQUIRED BY THE PRIVACY ACT

All personal information collected by SSA is protected by the Privacy Act of 1974. Once medical information is disclosed to SSA, it is no longer protected by the health information privacy provisions of 45 CFR part 164 (mandated by the Health Insurance Portability and Accountability Act (HIPAA). SSA retains personal information in strict adherence to the retention schedules established and maintained in conjunction with the National Archives and Records Administration. At the end of a record's useful life cycle, it is destroyed in accordance with the privacy provisions, as specified in 36 CFR part 1228.

SSA is authorized to collect the information on form SSA-827 by sections 205(a), 223 (d)(5)(A),1614(a)(3)(H)(i), 1631(d)(1) and 1631 (e)(1)(A) of the Social Security Act. We use the information obtained with this form to determine your eligibility for benefits, and your ability to manage any benefits received. This use usually includes review of the information by the State agency processing your case and quality control people in SSA. In some cases, your information may also be reviewed by SSA personnel that process your appeal of a decision, or by investigators to resolve allegations of fraud or abuse, and may be used in any related administrative, civil, or criminal proceedings.

**Signing this form is voluntary, but failing to sign it, or revoking it before we receive necessary information, could prevent an accurate or timely decision on your claim, and could result in denial or loss of benefits.** Although the information we obtain with this form is almost never used for any purpose other than those stated above, the information may be disclosed by SSA without your consent if authorized by Federal laws such as the Privacy Act and the Social Security Act. For example, SSA may disclose:

1. To enable a third party (e.g., consulting physicians) or other government agency to assist SSA to establish rights to Social Security benefits and/or coverage;
2. Pursuant to law authorizing the release of information from Social Security records (e.g., to the Inspector General, to Federal or State benefit agencies or auditors, or to the Department of Veterans Affairs(VA));
3. For statistical research and audit activities necessary to assure the integrity and improvement of the Social Security programs (e.g., to the Bureau of the Census and private concerns under contract with SSA).

Other than the above limited circumstances, SSA will not redisclose without proper prior written consent information (1) relating to alcohol and/or drug abuse as covered in 42 CFR part 2, or (2) from educational records for a minor obtained under 34 CFR part 99 (Family Educational Rights and Privacy Act (FERPA)), or (3) regarding mental health, developmental disability, AIDS or HIV.

We may also use the information you give us when we match records by computer. Matching programs compare our records with those of other Federal, state, or local government agencies. Many agencies may use matching programs to find or prove that a person qualifies for benefits paid by the Federal government. The law allows us to do this even if you do not agree to it.

Explanations about possible reasons why information you provide us may be used or given out are available upon request from any Social Security Office.

### PAPERWORK REDUCTION ACT STATEMENT

This information collection meets the clearance requirements of 44 U.S.C. section 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 10 minutes to read the instructions, gather the facts, and answer the questions. **SEND OR DELIVER THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE. The office is listed under U. S. Government agencies in your telephone directory or you may call 800 772-1213 for the address.** *You may send comments on our estimate of the time needed to complete the form to:*

SSA, *1338 Annex Building, Baltimore, MD 21235-0001. Send __only__ comments relating to our time estimate to this address, not the completed form.*

A-3778

New York State Department of Health
Division of Long Term Care
Traumatic Brain Injury Medicaid Waiver Program

Waiver Participant Initials (BP)

## Plan for Protective Oversight

**Name:** _____Brian Pfail_____      **Phone #:** ████████████

**Address:** ████████████         **CIN #:** __FB12854F__

████████████                      **Date Submitted:** _____3/1/19_____

**Identify cross streets of address:**_____Chester Ave_____

☒  Plan for Protective Oversight for the period: ___9/17/18___ to ___9/17/19___
☐  Revision of Plan for Protective Oversight effective: _____ to _____

### Contact Information for Supports identified in this Plan for Oversight

**Legal Guardian:** _____N/A_____

**Name:** _Brian Pfail_  **Relationship:** _Participant_  **Phone:** █████████ (Work) _____ (cell)

**Name:** _Denise Galloway_  **Relationship:** _SC_  **Phone:** ██████████ (Work) _____ (cell)

**Name:** _Alfred Olatunde_  **Relationship:** _ILST_  **Phone:** ██████████ (Work) _____ (cell)

**Name:** _Lisa Liberatore_  **Relationship:** _CIC_  **Phone:** ██████████ (Work) _____ (cell)

**Name:** _Lisa Liberatore_  **Relationship:** _PBIS_  **Phone:** ██████████ (Work) _____ (cell)

### I.  Finances

a.  Can waiver participant manage his/her own finances? ☒ Yes  ☐ No

b.  If the waiver participant needs assistance with his/her finances, who will provide the assistance?
1.  ATM: _____Brian_____
2.  Banking: _____Brian_____
3.  Bill Paying: ___Brian_____
4.  Budgeting: _____Brian_____
5.  Checking: _____Brian_____

c.  Does the waiver participant request/have a Representative Payee? ☐ Yes  ☒ No
If so, who (will) act(s) in this capacity? Brian acquiring n does not have any interest

A-3779

New York State Department of Health
Division of Long Term Care
Traumatic Brain Injury Medicaid Waiver Program

Waiver Participant Initials (BP)

A Representative Payee, he will continue to receive his benefit check and his mother will assist him with his financial management.

## II. Fire and Safety

a. Can the waiver participant use the various means of egress in his/her home?

☒ Yes ☐ No

b. Can the waiver participant safely evacuate from the home.

☒ Yes ☐ No

If no, identify type of assistance required: _____

Identify the closest fire/ambulance station to the home: __Lakeland Fire Department 929 Johnson Ave Ronkonkoma NY 11779__

c. If not, have other arrangements been made to assure that the waiver participant can be as safe as possible in case of a fire?

☐ Yes ☐ No ☒ Not applicable

Please list all of these extra precautions:

. _____

d. Is the waiver participant unsteady while standing or present balance issues?

☐ Yes ☒ No

If yes, what measures have been taken to decrease/prevent falls within the home or community?

_____

e. Is the waiver participant safe within the kitchen? ☒ Yes ☐ No

If not, what activities may be unsafe for the waiver participant?

_____

What actions have been taken to ensure that the waiver participant is protected while in the kitchen? __The full extent of the limitations of Brian's shoulder is unknown at this time and currently, he ueses easy to prepare meals..__

_____

TBI   C 1.3   September 2013                    Page 2 of 9

A-3780

New York State Department of Health
Division of Long Term Care
Traumatic Brain Injury Medicaid Waiver Program

Waiver Participant Initials (BP)

f.    Does the participant have any food or medication precautions/allergies?

☐ Yes    ☒ No

If yes, describe:

_____

_____

_____

g.    Is there a fire extinguisher, CO detector and a flashlight in the home? If yes, where are they located?

☒ Yes    ☐ No: When will they be put in place? Date:_____

If yes, describe:

A fire extinguisher is located in the kitchen and a flashlight in each room.

_____

_____

h.    Who has a key to the residence and is able to access the home on a routine basis or in an emergency?

Brian and his landlord                                                    .

_____

_____

## III.    Emergency Plan for Scheduled Unstaffed Time

Although the waiver participant's need for supervision has been assessed and addressed in other sections of the Service Plan, there may be emergencies when there is no immediate unpaid or paid support in the home with the waiver participant.

a. Is the waiver participant receiving 24-hour supervision?  ☐ Yes    ☒ No

This is provided by:  ☐ Paid staff only

☐ A combination of natural and paid staff

☐ Natural supports only

b. Does the participant have a phone and is s/he able to call 911?

☒ Yes    ☐ No

☒ Land-line    ☒ Cell

TBI   C 1.3   September 2013                            Page 3 of 9

GRIX                                                                563

A-3781

New York State Department of Health
Division of Long Term Care
Traumatic Brain Injury Medicaid Waiver Program

Waiver Participant Initials (BP)

If none: PERS should be utilized

Brian has no need for 24 hr. support. He lives with his parents and siblings and it is his parents will provide him with immediate assistance in the event of any emergency.

c. If there is the need for 24-hour supervision, is a back-up plan for supports clearly defined and included in the Service Plan? ☐ Yes ☒ No

List the name(s) and phone number of back-up support(s)

| Name | Telephone Number | Relationship |
|------|------------------|--------------|
| Donald Pfail | ████████ | Father |
| Eileen Pfail | ████████ | Mother |
| | | |
| | | |
| | | |
| | | |

Describe the back-up plan. This is a step-by-step plan to be followed by staff or natural supports to ensure the safety of the participant when a change in staff coverage unexpectedly occurs due to emergency, natural disaster, crisis or break down in the service system. E.g. staff fail to report to work, natural or informal supports are not available as planned etc.

As was previously mentioned, Brian does not have a need for 24 hr. supervision..

d. If the waiver participant does have time when he/she will be alone, who will be contacted in case of an **emergency**? (Please list in order of who will be called. This list should be prominently displayed by the telephone in the waiver participant's home).

TBI   C 1.3   September 2013                         Page 4 of 9

A-3782

New York State Department of Health
Division of Long Term Care
Traumatic Brain Injury Medicaid Waiver Program

Waiver Participant Initials (BP)

| Name | Telephone Number | Relationship |
|------|------------------|--------------|
| 911 | 911 | 911 |
| Eileen Pfail | ████████████ | mother |
| Donald Pfail | ████████████ | father |
| Denise Galloway | 631-698-0148 or 988-4167 | Service Coordinator |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

e. Does the waiver participant have a Personal Emergency Response System?

☐ Yes   ☒ No

f. Are there any other systems/devices/supports that have been provided to the waiver participants for safety purposes?

Explain: . _____

_____

## IV. Medication Administration

a. Is the waiver participant presently taking prescribed medication?

☒ Yes   ☐ No

b. Is the waiver participant able to consistently take his/her medication independently?

☒ Yes   ☐ No

c. If assistance is needed, what type of cueing is needed, including both visual and verbal cues?

d. Does the waiver participant have assistance with pre-pouring of the medication?

☐ Yes – Who provides this assistance: _____

☒ No – If no, should this be considered? _____

TBI   C 1.3   September 2013                     Page 5 of 9

A-3783

New York State Department of Health
Division of Long Term Care
Traumatic Brain Injury Medicaid Waiver Program

Waiver Participant Initials (BP)

e.   Who will the natural or paid staff contact in case there is concern about the waiver participant's reaction to medication or if the waiver participant is not taking his/her medication as directed? Donald and Eileen Pfail, 516 739-3252, Dr. Augusto Angulo Psychiatrist 718 470-8866    and Dr. Dimattei PCP 631-439-4300.

| Denise Galloway | Service Coordinator | 631988-4167 |
|---|---|---|
| Name | Relationship | Phone |

f.   Who will the natural or paid staff contact if the waiver participant's food intake decreases or increases noticeably?

| Dr. Jacklyn Dimattei | PCP | 631-439-4300 |
|---|---|---|
| Name | Relationship | Phone |

## V.   Environment

a.   Does the waiver participant have specialized or adaptive equipment they must use in order to complete activities of daily living?

☐ Yes    ☒ No

What is this equipment and where is it located in the home?

_____

_____

_____

b.   Can the waiver participant access and/or utilize community resources independently? If no, explain the type of assistance and/or supervision and oversight required

☒ Yes    ☐ No

—

_____

_____

_____

c.   Are there other individuals or family members residing in the home on a full time basis or who visit frequently? Identify name and relationship

No

_____

d.   Where is the waiver contact list located:    On the refrigerator    _____

e.   Does the participant know how to file a complaint?

☒ Yes    ☐ No

TBI   C 1.3   September 2013                              Page 6 of 9

A-3784

New York State Department of Health
Division of Long Term Care
Traumatic Brain Injury Medicaid Waiver Program

Waiver Participant Initials (BP)

_____

_____

## VI. Behavior

a. Does the participant present any challenging behavior that presents a risk to him/herself or a threat to others?

☒ Yes    ☐ No

If yes, describe:

Brian tried to overdose on his prescribe medications on two separate occasions. He needs to be monitored to ensure that he is coping and managing issues in his life safely and effectively as well as being monitored for potential medication side effects

_____

b. Does the participant have a behavior plan and have staff been trained in its implementation

☒ Yes    ☐ No

**Additional Comments:**
Brian has a history of psychiatrist hospitalizations and will benefit from ongoing psychiatrist consultations, medicinal therapies, in conjunction with PBIS. The behavior plan is pending.

TBI   C 1.3   September 2013                    Page 7 of 9

A-3785

New York State Department of Health
Division of Long Term Care
Traumatic Brain Injury Medicaid Waiver Program

Waiver Participant Initials (BP)

*This plan for Protective Oversight (PPO) must be readily accessible to all staff and natural supports and reviewed on a routine basis. This Plan must also be submitted to the Regional Resource Development Center with all Service Plans, and reviewed by the Service Coordinator with the participant, at least every six months or when conditions change. If there are incidents or concerns that arise which are directly related to the information presented in the Plan, the Plan must be reviewed and or amended immediately. Staff are responsible to know the contents and precautions established within the document. The PPO must be signed by at least one representative of each service agency and natural supports identified in the service plan.*

## Signatures of Individuals, Including Natural and Paid Supports, Participating in the development and utilization of the Plan for Protective Oversight

Waiver Participant_____ Date _____

Advocate/Representative _____ Date_____
(When applicable)

Service Coordinator_____ Date _____

Service Coordinator Supervisor _____ Date _____

Service Provider _____ Date _____

Service Provider _____ Date _____

Service Provider _____ Date_____

Service Provider_____ Date _____

Service Provider _____ Date _____

Service Provider _____ Date_____

A-3786

New York State Department of Health
Division of Long Term Care
Traumatic Brain Injury Medicaid Waiver Program

Waiver Participant Initials (BP)

Natural Support _____ Date _____

Natural Support _____ Date _____

Natural Support _____ Date _____

**Regional Resource Development Specialist Comment**

[ ]  The information provided in this Plan for Protective Oversight documents that the Waiver Participant's health and welfare is being maintained and sufficient supports are identified to safely maintain him/her in the community.

[ ]  The Plan of Protective Oversight is not approved. It does not sufficiently address the health and welfare needs of the waiver participant. A revised Plan for Protective Oversight must be submitted to address the following concerns:

_____
_____
_____

Signature: _____

Print Name: _____

Title: _____

Date: _____

TBI  C 1.3  September 2013                    Page 9 of 9

A-3787

# NORTH SHORE TBI SERVICES, INC.
## Positive Behavior Intervention Services (PBIS)
### Functional Behavioral Assessment Summary

**Participant Name:** Brian Pfail
**Evaluator:** Don O'Donnell, MPS, PBIS
**Date of Summary:** 1/15/19

### Reason for Referral:
Mr. Brian Pfail was referred for an updated Functional Behavioral Assessment in order to assess changes in overall behavioral status, define behavioral deficiencies, and identify antecedents and consequences of identified behaviors since last receiving a comprehensive Functional Behavioral Assessment on 3/30/16. Areas of concern reviewed include social isolation, anger outbursts, difficulty with motivation and self-initiation as well as symptoms of PTSD such as nightmares, increased vigilance and intrusive memories of past stressful experiences. Positive behaviors and the existence of non-problematic time periods or situations are also assessed. The impact of the participant's behaviors on current psycho-social status is explored. A copy of this report will be provided to Denise Galloway, SC, Letitia Agada Services, with recommendations for ongoing frequency of PBIS service and target behaviors to be intervened upon.

### Tests Administered:
No additional tests were administered. Brian met with PBIS for four two-hour sessions where his history, results of prior FBA, and history since previous FBA were discussed. Unlike his behavior and demeanor during previous FBA, Brian talked openly and displayed little hesitancy in answering questions put to him. Rapport was established by second session unlike previous FBA where after 10 hours of contact rapport was, at best, only tentative.

### Background Information and Behavioral Assessment:
Brian is a single, 30-year-old male, recently moving into his own apartment at 500 Peconic St. Apt. 9-7A. Building 9 Ronkonkoma, NY. Developmental milestones

1

A-3788

are reported to be within normal limits. Brian is reported to be "the product of a full-term pregnancy and vaginal delivery," but pregnancy was complicated by his mother's "pre-term labor" requiring her to remain in bed for most of the pregnancy. A graduate of Chaminade High School with a GPA of 3.5 (his mother reports to examiner that Brian would "be crazy if he got less than a 98"), Brian has also attended Villanova University from Fall 2007 to Spring 2008, majoring in Computer Engineering. A WAIS-III given as part of a full Neuropsychological on 8/08 resulted in a Full-Scale IQ of 115 (84th percentile) with a Verbal IQ of 116 (86th percentile) and a Performance IQ of 111 (77th percentile) all in the bright normal range. Brian has a history of employment in various retail stores. Brian is a left-handed individual of average habitus who presents neatly and causally attired, clean and well-groomed. He is ambulatory and appears without obvious physical disability but does have a damaged shoulder, the result of an injury suffered in May, 2010 following an altercation with police. As a result of a number of unsuccessful attempts to reset the shoulder bone and a recurrent infection he is told that he is not a candidate for a shoulder replacement. His last shoulder surgery was 9/24/15. He is in good physical health with a history of mononucleosis in December of 2006 and of hitting his head on a steel beam while playing basketball as a child, requiring stitches to his head.
Brian does not presently smoke, drink or use illicit substances but does have some history of social drinking when younger.

On April 9, 2007, shortly before starting classes at Villanova University, Brian was assaulted by a group of youths at the Roosevelt Field mall, sustaining a head injury without loss of consciousness. Thereafter began a long series of aggressive episodes (being jailed on three different occasions; 12/4/14, 11/14/13, and "another time in 2013") some of these incidents resulting in further head injuries, two suicide attempts (both by medication overdose, in 2009 and 2010), approximately eight psychiatric admissions, some for as long as four months, and at least four episodes of visual hallucinations (details of the above can be found in the original FBA of 3/30/16). Brian and his parents report that prior to that first head injury in 2007 he had no instances of aggressive behavior or police or psychiatric involvement. Since 2007 he has been treated with numerous psychotropic medications, as well as a series of approximately 48-50 ECT from September 2010 to December 2011 for depression, and he continues in psychiatric treatment.

2

A-3789

**Antecedent Analysis:**

Working with Brian now, it is apparent that he has clearly benefited from treatment since his previous FBA. He is is now more spontaneously forthcoming in his conversation but is still suspicious and mistrusting of the motives of others. Now better in control of his anger, with no aggressive incidents in some time, anger does remain as he frequently talks of the bad intentions and corruption of police; he admits he has trouble "moving on" from past incidents involving police where he feels they were overly aggressive with him. He admits to mild depression but attributes it to the sudden death a year ago of his brother from a drug overdose. Even here he has issues with Police as he notes they have made no arrests of the person suppling his brother with drugs and have not returned money that his brother had on him when he was found dead. Another source of sadness is his father's progressing dementia.

Some PTSD symptoms, such as occasional nightmares involving Police and uncomfortable physical sensations when seeing a police car, remain and, while no outright delusional statements are made, reality testing still appears somewhat suspect. He now denies having experienced the clearly psychotic episodes occurring while at Villanova.

**Consequence Analysis:**

Brian's anger has resulted in arrests, a civil law suit by police against him for assault (both arrests and law suit costing significant money and placing stress upon the family unit), and physical damage to himself. Lack of social and recreational involvement have narrowed Brian's social sphere preventing opportunities for pleasant activities and possibly fostering depression. Suspect reality testing and mistrust leaves him at risk for misinterpretation of the motives of others and retaliatory aggression.

**Analysis and Summary:**

As noted at his last FBA, Brian is of bright normal intelligence but since experiencing at least two head injuries beginning in 2007 has clearly deteriorated in adaptive functioning presently being socially isolative, and exhibiting subjective memory problems, symptoms of PTSD and a pervasive lack of initiative and difficulty following through with tasks and activities. Additionally, Brian is now

3

A-3790

diagnosed with seizure disorder and PTSD and has periodically exhibited psychotic manifestations and required multiple psychiatric hospitalizations. Diagnostically and etiologically Brian's case is a complex one as symptoms of seizure disorder, PTSD, psychosis, and, diminished executive function, and personality disordered behavior are intertwined, and might all be attributed to his series of head injuries or might each be causing or contributing to one another. Brian's mother reports no aggressive, anti-social, criminal or psychotic behavior prior to Brian's first injury in 2007.

Nevertheless, it would appear, given Brian's excellent High School performance contrasted with the cognitive and behavioral difficulties now evident, that the head injuries sustained beginning at the end of 12th grade have resulted in some of the deficits he now experiences.

Treatment by PBIS would be helpful, and should focus upon the areas of anger management, gentle reality testing of his distorted cognitions, and remediation of diminished initiative and inability to follow through on plans, tasks or activities. Lack of initiative might be related to level of depression but is also likely the result of frontal brain injury. Anger outbursts are triggered by a sense that Brian is not be paid sufficient recognition and can also be triggered by Brian's misunderstanding and misinterpretation of what is being said to him. Brian presently has another therapist and some coordination between PBIS and this therapist would be useful.

Given the significant psychiatric and behavioral concerns, and Brian's historical criminal and legal involvement, coupled with his current good receptivity to treatment, it is suggested that 240 annual hours of PBIS, split into two weekly sessions, be provided to Brian.

---

Donald W. O'Donnell, MPS
PBIS
North Shore TBI Services, Inc.

Lisa M. Liberatore, Ph.D.
Director
North Shore TBI Services, Inc.

4

A-3791

# NORTH SHORE TBI SERVICES, INC.
## Positive Behavior Intervention Services (PBIS)
### Functional Behavioral Assessment Summary

**Participant Name:** Brian Pfail
**Evaluator:** Don O'Donnell, MPS, PBIS
**Date of Summary:** 1/15/19

### Reason for Referral:

Mr. Brian Pfail was referred for an updated Functional Behavioral Assessment in order to assess changes in overall behavioral status, define behavioral deficiencies, and identify antecedents and consequences of identified behaviors since last receiving a comprehensive Functional Behavioral Assessment on 3/30/16. Areas of concern reviewed include social isolation, anger outbursts, difficulty with motivation and self-initiation as well as symptoms of PTSD such as nightmares, increased vigilance and intrusive memories of past stressful experiences. Positive behaviors and the existence of non-problematic time periods or situations are also assessed. The impact of the participant's behaviors on current psycho-social status is explored. A copy of this report will be provided to Denise Galloway, SC, Letitia Agada Services, with recommendations for ongoing frequency of PBIS service and target behaviors to be intervened upon.

### Tests Administered:

No additional tests were administered. Brian met with PBIS for four two-hour sessions where his history, results of prior FBA, and history since previous FBA were discussed. Unlike his behavior and demeanor during previous FBA, Brian talked openly and displayed little hesitancy in answering questions put to him. Rapport was established by second session unlike previous FBA where after 10 hours of contact rapport was, at best, only tentative.

### Background Information and Behavioral Assessment:

Brian is a single, 30-year-old male, recently moving into his own apartment at 500 Peconic St. Apt. 9-7A, Building 9 Ronkonkoma, NY. Developmental milestones

A-3792

are reported to be within normal limits. Brian is reported to be "the product of a full-term pregnancy and vaginal delivery," but pregnancy was complicated by his mother's "pre-term labor" requiring her to remain in bed for most of the pregnancy. A graduate of Chaminade High School with a GPA of 3.5 (his mother reports to examiner that Brian would "be crazy if he got less than a 98"), Brian has also attended Villanova University from Fall 2007 to Spring 2008, majoring in Computer Engineering. A WAIS-III given as part of a full Neuropsychological on 8/08 resulted in a Full-Scale IQ of 115 (84th percentile) with a Verbal IQ of 116 (86th percentile) and a Performance IQ of 111 (77th percentile) all in the bright normal range. Brian has a history of employment in various retail stores. Brian is a left-handed individual of average habitus who presents neatly and causally attired, clean and well-groomed. He is ambulatory and appears without obvious physical disability but does have a damaged shoulder, the result of an injury suffered in May, 2010 following an altercation with police. As a result of a number of unsuccessful attempts to reset the shoulder bone and a recurrent infection he is told that he is not a candidate for a shoulder replacement. His last shoulder surgery was 9/24/15. He is in good physical health with a history of mononucleosis in December of 2006 and of hitting his head on a steel beam while playing basketball as a child, requiring stitches to his head.
Brian does not presently smoke, drink or use illicit substances but does have some history of social drinking when younger.

On April 9, 2007, shortly before starting classes at Villanova University, Brian was assaulted by a group of youths at the Roosevelt Field mall, sustaining a head injury without loss of consciousness. Thereafter began a long series of aggressive episodes (being jailed on three different occasions; 12/4/14, 11/14/13, and "another time in 2013") some of these incidents resulting in further head injuries, two suicide attempts (both by medication overdose, in 2009 and 2010), approximately eight psychiatric admissions, some for as long as four months, and at least four episodes of visual hallucinations (details of the above can be found in the original FBA of 3/30/16). Brian and his parents report that prior to that first head injury in 2007 he had no instances of aggressive behavior or police or psychiatric involvement. Since 2007 he has been treated with numerous psychotropic medications, as well as a series of approximately 48-50 ECT from September 2010 to December 2011 for depression, and he continues in psychiatric treatment.

2

A-3793

### Antecedent Analysis:

Working with Brian now, it is apparent that he has clearly benefited from treatment since his previous FBA. He is is now more spontaneously forthcoming in his conversation but is still suspicious and mistrusting of the motives of others. Now better in control of his anger, with no aggressive incidents in some time, anger does remain as he frequently talks of the bad intentions and corruption of police; he admits he has trouble "moving on" from past incidents involving police where he feels they were overly aggressive with him. He admits to mild depression but attributes it to the sudden death a year ago of his brother from a drug overdose. Even here he has issues with Police as he notes they have made no arrests of the person suppling his brother with drugs and have not returned money that his brother had on him when he was found dead. Another source of sadness is his father's progressing dementia.

Some PTSD symptoms, such as occasional nightmares involving Police and uncomfortable physical sensations when seeing a police car, remain and, while no outright delusional statements are made, reality testing still appears somewhat suspect. He now denies having experienced the clearly psychotic episodes occurring while at Villanova.

### Consequence Analysis:



Brian's anger has resulted in arrests, a civil law suit by police against him for assault (both arrests and law suit costing significant money and placing stress upon the family unit), and physical damage to himself. Lack of social and recreational involvement have narrowed Brian's social sphere preventing opportunities for pleasant activities and possibly fostering depression. Suspect reality testing and mistrust leaves him at risk for misinterpretation of the motives of others and retaliatory aggression.

### Analysis and Summary:

As noted at his last FBA, Brian is of bright normal intelligence but since experiencing at least two head injuries beginning in 2007 has clearly deteriorated in adaptive functioning presently being socially isolative, and exhibiting subjective memory problems, symptoms of PTSD and a pervasive lack of initiative and difficulty following through with tasks and activities. Additionally, Brian is now

3

A-3794

diagnosed with seizure disorder and PTSD and has periodically exhibited psychotic manifestations and required multiple psychiatric hospitalizations. Diagnostically and etiologically Brian's case is a complex one as symptoms of seizure disorder, PTSD, psychosis, and, diminished executive function, and personality disordered behavior are intertwined, and might all be attributed to his series of head injuries or might each be causing or contributing to one another. Brian's mother reports no aggressive, anti-social, criminal or psychotic behavior prior to Brian's first injury in 2007.

Nevertheless, it would appear, given Brian's excellent High School performance contrasted with the cognitive and behavioral difficulties now evident, that the head injuries sustained beginning at the end of 12th grade have resulted in some of the deficits he now experiences.

Treatment by PBIS would be helpful, and should focus upon the areas of anger management, gentle reality testing of his distorted cognitions, and remediation of diminished initiative and inability to follow through on plans, tasks or activities. Lack of initiative might be related to level of depression but is also likely the result of frontal brain injury. Anger outbursts are triggered by a sense that Brian is not be paid sufficient recognition and can also be triggered by Brian's misunderstanding and misinterpretation of what is being said to him. Brian presently has another therapist and some coordination between PBIS and this therapist would be useful.

Given the significant psychiatric and behavioral concerns, and Brian's historical criminal and legal involvement, coupled with his current good receptivity to treatment, it is suggested that 240 annual hours of PBIS, split into two weekly sessions, be provided to Brian.

Donald W. O'Donnell, MPS
PBIS
North Shore TBI Services, Inc.

Lisa M. Liberatore, Ph.D.
Director
North Shore TBI Services, Inc.

*Master of Professional Studies*

A-3795



**Syosset Hospital**
Northwell Health™

## PRIVILEGED AND CONFIDENTIAL INFORMATION

# Fax

DATE: _Friday, 12/14/18_

To: Dr. Maureen Grix    From: Amanda Rosati, LMSW

Phone: (516) 746-3691    Phone: (516) 496-6583

Fax: (516) 801-3426    Fax: (516) 496-2768

Pages: 9  Including cover sheet    CC: ————

Re: Discharge Summary for returning client.

☐ Urgent  ☑ For Review  ☐ Please Comment  ☐ Please Reply  ☐ Please Recycle

● Comments: Attached is the discharge summary for your returning client who is being discharged today. Thank you!

The information contained in this facsimile message is **PRIVILEGED AND CONFIDENTIAL INFORMATION** intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.

Please notify us immediately if not received or if all pages are not received.

GRIX                                                                578

A-3796

12-14-18;01:23PM; ;5164962768 # 2/ 9

 **Northwell Health**

CONFIDENTIAL

**Northwell Health
Documents Review Report**

| PFAIL, BRIAN JAMES | MRN/VisitId: 40459465/500010325891 | | Age: 29y   Gender : M |
| SY PSYC 120 02 | Admit Date: 10-Dec-2018 | Provider: Toth, Viktoria | DSC |

## Discharge Note Adult

Last Updated: 12/14/2018 1:13:15 PM   [Entered: 12/14/2018 1:00:00 PM]   Authored By: Toth, Viktoria (Attending)

<u>PHYSICIAN SECTION:</u>
<u>Admission Date:</u>
• Admission Date 10-Dec-2018 22:41.

<u>Discharge Date:</u>
• Discharge Date

14-Dec-2018

<u>Reason for Admission:</u>
Reason for Admission

Patient is a 29 y/o male with onset of depressive symptoms after physical assault by group of peers at age 17, subsequent reported head injury during a violent arrest with recorded 2 TBIs and resulting decline in functioning (dropped out of school, unable to work; some memory issues), previous diagnosis of Impulse Cotnrol Disorder, PTSD, Mood Disorder due to General medical condition (TBIs), RULE OUT ANTISOCIAL PERSONALITY, with LONG history of aggression to others and property including his parents and brother resulting in Order of Protection, police involvement, arrests and incarceration for assaults. Also has long hx of fighting with other male patient on inpatient psychiatric units as well as punching objects resulting in injuries and being sent to the ED. Patient had 3 ECT sessions by the time he was 20 years old, and many medication trials, numerous prior inpatient psychiatric admissions including extended 10 month stay, + extensive legal history including arrests and incarceration. BIB self at recommendation of psychiatrist with worsening depression and SI. Pt currently presenting with s/s of depression including hopelessness, helplessness, passive SI and intermittent active SI without current plan or intent although has had vague thoughts of overdosing on his medications recently. Pt does not feel safe in the community and is requesting hospitalization for safety and stabilization. Pt's outpatient psychiatrist feels that pt should be hospitalized due to this decompensation and does not feel he is safe to be discharged. Patient signed voluntarily.

<u>Discharge Medication Review:</u>
I will START or STAY ON the medications listed below when I get home from the hospital:

---

This is not an official part of the medical record. Please discard it in a confidential document bin.

A-3797



**Northwell**
**Health**
CONFIDENTIAL

**Northwell Health**
**Documents Review Report**

| | | | |
|---|---|---|---|
| PFAIL, BRIAN JAMES | MRN/VisitId: 40459465/500010325891 | | Age: 29y  Gender : M |
| SY PSYC 120 02 | Admit Date: 10-Dec-2018 | Provider: Toth, Viktoria | DSC |

## Discharge Note Adult

Last Updated: 12/14/2018 1:13:15 PM    [Entered: 12/14/2018 1:00:00 PM]    Authored By: Toth, Viktoria (Attending)

clonazePAM 1 mg oral tablet
– 1 tab(s) by mouth once a day (at bedtime) for sleep  15 day supply MDD:1 mg
– Indication: For anxiety

venlafaxine 75 mg oral capsule, extended release
– 1 cap(s) by mouth once a day  for depression 15 day supply
– Indication: For Depressive disorder due to another medical condition with depressive features

ondansetron 4 mg oral tablet, disintegrating
– 1 tab(s) by mouth every 6 hours, As needed, Nausea and/or Vomiting
– Indication: For nausea

lithium 600 mg oral capsule
– 1 cap(s) by mouth once a day (at bedtime)
– Indication: For Depressive disorder due to another medical condition with depressive features

pantoprazole 40 mg oral delayed release tablet
– 1 tab(s) by mouth once a day (at bedtime) for nausea  15 day supply
– Indication: For vomiting

cholecalciferol oral tablet
– 2000 unit(s) by mouth
– Indication: For supplement.

I will STOP taking the medications listed below when I get home from the hospital:

KlonoPIN 1 mg oral tablet

diazePAM 10 mg oral tablet
– 1 tab(s) by mouth 3 times a day

ondansetron 4 mg oral tablet
– 1 tab(s) by mouth every 8 hours

Vitamin D3 2000 intl units oral tablet
– 1 tab(s) by mouth once a day

lithium
– 900 milligram(s) by mouth 2 times a day

This is not an official part of the medical record. Please discard it in a confidential document bin.

A-3798

 **Northwell Health**

Northwell Health
Documents Review Report

CONFIDENTIAL

| PFAIL, BRIAN JAMES | MRN/VisitId: 40459465/500010325891 | | Age: 29y   Gender : M |
|---|---|---|---|
| SY PSYC 120 02 | Admit Date: 10-Dec-2018 | Provider: Toth, Viktoria | DSC |

## Discharge Note Adult

Last Updated: 12/14/2018 1:13:15 PM   [Entered: 12/14/2018 1:00:00 PM]   Authored By: Toth, Viktoria (Attending)

desvenlafaxine er 150mg
– 150 milligram(s) by mouth once a day

prazosin 5 mg oral capsule
– 1 cap(s) by mouth 2 times a day.

I will SWITCH the dose or number of times a day I take the medications listed below when I get home from the hospital:
None.

**Functional/Cognitive Status:**
- Functional/Cognitive Status Date       14-Dec-2018
- Ability to hear (with hearing aid or       Adequate: hears normal conversation without difficulty
  hearing appliance if normally used):
- Vision (with corrective lenses if the       Normal vision: sees adequately in most situations; can
  patient usually wears them):       see medication labels, newsprint
- Cognition: The patient has       no difficulties
- Ambulation       0 = independent
- Do you have difficulty climbing stairs       No
- Bathing       0 = independent
- Dressing       0 = independent
- Because of a physical, mental or       No
  emotional condition, do you have
  difficulty doing  errands alone like
  visiting a doctor's office or shopping
  (15 years and older)

**Diet and Activity:**
- Diet/Fluid Restrictions—Instructions       regular, low acid / as tolerated
- Activity       as tolerated

**Care Plan:**
- Principal Discharge Dx Depressive disorder due to another medical condition with depressive features.
- Goal: reduce depressive symptoms by 50%.
- Assessment and Plan of Treatment: wanted to continue on his self-reduced lithium dose and Pt's main concern and problem was his vomiting which said impacted his mood.
- Secondary Discharge Dx PTSD (post-traumatic stress disorder).
- Goal: maintain current status as Pt denied any current PTSD symptoms.
- Secondary Discharge Dx TBI (traumatic brain injury).
- Goal: Patient has outpatient traumatic brain injury services come to his house weekly for therapy/treatment.
- Secondary Discharge Dx Antisocial personality disorder.

This is not an official part of the medical record. Please discard it in a confidential document bin.

| Requested By: Rosati, Amanda (MSW) | JobID: 54945703 | Print from: Plainview Hospital |
|---|---|---|
| 12/14/2018 01:17:00 PM | | Page 3 of 7 |

A-3799



**Northwell Health**
**Documents Review Report**

CONFIDENTIAL

| | | | |
|---|---|---|---|
| PFAIL, BRIAN JAMES | MRN/VisitId: 40459465/500010325891 | | Age: 29y  Gender : M |
| SY PSYC 120 02 | Admit Date: 10-Dec-2018 | Provider: Toth, Viktoria | DSC |

## Discharge Note Adult

Last Updated: 12/14/2018 1:13:15 PM   [Entered: 12/14/2018 1:00:00 PM]   Authored By: Toth, Viktoria (Attending)

- Goal: encourage group attendance where social skills can be enhanced.
- Assessment and Plan of Treatment: patient refused to participate in group saying he is tired and was "retching" throughout this stay (staff did not see retching though).

Additional Instructions:
- Discharge Instructions/Appointments for follow-up
-- Monday, December 17th, 2018, at 2:30 PM with outpatient psychiatrist Dr.Gregory Gunyan, located at NYU Winthrop Hospital, 222 Station Plaza Road, Suite #360-A, Mineola, NY 11501, phone (631) 352-2591, fax (516) 663-8671.
-- Tuesday, December 18th, 2018, at 11:45 AM with outpatient gastroenterologist Dr. Frederick Rutcovsky, located at North Shore Cardiac Imaging, 2035 Lakeville Road, Suite #101/#104, New Hyde Park, NY 11040, phone (516) 328-9797, fax (516) 352-6579.
-- Wednesday, December 19th, 2018, at 3:30 PM with outpatient psychologist Dr. Maureen Grix, located at Mood & Thought, 520 Franklin Avenue, Suite #211, Garden City, NY 11530, phone (516) 746-3691, fax (516) 801-3426.
-- Pt's care coordinator will follow up with pt on discharge. Care coordinator is Denise G. at Letitia Agada Services, located at 479 Middle Country Road, Coram, NY 11727, phone (631) 698-0148, fax (631) 698-0639.

Follow-Up Care (SIUH Only):
No, the patient is not being discharged from SIUH.

Principal Discharge DX: Depressive disorder due to another medical condition with depressive features
Goal:   reduce depressive symptoms by 50%
Assessment and plan of treatment:       wanted to continue on his self-reduced lithium dose and Pt's main concern and problem was his vomiting which said impacted his mood.
Secondary Diagnosis:   PTSD (post-traumatic stress disorder)
Goal:   maintain current status as Pt denied any current PTSD symptoms
Secondary Diagnosis:   TBI (traumatic brain injury)
Goal:   Patient has outpatient traumatic brain injury services come to his house weekly for therapy/treatment
Secondary Diagnosis:   Antisocial personality disorder
Goal:   encourage group attendance where social skills can be enhanced
Assessment and plan of treatment:       patient refused to participate in group saying he is tired and was "retching" throughout this stay (staff did not see retching though).

Core Measures/Disease Management:

---

This is not an official part of the medical record. Please discard it in a confidential document bin.

Requested By: Rosati, Amanda (MSW)          JobID: 54945703          Print from: Plainview Hospital
12/14/2018 01:17:00 PM

A-3800

 **Northwell Health**

CONFIDENTIAL

**Northwell Health Documents Review Report**

| | | | |
|---|---|---|---|
| **PFAIL, BRIAN JAMES** | MRN/VisitId: 40459465/500010325891 | | Age: 29y Gender : M |
| **SY PSYC 120 02** | Admit Date: 10-Dec-2018 | Provider: Toth, Viktoria | DSC |

## Discharge Note Adult

Last Updated: 12/14/2018 1:13:15 PM  |Entered: 12/14/2018 1:00:00 PM|  Authored By: Toth, Viktoria (Attending)

**Heart Failure:**
Does this patient have a history of or has been diagnosed with heart failure? no.

**Stroke:**
Has the patient been diagnosed with stroke (includes: TIA/SAH/ICH/Ischemic Stroke)? no.

**Acute Myocardial Infarction:**
Has the patient had an Acute Myocardial Infarction? no.

**Angioplasty/PCI (percutaneous coronary intervention):**
Did the patient have an angioplasty or PCI? no.

**Tobacco Usage/Cessation:**
• Core Measure Site               No

• Hospital Course
patient's main complaint was the nausea and morning vomiting episodes. Patient thought it may be the lithium and has since halved his dose and has not taken the AM dosage - symptoms remain. He has been on the Effexor for years without any changes to dose and it is unlikely it is related to that. Patient states that as of yet, he has not been evaluated by a GI specialist; he said he saw his PMD who said that it may be side effects from his psychiatric medications. Patient otherwise reports that his father's health was the main trigger in his mood worsening - father has dementia symptoms which gotten worst including getting lost, incontinence. Father is being followed by a neuropsychiatrist. Patient said he had to move out as he was so stressed at seeing his father like this and he has been living alone in an apartment; he is not working or attending any programming and describes days as "doing nothing in particular." patient denies symptoms of mania/hypomania/panic/PTSD at this time. + depressive symptoms triggered by life stressors. ++ hx and clinical presentation consistent also with Antisocial Personality traits. Patient put in a 72-hour letter on 12/13/18 stating that he is not going to get the help he needs here for his main issue which was the nausea, vomiting and loose stools and now that he had the GI consult and follow-up appointment he no longer wants to remain on the Unit . He denies any suicidal ideation, intent and plan, named protective factors (wants to return to St johns' and then get a job; likes his apartment and his parents financially support him; he likes the TBIProgram because "they come to my house and I dont have to do anything). No grounds to keep patient against his will at this time and 72-Hour letter honored. Patient has ample of access to mental health care established.

**Treatments/Procedures/Significant Findings/Patient Condition:**
**Other Significant Findings:**
• Other Significant Findings
neurology and GI consultations done

**Patient Condition:**
• Condition (Stated in terms that permit   stable
  a specific measurable comparison with

This is not an official part of the medical record. Please discard it in a confidential document bin.

| | | |
|---|---|---|
| Requested By: Rosati, Amanda (MSW) | JobID: 54945703 | Print from: Plainview Hospital |
| 12/14/2018 01:17:00 PM | | Page 5 of 7 |

A-3801

 **Northwell Health**

CONFIDENTIAL

**Northwell Health**
**Documents Review Report**

| | | | |
|---|---|---|---|
| PFAIL, BRIAN JAMES | MRN/VisitId: 40459465/500010325891 | | Age: 29y   Gender : M |
| SY PSYC 120 02 | Admit Date: 10-Dec-2018 | Provider: Toth, Viktoria | DSC |

## Discharge Note Adult

Last Updated: 12/14/2018 1:13:15 PM   [Entered: 12/14/2018 1:00:00 PM]   Authored By: Toth, Viktoria (Attending)

condition on admission):

**Physician Section Complete:**
**Physician Section Complete:**
• Physician Section Complete                 Yes
• For questions about your                   516-496-2725
   prescriptions, please call:

**NURSING SECTION:**
**Vaccines Administered:**
   *Charted Data:*
• Tdap: Tdap, Action Date/Time: 17-Mar-2016 23:21, Entered By: Mulkeen, Jennifer L (RN), Sanofi Pasteur. Lot Information: ui543ac, IntraMuscular, Deltoid Right., Dose/Units: 0.5 milliLiter(s). Education Info: VIS (Published: 09-May-2013, Presented: 17-Mar-2016)

**Pain Management:**
• Pain Present                               No

**Wound Care/Dressings -Nursing Instructions:**
• Instructions                               n/a

**Tobacco Cessation Information/referral Program:**
• Core Measure Site                          No
• Tobacco Cessation                          Patient declined information
   Information/Referral Program

**Smoking Cessation Mandate:**
If you are a SMOKER, it is important for your health to stop smoking. Please be aware that second hand smoke is also harmful.

**Fall Risk Education:**
For information on Fall & Injury Prevention, visit www.northwell.edu/preventfalls.

**Discharge Disposition:**
• Discharge to:                              Home
• Mode of Transportation                     Ambulatory
• Accompanied by                             Family
• Patient Belongings                         as per property sheet
• Pairs of Eyeglasses                        n/a
• Dentures                                   n/a
• Prosthesis                                 n/a
• Hearing Aid                                n/a

**Interpreter Services:**

---

This is not an official part of the medical record. Please discard it in a confidential document bin.

Requested By: Rosati, Amanda (MSW)          JobID: 54945703          Print from: Plainview Hospital

12/14/2018 01:17:00 PM

A-3802

12-14-18;01:23PM;                              ;5164962768       # 8/ 9



# Northwell Health
## CONFIDENTIAL

## Northwell Health
## Documents Review Report

| | | | |
|---|---|---|---|
| **PFAIL, BRIAN JAMES** | MRN/VisitId: 40459465/500010325891 | ▓▓▓▓▓ | **Age: 29y Gender : M** |
| **SY PSYC 120 02** | Admit Date: 10-Dec-2018 | Provider: Toth, Viktoria | **DSC** |

## Discharge Note Adult

Last Updated: 12/14/2018 1:13:15 PM   [Entered: 12/14/2018 1:00:00 PM]   Authored By: Toth, Viktoria (Attending)

* Language Assistance needed to provide the patient/caregiver with discharge Instructions and/or education?      No

**Document Complete:**
* Patient ready for discharge by RN (Click here to generate discharge paperwork)      Patient/Caregiver provided printed discharge information.

**PATIENT PORTAL:**
**Northwell Health Patient Portal Link:**
You can access the FollowMyHealth Patient Portal, offered by Northwell Health, by registering with the following website: http://northwell.edu/followmyhealth.

**Electronic Signatures:**
Toth, Viktoria (MD) (Signed 14-Dec-2018 13:13)
     Authored: PHYSICIAN SECTION, Core Measures&Disease Management, Hospital Course, Treatments/Procedures/Significant Findings/Patient Condition, Physician Section Complete, NURSING SECTION, Document Complete, PATIENT PORTAL

Last Updated: 14-Dec-2018 13:13 by Toth, Viktoria (MD)

This is not an official part of the medical record. Please discard it in a confidential document bin.

Requested By: Rosati, Amanda (MSW)      JobID: 54945703      Print from: Plainview Hospital

12/14/2018 01:17:00 PM      End of Report

Page 7 of 7

GRIX                        585

A-3803

12-14-18;01:23PM;                     ;5164962768        # 9/ 9



## Northwell Health®

**Prescriptions and Home Medications Report**

CONFIDENTIAL

Syosset Hospital

MRN / VisitID: 40459465 / 500010325891

PFAIL, BRIAN JAMES

## Medication Discharge Information for Patients and Families

I will **START** or **STAY ON** these medications listed below when I leave the hospital:

| Medication | Date & Time to take Next Dose | Prescription Transmission Status |
|---|---|---|
| **Walgreens Drug Store 10134: 652 HEMPSTEAD TPKE FRANKLIN SQUARE NY 110104326, 516-486-1485** | | |
| clonazePAM 1 mg oral tablet <br> --1 tab(s) by mouth once a day (at bedtime) for sleep 15 day supply MDD:1 mg | | Prescription Sent to Pharmacy |
| lithium 600 mg oral capsule <br> --1 cap(s) by mouth once a day (at bedtime) | | Prescription Sent to Pharmacy |
| ondansetron 4 mg oral tablet, disintegrating <br> --1 tab(s) by mouth every 6 hours, As needed, Nausea and/or Vomiting | | Prescription Sent to Pharmacy |
| pantoprazole 40 mg oral delayed release tablet <br> --1 tab(s) by mouth once a day (at bedtime) for nausea 15 day supply | | Prescription Sent to Pharmacy |
| venlafaxine 75 mg oral capsule, extended release <br> --1 cap(s) by mouth once a day for depression 15 day supply | | Prescription Sent to Pharmacy |
| **Home Medication(s)** | | |
| cholecalciferol oral tablet <br> --2000 unit(s) by mouth | | Continue to Take Your Medication as Prescribed |

**Note to Patient:** Please **do not take any other medications** without first consulting with your primary care doctor. Please bring this form to your next doctor's appointment. Carry a list of your medications with you at all times in the event of an emergency.

---

12/14/2018 11:45:32 AM

Page: 1 of 2

One Copy for the Patient / One copy for the CHART

Requested By: Rosati, Amanda (MSW)       54941169       Printed from: Plainview Hospital

GRIX

586

**A-3804**

NEW STATE DEPARTMENT OF HEALTH
Division of Home and Community Based Services

## TBI Waiver Program

## Individual Service Report

**Please check one**    □ CIC □   HCSS   √ ILST   □ PBIS   □ Respite
□ Sub. Abuse Prog.     □Struct. Day Prog

Participant: <u>Brian Pfail</u>

Waiver Provider: <u>Alfred Olatunde</u>

Provider Agency: <u>Letitia Agada Services</u>      phone <u>631 698-0148</u>

Date waiver service was first provided: <u>September 2018</u>

Current frequency and hours of services: <u>8-bi-weekly hrs.plus 2 CTM</u>

Proposed frequency and hours for the next reporting period. 0

## Justification for waiver service

1. **List specific goals, as listed in the individual's Detailed Plan, for this service for the past six months.**

   **Brian's Assessment was completed on 4/4/18 and deficits were noted in Cognitive domain. Based on this and the fact he has been dependent on his parents for meeting all of his needs, he will benefit from ILST in this phase to improve his Memory and Recall ability, to learn Organizational skills.**

   Organization
   Create a list of community resources and identify the locations
   Develop a plan on how to access them using local roads as opposed to the highway.
   Develop a simple system to track use.

   **Become engaged in his community in a structured way**
   Explore community electronically and using other media sources to identify
   Volunteer opportunities of his choice.

2. **List progress made on each of the above outlined goals, using measurable outcomes. Describe any functional skills gains made by the individual during the past reporting period.**

   Brian was new to the environment and this is the first time that he has ventured out from his family to live on his own. The frustration and loneliness in the early days

C 4.2 July 2009

A-3805

**NEW STATE DEPARTMENT OF HEALTH**
**Division of Home and Community Based Services**

Appears to have lifted somewhat. Concerns about his abilities exist, however he is on the same page with his providers in terms of goal development and strategies to ensure that his health and well-being is maintained. During the six- month period, Brian decided that he should take the strategies he has been given and try to be independent and functional without ILST. His primary goals remain the same; to return back to College to obtain his degree and to obtain Volunteer work. He is reserving the right to request it again if he feels that more training is needed. ILST request the withdrawal of this service from his plan.

3. **Describe compensatory strategies and/or specific interventions utilized to assist the participant in obtaining the above outlined goals.**
   **Family to live on his own.**

   Goal specific interventions included, but not limited to:
   Listening to the directions first before starting the task/activity.

   He will make associations in order to recall information.
   When stuck, he can try closing his eyes and depend on his senses to recall information. He will create associations between things, characteristics, events and places. Utilizing linking methods, and repeating instruction to obtain clarity; information and repeating steps to develop consistency.

   He will ask additional questions in order to figure out what he has to do or what he is trying to accomplish.

   He will be provided with breaks to prevent being overwhelmed. Activities will be presented incrementally.

   ILST will use verbal suggestions to assist him in structuring the apartment to accommodate his lifestyle.

   Goal specific strategies; as identified in the goal plan will be implemented as well. This will also include models for him to follow as well.

   Goal plan will also incorporate PBIS developed strategies to ensure that the behavior component is being address and concerns will be shared with the PBIS as well.

4. **List barriers, as related to the above outlined goals, and actions taken to address these barriers.**

   Cognitive impairments, which are a result of his TBI are potential barriers. Brian's health has been an issue this period as he has had to reschedule due to the issues he has been having with his stomach. He says its heat related, but ILST cannot ascertain if its that; medication side effects or something else. ILST was told that the S/C is aware and is helping Brian follow up on this.

C 4.2 July 2009

GRIX                                                                588

A-3806

**NEW STATE DEPARTMENT OF HEALTH**
**Division of Home and Community Based Services**

5. **List changes in goals, as will be noted in the Detailed Plan for the next six months, for this service.**

None is needed as ILST should be withdrawn from his service plan.

C 4.2 July 2009

A-3807

**NEW STATE DEPARTMENT OF HEALTH**
**Division of Home and Community Based Services**

Participant Signature:_____ Date: _____

Provider Signature:    _____ Date: _____

Service Coordinator Signature:_____ Date:_____

C 4.2 July 2009

GRIX                                                      590

A-3808

NEW STATE DEPARTMENT OF HEALTH
Division of Home and Community Based Services

C 4.2 July 2009

A-3809

NEW YORK STATE DEPARTMENT OF HEATLH
Division of Home and Community Based Services

## TBI Waiver Program
### Individual Service Report

**Please check one**   □ᵇCIC □   □HCSS   □ILST   □PBIS □      □Respite  □Sub.
□Abuse Prog.   □Struct. Day Prog

**Participant:** Brian Pfail

**Waiver Provider:** Denise Galloway

**Provider Agency:** Letitia Agada Services      **Phone:** 631 698-0148

**Date waiver service was first provided:** September 2018

**Current frequency and hours of services:** Monthly face-to-face, PRN, plus 2 CTM's

**Proposed frequency and hours for the next reporting period:** Monthly face-to-face, PRN, plus 2 CTM's

**Justification for waiver service**

1. **List specific goals, as listed in the individual's Detailed Plan.**

   a) **Work with providers to achieve specified service related goals.**
   b) **Maintain stable medical, emotional and psychiatric health.**
   c) **Complete advanced education.**
   d) **Explore and Identify volunteer opportunities of his likes and preferences.**
   e) **Identify appropriate medical providers, i.e., PCP, Psychiatrist, Dentist, Ophthalmologist.**
   f) **Utilize effective medicinal therapies to manage; Anxiety, Depression, Anger and PTSD.**
   g) **Adjust to living in Suffolk County and independent of his parents.**

2. **List progress made on each of the above outlined goals using measurable outcomes. Describe any functional skills, gains made by the individual during the past reporting period.**

   In spite of some of the set-backs with Villanova, the fluctuations in some of his benefits and the difficulty he had coping with the fact that his mother told him he could not come to Garden City to spend Thanksgiving with his family, he has managed his life and situations; albeit with extensive on the spot emotional First Aid from Service Coordinator but he only punched the walls twice (on 2 different occasions) while dealing with his anger.

   Although he sometimes does not agree with everything S/C is saying to him, he responds well after he cools down and he always comes back to apologize and talk things out. His adjustment

C 4.2      November 11, 2016      Page 4 of 4

GRIX                                                                      592

A-3810

NEW YORK STATE DEPARTMENT OF HEATLH
Division of Home and Community Based Services

has been a bit challenging, but he continues to learn and be open to learning. Whenever Brian becomes despondent and/or insecure with his abilities, he always contacts S/C to problem solve and/or seek reassurance/clarification.

3. **Describe compensatory strategies and/or specific interventions utilized to assist the participant in obtaining the above outlined goals.**

During this six -month period, Brian has experienced the gamut of emotions; confusion, worry, anger, irritability, agitation, panic as well as happiness. Service Coordinator has utilized a wide range of strategies; based on the situation; but not limited to the following to assist Brian in staying the course as he continues to work towards all of his goals.

- Set priorities:
- Emotional on the spot First Aid.
- Information gathering to help him make assessments about his actions; responses and situations.
- Encourage him to engage in reality thinking.
- Write tasks/activities down: This crystallizes them and give them more chance of being remembered.
- Encourage him to keep operational goals small:
- Encourage and observe him in being organized; pre-plan his activities.
- Encourage him to always maintain ongoing contact with providers.

4. **List barriers, as related to the above outlined goals, and actions taken to address these barriers.**

The symptoms of his depression, PTSD and anger are his biggest barriers. So is his cognitive deficits as well. Whatever medical problem he is having at this time is another barrier because this really makes him incapacitated for many hours in the mornings and his physical symptoms; vomiting, pain in his stomach can ruin his whole day.

5. **List changes in goals, as will be noted in the Detailed Plan for the next six months, for this service.**

An Addendum will be completed to incorporate 210 ongoing PBIS annual hrs; plus 2 CTM's. The Addendum will also withdraw ILST at this time at Brian's request.

A-3811

NEW YORK STATE DEPARTMENT OF HEATLH
Division of Home and Community Based Services

Participant Signature: _____ Date: _____

Provider Signature: _____ Date: _____

Service Coordinator Signature: _____ Date: _____

C 4.2     November 11, 2016          Page 4 of 4

A-3812

## TBI Waiver Program
### Individual Service Report
#### (To Be Completed by the Provider of the Service)

**Please check one**    CIC    ☐HCSS    ☐ILST    X PBIS    ☐Respite
☐Sub. Abuse Prog.    ☐Struct. Day Prog

Participant: Brian Pfail

Waiver Provider: Don O'Donnell, MPS

Provider Agency: North Shore TBI Services, Inc.    Phone: 917-921-1485

Date waiver service was first provided: September, 2018

Current frequency and hours of services: 10 assessment hours

Proposed frequency and hours for the next reporting period: 240 annual

## Justification for waiver service

*1. List specific goals, as listed in the individual's Detailed Plan, for this service for the past six months.*

> Brian continues to be reliably available for sessions, cordial and receptive to this provider and an active participant in the PBIS process. The target behaviors identified within the Behavior Plan are as follows:

TARGET BEHAVIORS/GOALS:

1. **Displays of Aggression:** Brian will develop appropriate ways of expressing his frustration, anger, and anxieties without resort to physical expression of anger.

2. **Isolation:** Brian will find community-based activities that might prevent boredom and promote self-esteem.

3. **Grief:** Brian will successfully grieve the sudden loss of his brother a year ago and the gradual, but steady, loss of his father's cognitive abilities and the personality changes wrought by his father's Alzheimer's disease.

4. **Poor Self-esteem:** Brian will focus his attention on, and verbally express to others, the positive attributes he possesses.

*2. List progress made on each of the above outlined goals, using measurable outcomes.*

GRIX    595

A-3813

*Describe any functional skills gains made by the individual during the past reporting period.*

Progress has been minimal as Brian is only starting PBIS with undersigned.

**Goal 1**: Brian continues to do well with physical anger control since Functional Behavior Analysis was completed approximately two years ago. He still expresses a good deal of simmering anger towards Police and other authority figures during sessions (one year).
**Goal 2**: Brian has recently moved to Ronkonkoma in Suffolk County and as yet has no ties to the community nor established friends. During sessions he complains of boredom and loneness (one year).
**Goal 3**: Brian had suddenly lost his brother a year ago to a drug overdose. He continues to express missing his brother, whom he describes as a "close friend" and expresses anger at the Police who have not arrested the person who gave his brother the drugs resulting in his death. He also alternately complains about, and laments, his father's diminishing abilities secondary to a recent diagnosis of Alzheimer Disease (one year).
**Goal 4**: Brian frequently questions his abilities as well as having questions about his own mental stability (one year).

3. *Describe compensatory strategies and/or specific interventions utilized to help participant in obtaining the above outlined goals.*

1. PBIS will discuss with Brian his anger at police and others, challenging his irrational beliefs regarding police, etc. and practicing anger management techniques with him. Brian will develop an understanding of the benefit of learning and utilizing anger management and assertion strategies, as provided by the PBIS, in an effort to refrain from negative or destructive behaviors.
2. PBIS will observe Brian's behavior in routine, day to day interactions and circumstances, both within his home and in the community. PBIS will utilize role-play scenarios and Cognitive Behavior Therapy to help Brian develop alternate responses to challenging situations.
3. PBIS will utilize impulse control strategies to interrupt Brian's attempts at impulsive responding and will engage Brian in evaluation of problematic situations, problem-solving and planning effective solutions for attaining satisfactory results.
4. Brian will regularly take his prescribed psychiatric medications. PBIS will accompany Brian to psychiatric appointment as schedule allows.
5. PBIS will educate Brian regarding symptoms and treatment of mental illness. That mental illnesses are common, caused by real physical, brain dysfunction, and are not the result of poor personal character will be emphasized.
6. PBIS will help Brian be able to recognize when he is becoming frustrated or agitated by becoming more self-familiar with his physiological and verbal responses to stress.
7. PBIS will review with Brian the stages of grief, helping him to understand his feelings vis a vis the physical loss of his brother and the psychological loss of his father.
8. PBIS will challenge any negative assumptions Fred holds regarding himself and verbally reinforce all realistic, positive self-statements he makes.

4. *List barriers, as related to the above outlined goals, and actions taken to address these*

A-3814

*barriers.*

Brian's case is a complex one as symptoms of seizure disorder, PTSD, psychosis, and, diminished executive function, and personality disordered behavior are intertwined, and might all be attributed to his series of head injuries or might each be causing another. Serial head injuries and long series of ECT may contribute to cognitive dysfunction.

*5. List changes in goals, as will be noted in the Detailed Plan for the next six months, for this service.*

It is recommended that the hours of PBIS service initially be 240 annual, as indicated in the PBIS assessment report.

Participant Signature: _____     Date: _____

Provider Signature: _____     Date: _____

Service Coordinator Signature: _____     Date: _____

A-3815

New York State Department of Health
Division of Home and Community Based Services

Home and Community-Based Medicaid Waiver For
**Individuals with Traumatic Brain Injury (HCBS/TBI)**

**Addendum to Existing Service Plan**

## I.   Identification

Name: Brian Pfail                                      Medicaid #: FB12854F

Date of Birth ███████████                        Address: █████████████

Date of Onset: 2007

Age at Onset: 17yrs                                    Cty. Of Fiscal Responsibility: Suffolk

Diagnosis: TBI, Anxiety, Depression, PTSD            Medicare #: 3KG5XJ4QR77
2 Suicidal ideations attempts, Hx. Epilepsy,
Urinary retention, AC Osteomyelitis, Impulse
Control Disorder, multiple psychiatric hospitalization,
and Cognitive Impairments.

SS #:077765512                                        Other Insurance: N/A

---

**Individuals who participated in developing the Interim Service Plan**

| Name | Relationship | Phone # |
|---|---|---|
| Brian Pfall | Waiver Participant | 631 |
| Denise Galloway | Service Coordinator | 631 698-0148 |
| | | |

**Service Coordinator: Denise Galloway**
**Agency: Letitia Agada Services**
**Address: 479 Middle Country Road, Coram NY 11727**

**Phone #: 631 698-0148**

Date of Submission of Addendum to the Service Plan:_____3/29/19_____.
Dates of Last Approved Service Plan
        From____9/17/18____to____9/17/19_____.
Date of Decision:_____9/11/18_____

DOH  C4.3   July 2009                     GRIX Page 1 of 5                     598

A-3816

New York State Department of Health
Division of Home and Community Based Services

II.    **Summary of Request for Addendum to Existing Service Plan .** Please describe in detail all significant functional and/or psycho-social changes that have occurred since the writing of the current Service Plan which are the basis for this addendum. Include the reasons that the Service Plan needs to be amended, and the specific goals of each HCBS/TBI Waiver service being requested.

Brian Pfail is a 30yr old male who is diagnosed with TBI, (concussive syndrome) s/p assault; Cognitive Impairments; Anxiety; Depression; PTSD; Epilepsy; AC Osteomyelitis; urinary retention; Impulse Control Disorder; 2 attempted suicidal attempts and multiple psychiatric hospitalizations.

Service Coordinator is requesting amendment of Brian's service plan to withdraw ILST at Brian's request at this time. He wants to see if he can manage on his own from this point on and additionally; Service Coordinator is seeking to incorporate PBIS ongoing hours.

Based on the completion of his PBIS Assessment, the PBIS noted, " PBIS will focus upon the areas of anger management, gentle reality testing of his distorted cognitions, and remediation of diminished initiative and inability to follow through on plans, tasks or activities. Lack of initiative might be related to level of depression but is also likely the result of frontal brain injury. Anger outbursts are triggered by a sense that Brian is not be paid sufficient recognition and can also be triggered by Brian's misunderstanding and misinterpretation of what is being said to him. Brian presently has another therapist and some coordination between PBIS and this therapist would be useful.

Given the significant psychiatric and behavioral concerns, and Brian's historical criminal and legal involvement, coupled with his current good receptivity to treatment, it is suggested that 240 annual hours of PBIS, split into two weekly sessions, be provided to Brian."

## MEDICAID STATE PLAN SERVICES

| Type | Provider | Effective Date | Frequency & Duration (e.g. 1 time per month) | Annual Amount of Units | Rate | Total Annual Cost** |
|------|----------|----------------|----------------------------------------------|------------------------|------|---------------------|
|      |          |                |                                              |                        |      |                     |
|      |          |                |                                              |                        |      |                     |
|      |          |                |                                              |                        |      |                     |
|      |          |                |                                              |                        |      |                     |
|      |          |                |                                              |                        |      |                     |

**NOTE: Total Cost should represent Projected Annual Total Cost of the Medicaid State Plan Service

PROJECTED TOTAL ANNUAL COST OF MEDICAID STATE PLAN SERVICES: _____0_____

OLD COST: _____

DIFFERENCE: _____

DOH C4.3   July 2009                    Page 3 of 5

Case: 25-3129, 04/30/2026, DktEntry: 63.2, Page 78 of 119

A-3817

GRIX

Case: 25-3129, 04/30/2026, DktEntry: 63.2, Page 79 of 119

New York State Department of Health
Division of Home and Community Based Services

## HCBS/TBI WAIVER SERVICES

| Type | Provider | Effective Date | Frequency & Duration (2 hrs., 3X per week) | Annual Amount of Units | Rate | Total Cost ** |
|---|---|---|---|---|---|---|
| Service Coordination | Letitia Agada Services 479 Middle Country Rd. Coram, NY 11727 | | Once a month | 12 | Initial $699.39 Ongoing $512.11 | $6,844.71 |
| Independent Living Skills Training | Letitia Agada Services 479 Middle Country Rd. Coram, NY 11727 | | 4Hrs per week | 0 | 46.82 | $0 |
| CIC | North Shore TBI PO Box 422 Greenlawn, NY 11740 917 921-1485 | | 2 hrs per week- weekly hrs. | 106 | $93.64 | $9,925.84 |
| PBIS | North Shore TBI PO Box 422 Greenlawn, NY 11740 917 921-1485 | | | 240 | $70.24 | 16,857.60 |

PROJECTED TOTAL ANNUAL COST OF HCBS/TBI WAIVER SERVICES: _____ 33,628.15 _____

OLD COST: _____ 27,305.15 _____

DIFFERENCE: _____ 6,323 _____

PROJECTED TOTAL ANNUAL COST OF ALL MEDICAID SERVICES: _____ 0 _____

OLD COST: _____

DIFFERENCE: _____

A-3818

GRIX

DOH  C4.3   July 2009                    Page 4 of 5

## A-3819

New York State Department of Health
### Division of Home and Community Based Services

**Signatures of Individuals Participating in the Development of the Addendum to the Existing Service Plan**

**Waiver Participant**_____ **Date:** _____

**Advocate/Representative**_____ **Date:** _____
(When applicable)

**Service Coordinator**_____ **Date:** _____

**Service Coordinator** _____ **Date:** _____
**Supervisor**

**Regional Resource Development Specialist**

( )    the information provided in this Interim Service Plan documents that the Waivers Participant's health and welfare is being maintained and the he/she is not at risk for nursing home placement:

( )    the information provided in this Interim Service Plan raises serious concerns about the Waiver Participant's health and welfare. A Revised Service Plan must be submitted to clarify concerns about he waiver participants' ability to remain in the community.

Signature_____

Print Name_____

Title_____

Date_____

A-3820

**From:** Maureen Grix <neurog@aol.com>
**To:** dgalloway42001 <dgalloway42001@yahoo.com>
**Subject:** Re: Brian
**Date:** Mon, Feb 19, 2018 5:14 pm
**Attachments:** Brian Pfail - TBI Waiver Assessment Form.pdf (1777K)

Hi Denise,

Attached is the completed NYS Dept. of Health TBI Waiver - Clinical Assessment Form you requested. If you need anything further, please let me know.

Sincerely,
Dr. Grix

THE INFORMATION AND MATERIAL CONTAINED IN THIS E-MAIL ARE INTENDED ONLY FOR THE USE OF THE RECIPEINT NAMED ABOVE. PERSONS RESPONSIBLE FOR DELIVERING THIS COMMUNICATION TO THE INTENDED RECIPIENT ARE INSTRUCTED NOT TO DISCLOSE, COPY OR DISTRIBUTE THIS COMMUNICATION AND ARE NOT AUTHORIZED TO TAKE ANY ACTION WITH RESPECT TO IT OTHER THAN TO ASSURE ITS PROPER DELIVERY TO THE PERSON TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE RECIPIENT NAMED ABOVE, THEN YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, AND IT IS REQUESTED THAT YOU NOTIFY DR. MAUREEN GRIX, 516-746-3691 IMMEDIATELY BY TELEPHONE TO ARRANGE FOR ITS PROPER RETURN.

THIS E-MAIL CONTAINS PROTECTED HEALTH INFORMATION PROTECTED BY FEDERAL (HIPAA) AND NEW YORK STATE PRIVACY AND CONFIDENTIALITY LAWS AND REGULATIONS. THIS IS STRICTLY CONFIDENTIAL MATERIAL AND IS THE INFORMATION OF ONLY THE PERSON OR ENTITY TO WHOM IT IS ADDRESSED. NO RESPONSIBILITY CAN BE ACCEPTED IF IT IS MADE AVAILABLE TO ANY OTHER PERSON OR ENTITY. FEDERAL AND NEW YORK STATE LAWS AND REGULATIONS PROHIBIT YOU FROM MAKING ANY FURTHER DISCLOSURE OF THIS INFORMATION UNLESS FURTHER DISCLOSURE IS EXPRESSLY PERMITTED BY WRITTEN AUTHORIZATION OF THE PERSON TO WHOM IT PERTAINS, OR IS OTHERWISE PERMITTED BY LAW. RE-DISCLOSURE IN VIOLATION OF APPLICABLE LAWS AND REGULATIONS MAY RESULT IN A FINE OR JAIL SENTENCE OR BOTH. IN CERTAIN INSTANCES, A GENERAL AUTHORIZATION FOR THE RELEASE OF HEALTH INFORMATION IS NOT SUFFICIENT AUTHORIZATION FOR DISCLOSURE.

-----Original Message-----
From: Denise Galloway <dgalloway42001@yahoo.com>
To: Maureen Grix <neurog@aol.com>
Sent: Fri, Jan 26, 2018 11:43 am
Subject: Brian

Hello Dr. Grix,

Happy New Year! I hope you are well.
I am still in the process of Brian's TBI re-enrollment and has run into a problem. He did not score on the Universal Assessment System (UAS) and I am not sure how that happened. The UAS is the document that Medicaid requires from the State, which shows that each individual is eligible for the program. When he was in the program, the assessment was done via a Patient Review Instrument (PRI) and SCREEN and he always scored on that. He had also scored during that same level of care assessment (that's what it's called) when it was completed before his acceptance at Brain Tree, so this was a surprise. Anyway, the Department of Health has an alternate route for re-assessment and I am pursuing that for

GRIX                                                                                          603

**A-3821**

him. That alternate route includes an a clinical assessment by one of his doctors. I feel that you know him the best and I have attached a copy of the assessment so you can tell me if you can complete. There is a small list of clinicians who they say are appropriate to complete it. Please let me know.

A-3822

## New York State Department of Health
### Traumatic Brain Injury Waiver - Clinical Assessment Form

Applicant Name _PFAIL, BRIAN J._ header filled in by RRDC _____
(Surname, Given, Middle Initial)

Date of Birth ████████
(must be between 18-64 YOA on initial application)

Applicant Address ████████████████████████

Medicaid ID# _____

Date of Assessment _02/19/2018_

Referral Source _____

Phone ████████████

Clinical Practitioner _GRIX_ _MAUREEN_ _CLAIRE_
(As it appears on your NYS license: Surname 1st)

NYS License # _014284_

**Profession (check those as appropriate):**

[ ] Specialist in TBI disability &/or cognitive deficit examinations; [ ] Primary Care Physician; [ ] Physical & Medical Rehabilitation Specialist; [ ] Neurologist; [ ]Psychiatrist; [X] doctorate level Neuropsychologist.

This Clinical Assessment Recommendation Form is submitted as an alternative to the submission of a full written narrative report. This form is used to assist the New York State Department of Health in determining if an individual qualifies for the Traumatic Brain Injury Waiver program. It is to be completed by a qualified NYS licensed clinician based on their objective clinical findings and professional clinical opinion. Please complete this form based on your most recent assessment and knowledge of the individual's clinical condition, and make a recommendation as to the individual's nursing facility level of care (NFLOC). Your professional recommendation will assist the New York State Department of Health in determining the individual's eligibility for the Traumatic Brain Injury Waiver.

Please indicate the items used to complete this form (check all that apply):

[ ] Patient's past medical records
[X] Patient's past TBI- specific assessments: _____

[ ] A history and physical exam conducted at the time this form was completed
[X] Other: _BEHAVIORAL OBSERVATIONS DURING INDIVIDUAL THERAPY SESSIONS_

**A.** Please indicate all the patient's ICD9CM/ICD10CM diagnosis codes that relate to his/her brain injury:
_S06.2x9S_ _E028I_ _F33.2_ _____ _____ _____

**B.** Please indicate all the patient's signs and symptoms that relate to his/her brain injury:

[ ] Headache
[ ] Significant malaise
[ ] Sensory changes/loss
[ ] Seizures (uncontrolled)
[ ] Autonomic dysfunction (heat intolerance, hyperhidrosis, orthostatic hypotension)
[ ] Spasticity/paresis

[ ] Dizziness/vertigo/ataxia
[ ] Blurred/double vision/blindness
[ ] Speech/swallowing issues(eg. aphasia)
[ ] Bowel/bladder incontinence

[ ] Profound sleep disturbance
[ ] Balance/locomotion difficulty
[ ] Hearing loss/tinnitus
[ ] Light/sound hypersensitivity

[X] Memory impairment ( [X] short, [X] long-term )  [X] Decreased/limited attention span
[X] Executive functioning problems: *(circle as many as present)* (difficulty concentrating) (slowed thinking) (poor) (decision making) low problem solving skills (flawed judgement) loss of spontaneity, excessive distractibility.
[X] Other physical or behavioral finding: _ANGER MANAGEMENT DIFFICULTIES_
Other_____

Please indicate all the patient's comorbid conditions that relate to his/her brain injury:

[ ] Drug or [ ] Alcohol dependence (please indicate which)
[ ] Other medical condition(s) requiring complicated or difficult to administer drug treatment regimens (please indicate medical conditions): _____

[X] Other behavioral health or DSM-5 condition(s) (please indicate the behavioral health/DSM-5 condition(s)):
_POST TRAUMATIC STRESS DISORDER F43.10_
_INSOMNIA DISORDER G47.00_

GRIX

605

A-3823

**C.** Please indicate below all the patient's objective physical and behavioral assessment findings that relate to his/her brain injury (for example, physical exam findings, neurocognitive assessment findings, or the finding of any other assessments that relate to the patient's brain injury).

NEUROCOGNITIVE ASSESSMENT FINDINGS - EVALUATION CONDUCTED IN SEPTEMBER 2017; DECREASED ABILITIES + IMPAIRED PERFORMANCE ACROSS MEASURES OF ATTENTION/WORKING MEMORY, LEARNING + MEMORY + SPEED OF INFORMATION PROCESSING. MEASURE OF FINE MOTOR SPEED - IMPAIRED.

**D.** To the best of your clinical knowledge of the patient's condition:

| | | |
|---|---|---|
| Has the individual shown evidence of significant cognitive decline? | [X] Y | [ ] N |
| Has the individual shown progressive cognitive decline? | [ ] Y | [X] N |
| Is there demonstrated decline documented by standardized neuropsychological testing? | [X] Y | [ ] N |
| Does the cognitive deficit interfere with the applicant's daily living activities? | [X] Y | [ ] N |
| Is there evidence to support the individual meets the DSM-V definition for TBI? | [X] Y | [ ] N |

Based on your clinical assessment, knowledge of the patient, and the information you mentioned on this form, in your clinical opinion, does the individual require nursing facility level of care?   [ ] Y   [X] N

HOWEVER PATIENT DOES REQUIRE ONGOING PSYCHIATRIC + PSYCHOLOGICAL TREATMENT FOR HIS (TBI) RELATED DIAGNOSES + OTHER BEHAVIORAL HEALTH CONDITIONS. PATIENT ALSO REQUIRES ASSISTANCE WITH MANAGEMENT OF MEDICATIONS + PAYING BILLS.

_Maureen C. Grix, PhD_ NYS Licensed Practitioner          2/19/18
Signature                                                   Date

**Major Neurocognitive Disorder (taken from the DSM-5 criteria for Major Neurocognitive Disorder)**
http://dsm.psychiatryonline.org/doi/full/10.1176/appi.books.9780890425596.dsm17#CIHEIIIC

### Diagnostic Criteria

A. <u>Evidence of significant cognitive decline</u> from a previous level of performance in one or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-motor, or social cognition) based on:

   1. <u>Concern</u> of the individual, a knowledgeable informant, or the clinician that there has been a significant decline in cognitive function; and

   2. A substantial <u>impairment in cognitive performance</u>, preferably documented by standardized neuropsychological testing or, in its absence, another quantified clinical assessment.

B. The cognitive deficits <u>interfere with independence in everyday activities</u> (i.e., at a minimum, requiring assistance with complex instrumental activities of daily living such as paying bills or managing medications).

C. The cognitive deficits do not occur exclusively in the context of a delirium.

D. The cognitive deficits are not better explained by another mental disorder (e.g., major depressive disorder, schizophrenia).

A-3824

## New York State Department of Health
## Traumatic Brain Injury Waiver - Clinical Assessment Form

Applicant Name _PFAIL, BRIAN J._ _ _ header filled in by RRDC _ _ _ _ _ _ _ _ _ _ _   Date of Birth
(Surname, Given, Middle Initial)   (must be between 18-64 TDA on initial application)

Applicant Address

Medicaid ID# _ _ _ _ _ _ _ _   Date of Assessment _03/19/2018_

Referral Source _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _   Phone

Clinical Practitioner _GRIX_ _MAUREEN_ _CLAIRE_ _   NYS License # _014284_
(As it appears on your NYS license: Surname 1st)

**Profession (check those as appropriate):**
[ ] Specialist in TBI disability &/or cognitive deficit examinations; [ ] Primary Care Physician; [ ] Physical & Medical Rehabilitation Specialist; [ ] Neurologist; [ ]Psychiatrist; [X] doctorate level Neuropsychologist.

This Clinical Assessment Recommendation Form is submitted as an alternative to the submission of a full written narrative report. This form is used to assist the New York State Department of Health in determining if an individual qualifies for the Traumatic Brain Injury Waiver program. It is to be completed by a qualified NYS licensed clinician based on their objective clinical findings and professional clinical opinion. Please complete this form based on your most recent assessment and knowledge of the individual's clinical condition, and make a recommendation as to the individual's nursing facility level of care (NFLOC). Your professional recommendation will assist the New York State Department of Health in determining the individual's eligibility for the Traumatic Brain Injury Waiver.

Please indicate the items used to complete this form (check all that apply):
[ ] Patient's past medical records
[X] Patient's past TBI- specific assessments: _____

[ ] A history and physical exam conducted at the time this form was completed
[X] Other: _BEHAVIORAL OBSERVATIONS DURING INDIVIDUAL THERAPY SESSIONS_

A. Please indicate all the patient's ICD9CM/ICD10CM diagnosis codes that relate to his/her brain injury:
_S06.2x9S_ _ _ _   _F02.81_  _F33.2_ _ _ _ _   _ _ _ _ _ _   _ _ _ _ _ _

B. Please indicate all the patient's signs and symptoms that relate to his/her brain injury:
[ ] Headache          [ ] Dizziness/vertigo/ataxia          [ ] Profound sleep disturbance
[ ] Significant malaise    [ ] Blurred/double vision/blindness    [ ] Balance/locomotion difficulty
[ ] Sensory changes/loss   [ ] Speech/swallowing issues(eg. aphasia) [ ] Hearing loss/tinnitus
[ ] Seizures (uncontrolled)  [ ] Bowel/bladder incontinence      [ ] Light/sound hypersensitivity
[ ] Autonomic dysfunction (heat intolerance, hyperhidrosis, orthostatic hypotension)
[ ] Spasticity/paresis
[X] Memory impairment ( [X] short, [X] long-term )   [X] Decreased/limited attention span
[X] Executive functioning problems: *(circle as many as present)* (difficulty concentrating) (slowed thinking) (poor decision making) low problem solving skills, (flawed judgement) loss of spontaneity, excessive distractibility.
[X] Other physical or behavioral finding: _ANGER MANAGEMENT DIFFICULTIES_
Other_____

Please indicate all the patient's comorbid conditions that relate to his/her brain injury:
[ ] Drug or [ ] Alcohol dependence (please indicate which)
[ ] Other medical condition(s) requiring complicated or difficult to administer drug treatment regimens (please indicate medical conditions): _____

[X] Other behavioral health or DSM-5 condition(s) (please indicate the behavioral health/DSM-5 condition(s)):
_POST TRAUMATIC STRESS DISORDER F43.10_
_INSOMNIA DISORDER G47.00_

GRIX                                                    607

A-3825

**C.** Please indicate below all the patient's objective physical and behavioral assessment findings that relate to his/her brain injury (for example, physical exam findings, neurocognitive assessment findings, or the finding of any other assessments that relate to the patient's brain injury).

NEUROCOGNITIVE ASSESSMENT FINDINGS - EVALUATION CONDUCTED IN SEPTEMBER 2017; DECREASED ABILITIES + IMPAIRED PERFORMANCE ACROSS MEASURES OF ATTENTION/WORKING MEMORY, LEARNING + MEMORY + SPEED OF INFORMATION PROCESSING; MEASURE OF FINE MOTOR SPEED - IMPAIRED.

**D.** To the best of your clinical knowledge of the patient's condition:

| | |
|---|---|
| Has the individual shown evidence of significant cognitive decline? | [X] Y  [ ] N |
| Has the individual shown progressive cognitive decline? | [ ] Y  [X] N |
| Is there demonstrated decline documented by standardized neuropsychological testing? | [X] Y  [ ] N |
| Does the cognitive deficit interfere with the applicant's daily living activities? | [X] Y  [ ] N |
| Is there evidence to support the individual meets the DSM-V definition for TBI? | [X] Y  [ ] N |

Based on your clinical assessment, knowledge of the patient, and the information you mentioned on this form, in your clinical opinion, does the individual require nursing facility level of care?  [ ] Y  [X] N

HOWEVER PATIENT DOES REQUIRE ONGOING PSYCHIATRIC + PSYCHOLOGICAL TREATMENT FOR HIS TBI RELATED DIAGNOSES + OTHER BEHAVIORAL HEALTH CONDITIONS PATIENT ALSO REQUIRES ASSISTANCE WITH MANAGEMENT OF MEDICATIONS + PAYING BILLS.

_Maureen C. Grix, PhD_ NYS Licensed Practitioner     2/19/18
Signature                                                   Date

**Major Neurocognitive Disorder (taken from the DSM-5 criteria for Major Neurocognitive Disorder)**
http://dsm.psychiatryonline.org/doi/full/10.1176/appi.books.9780890425596.dsm17#CIHEIIIC

### Diagnostic Criteria

A. Evidence of significant cognitive decline from a previous level of performance in one or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-motor, or social cognition) based on:

1. Concern of the individual, a knowledgeable informant, or the clinician that there has been a significant decline in cognitive function; and

2. A substantial impairment in cognitive performance, preferably documented by standardized neuropsychological testing or, in its absence, another quantified clinical assessment.

B. The cognitive deficits interfere with independence in everyday activities (i.e., at a minimum, requiring assistance with complex instrumental activities of daily living such as paying bills or managing medications).

C. The cognitive deficits do not occur exclusively in the context of a delirium.

D. The cognitive deficits are not better explained by another mental disorder (e.g., major depressive disorder, schizophrenia).

A-3826

From: Denise Galloway <dgalloway42001@yahoo.com>
To: Maureen Grix <NeuroG@aol.com>
Subject: Re: Brian
Date: Tue, Feb 6, 2018 10:03 pm

Hello Dr. Grix,

Thanks for getting back to me. You can call me at 631 988-4167.

Denise

On Feb 6, 2018, at 10:06 AM, Maureen Grix <NeuroG@aol.com> wrote:

Hi Denise,

So sorry I haven't gotten back to you sooner but I have been exceptionally busy. I will be able to fill out the form for you this coming weekend and will return it to you then. I have tried to call you but the number I have for you does not seem to be correct - 516-939-7995. If this isn't correct please give me your new number. Thanks Denise and hope you are well.

Sincerely,
Dr. Grix

Sent from my iPhone

On Jan 26, 2018, at 11:43 AM, Denise Galloway <dgalloway42001@yahoo.com> wrote:

Hello Dr. Grix,

Happy New Year! I hope you are well.
I am still in the process of Brian's TBI re-enrollment and has run into a problem. He did not score on the Universal Assessment System (UAS) and I am not sure how that happened. The UAS is the document that Medicaid requires from the State, which shows that each individual is eligible for the program. When he was in the program, the assessment was done via a Patient Review Instrument (PRI) and SCREEN and he always scored on that. He had also scored during that same level of care assessment (that's what it's called) when it was completed before his acceptance at Brain Tree, so this was a surprise. Anyway, the Department of Health has an alternate route for re-assessment and I am pursuing that for him. That alternate route includes an a clinical assessment by one of his doctors. I feel that you know him the best and I have attached a copy of the assessment so you can tell me if you can complete. There is a small list of clinicians who they say are appropriate to complete it. Please let me know.

GRIX                                                                609

A-3827

&lt;TBI Clinical Assessment Form 12-28-17 (002).docx&gt;

GRIX 610

A-3828

From: brian.j.pfail ▓▓▓▓▓▓▓▓▓▓
To: Maureen Grix <NeuroG@aol.com>
Subject: RE: Fwd: Patient Authorization Form Attached
Date: Thu, Mar 5, 2020 5:13 pm
Attachments: 2020-03-05_141130.pdf (932K), Lices.pdf (301K)

**From:** Maureen Grix
**Sent:** Sunday, March 1, 2020 2:54 PM
**To:** Brian Pfail
**Subject:** Fwd: Patient Authorization Form Attached

Hi Brian - you probably forgot to send me the signed and dated attached form for Dr. Weingarten. Please sign and date it effective 2/10/20, scan it and rerun to me via email or mail it to me via snail mail.

Thanks,

Dr. Grix

Sent from my iPhone

Begin forwarded message:

> **From:** NeuroG@aol.com
> **Date:** February 10, 2020 at 11:18:29 AM EST
> **To:** brian.j.pfail@gmail.com
> **Subject: Patient Authorization Form Attached**
>
> Hi Brian,
>
> Please list Dr. Weingarten on the attached form, sign and date it today and return to me. If you can't scan it right now send me a picture via text and then scan it when you can and send it back to me.
>
> Sincerely,
>
> Dr. Grix

GRIX                                                                                           611

A-3829

THE INFORMATION AND MATERIAL CONTAINED IN THIS E-MAIL ARE INTENDED ONLY FOR THE USE OF THE RECIPIENT NAMED ABOVE. PERSONS RESPONSIBLE FOR DELIVERING THIS COMMUNICATION TO THE INTENDED RECIPIENT ARE INSTRUCTED NOT TO DISCLOSE, COPY OR DISTRIBUTE THIS COMMUNICATION AND ARE NOT AUTHORIZED TO TAKE ANY ACTION WITH RESPECT TO IT OTHER THAN TO ASSURE ITS PROPER DELIVERY TO THE PERSON TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE RECIPIENT NAMED ABOVE, THEN YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, AND IT IS REQUESTED THAT YOU NOTIFY DR. MAUREEN GRIX, 516-746-3691 IMMEDIATELY BY TELEPHONE TO ARRANGE FOR ITS PROPER RETURN.

THIS E-MAIL CONTAINS PROTECTED HEALTH INFORMATION PROTECTED BY FEDERAL (HIPAA) AND NEW YORK STATE PRIVACY AND CONFIDENTIALITY LAWS AND REGULATIONS. THIS IS STRICTLY CONFIDENTIAL MATERIAL AND IS THE INFORMATION OF ONLY THE PERSON OR ENTITY TO WHOM IT IS ADDRESSED. NO RESPONSIBILITY CAN BE ACCEPTED IF IT IS MADE AVAILABLE TO ANY OTHER PERSON OR ENTITY. FEDERAL AND NEW YORK STATE LAWS AND REGULATIONS PROHIBIT YOU FROM MAKING ANY FURTHER DISCLOSURE OF THIS INFORMATION UNLESS FURTHER DISCLOSURE IS EXPRESSLY PERMITTED BY WRITTEN AUTHORIZATION OF THE PERSON TO WHOM IT PERTAINS, OR IS OTHERWISE PERMITTED BY LAW. RE-DISCLOSURE IN VIOLATION OF APPLICABLE LAWS AND REGULATIONS MAY RESULT IN A FINE OR JAIL SENTENCE OR BOTH. IN CERTAIN INSTANCES, A GENERAL AUTHORIZATION FOR THE RELEASE OF HEALTH INFORMATION IS NOT SUFFICIENT AUTHORIZATION FOR DISCLOSURE.

A-3830

*Maureen C. Grix, Ph.D.*
*16 Cardinal Court*
*Glen Cove, NY 11542*
*516-746-3691*

**Patient Authorization**

In addition to my referring provider (Name:_____) and insurer (which may be Medicare, No-Fault, Workers' Compensation or other third party re-imburser), this is authorization for Dr. Maureen C. Grix to speak with the following individuals to discuss issues related to my treatment:

1. Name _Dr. Alexander Weingarten_
   Address _17 Ethen Way, Syosset, NY 11791_
   Telephone: _(516) 495-2956_

2. Name_____
   Address_____
   Telephone:_____

3. Name_____
   Address_____
   Telephone:_____

4. Name_____
   Address_____
   Telephone:_____

5. Name_____
   Address_____
   Telephone:_____

Signature: _____

Printed Name: _Brian J. Pfail_

Address: ████████████

Telephon █████████████

Date: _____



A-3832

From: Maureen Grix <NeuroG@aol.com>
To: Brian Pfail ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
Subject: Fwd: Patient Authorization Form Attached
Date: Sun, Mar 1, 2020 2:54 pm
Attachments: Patient Authorization - 16 Cardinal Court Address.pdf (248K)

Hi Brian - you probably forgot to send me the signed and dated attached form for Dr. Weingarten. Please sign and date it effective 2/10/20, scan it and rerun to me via email or mail it to me via snail mail.
Thanks,
Dr. Grix

Sent from my iPhone

Begin forwarded message:

**From:** NeuroG@aol.com
**Date:** February 10, 2020 at 11:18:29 AM EST
**To** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
**Subject: Patient Authorization Form Attached**

Hi Brian,

Please list Dr. Weingarten on the attached form, sign and date it today and return to me. If you can't scan it right now send me a picture via text and then scan it when you can and send it back to me.

Sincerely,
Dr. Grix

THE INFORMATION AND MATERIAL CONTAINED IN THIS E-MAIL ARE INTENDED ONLY FOR THE USE OF THE RECIPIENT NAMED ABOVE. PERSONS RESPONSIBLE FOR DELIVERING THIS COMMUNICATION TO THE INTENDED RECIPIENT ARE INSTRUCTED NOT TO DISCLOSE, COPY OR DISTRIBUTE THIS COMMUNICATION AND ARE NOT AUTHORIZED TO TAKE ANY ACTION WITH RESPECT TO IT OTHER THAN TO ASSURE ITS PROPER DELIVERY TO THE PERSON TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE RECIPIENT NAMED ABOVE, THEN YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, AND IT IS REQUESTED THAT YOU NOTIFY DR. MAUREEN GRIX, 516-746-3691 IMMEDIATELY BY TELEPHONE TO ARRANGE FOR ITS PROPER RETURN.

THIS E-MAIL CONTAINS PROTECTED HEALTH INFORMATION PROTECTED BY FEDERAL (HIPAA) AND NEW YORK STATE PRIVACY AND CONFIDENTIALITY LAWS AND REGULATIONS. THIS IS STRICTLY CONFIDENTIAL MATERIAL AND IS THE INFORMATION OF ONLY THE PERSON OR ENTITY TO WHOM IT IS ADDRESSED. NO RESPONSIBILITY CAN BE ACCEPTED IF IT IS MADE AVAILABLE TO ANY OTHER PERSON OR ENTITY. FEDERAL AND NEW YORK STATE LAWS AND REGULATIONS PROHIBIT YOU FROM MAKING ANY FURTHER DISCLOSURE OF THIS INFORMATION UNLESS FURTHER DISCLOSURE IS EXPRESSLY PERMITTED BY WRITTEN AUTHORIZATION OF THE PERSON TO WHOM IT PERTAINS, OR IS OTHERWISE PERMITTED BY LAW. RE-DISCLOSURE IN VIOLATION OF APPLICABLE LAWS AND REGULATIONS MAY RESULT IN

A-3833

A FINE OR JAIL SENTENCE OR BOTH. IN CERTAIN INSTANCES, A GENERAL
AUTHORIZATION FOR THE RELEASE OF HEALTH INFORMATION IS NOT SUFFICIENT
AUTHORIZATION FOR DISCLOSURE.

GRIX                                                    616

A-3834

*Maureen C. Grix, Ph.D.*
*16 Cardinal Court*
*Glen Cove, NY 11542*
*516-746-3691*

**Patient Authorization**

In addition to my referring provider (Name:_____) and insurer (which may be Medicare, No-Fault, Workers' Compensation or other third party re-imburser), this is authorization for Dr. Maureen C. Grix to speak with the following individuals to discuss issues related to my treatment:

1.  Name_____
    Address_____
    Telephone:_____

2.  Name_____
    Address_____
    Telephone:_____

3.  Name_____
    Address_____
    Telephone:_____

4.  Name_____
    Address_____
    Telephone:_____

5.  Name_____
    Address_____
    Telephone:_____

Signature:_____

Printed Name: _____

Address:_____

Telephone:_____

Date:_____

GRIX                                                        617

A-3835

*Maureen C. Grix, Ph.D.*
*16 Cardinal Court*
*Glen Cove, NY 11542*
*516-746-3691*

### Patient Authorization

In addition to my referring provider (Name:_____) and insurer (which may be Medicare, No-Fault, Workers' Compensation or other third party re-imburser), this is authorization for Dr. Maureen C. Grix to speak with the following individuals to discuss issues related to my treatment:

1. Name _Dr. Alexander Weingarten_
   Address _The Glen Way, Sea..., NY ..._
   Telephone: _..._

2. Name_____
   Address_____
   Telephone:_____

3. Name_____
   Address_____
   Telephone:_____

4. Name_____
   Address_____
   Telephone:_____

5. Name_____
   Address_____
   Telephone:_____

Signature: _____

Printed Name: _Brian J. Flax_

Address: ███████████

Telephone: ███████████

Date: _____



# NEW YORK STATE

## DRIVER LICENSE

ID

PFAIL

BRIAN, J

Sex M    Height 6'-00"    Eyes BLU

DOB

Expires **09/25/2026**

E NONE

R NONE

Issued **09/19/2018**

GRIX                                                    619

A-3836

**A-3837**

From: neurog <neurog@aol.com>
To: brian.j.pfail ████████████████
Subject: Patient Authorization Form Attached
Date: Mon, Feb 10, 2020 11:18 am
Attachments: Patient Authorization - 16 Cardinal Court Address.pdf (248K)

Hi Brian,

Please list Dr. Weingarten on the attached form, sign and date it today and return to me. If you can't scan it right now send me a picture via text and then scan it when you can and send it back to me.

Sincerely,
Dr. Grix

THE INFORMATION AND MATERIAL CONTAINED IN THIS E-MAIL ARE INTENDED ONLY FOR THE USE OF THE RECIPIENT NAMED ABOVE. PERSONS RESPONSIBLE FOR DELIVERING THIS COMMUNICATION TO THE INTENDED RECIPIENT ARE INSTRUCTED NOT TO DISCLOSE, COPY OR DISTRIBUTE THIS COMMUNICATION AND ARE NOT AUTHORIZED TO TAKE ANY ACTION WITH RESPECT TO IT OTHER THAN TO ASSURE ITS PROPER DELIVERY TO THE PERSON TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE RECIPIENT NAMED ABOVE, THEN YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, AND IT IS REQUESTED THAT YOU NOTIFY DR. MAUREEN GRIX, 516-746-3691 IMMEDIATELY BY TELEPHONE TO ARRANGE FOR ITS PROPER RETURN.

THIS E-MAIL CONTAINS PROTECTED HEALTH INFORMATION PROTECTED BY FEDERAL (HIPAA) AND NEW YORK STATE PRIVACY AND CONFIDENTIALITY LAWS AND REGULATIONS. THIS IS STRICTLY CONFIDENTIAL MATERIAL AND IS THE INFORMATION OF ONLY THE PERSON OR ENTITY TO WHOM IT IS ADDRESSED. NO RESPONSIBILITY CAN BE ACCEPTED IF IT IS MADE AVAILABLE TO ANY OTHER PERSON OR ENTITY. FEDERAL AND NEW YORK STATE LAWS AND REGULATIONS PROHIBIT YOU FROM MAKING ANY FURTHER DISCLOSURE OF THIS INFORMATION UNLESS FURTHER DISCLOSURE IS EXPRESSLY PERMITTED BY WRITTEN AUTHORIZATION OF THE PERSON TO WHOM IT PERTAINS, OR IS OTHERWISE PERMITTED BY LAW. RE-DISCLOSURE IN VIOLATION OF APPLICABLE LAWS AND REGULATIONS MAY RESULT IN A FINE OR JAIL SENTENCE OR BOTH. IN CERTAIN INSTANCES, A GENERAL AUTHORIZATION FOR THE RELEASE OF HEALTH INFORMATION IS NOT SUFFICIENT AUTHORIZATION FOR DISCLOSURE.

A-3838

*Maureen C. Grix, Ph.D.*
*16 Cardinal Court*
*Glen Cove, NY 11542*
*516-746-3691*

**Patient Authorization**

In addition to my referring provider (Name:_____) and insurer (which may be Medicare, No-Fault, Workers' Compensation or other third party re-imburser), this is authorization for Dr. Maureen C. Grix to speak with the following individuals to discuss issues related to my treatment:

1. Name_____
   Address_____
   Telephone:_____

2. Name_____
   Address_____
   Telephone:_____

3. Name_____
   Address_____
   Telephone:_____

4. Name_____
   Address_____
   Telephone:_____

5. Name_____
   Address_____
   Telephone:_____

Signature:_____

Printed Name:_____

Address:_____

Telephone:_____

Date:_____

GRIX                                                                 621

A-3839

From: neurog <neurog@aol.com>
To: brian.j.pfal██████████████
Subject: Letter for Dr. Weingarten
Date: Mon, Feb 10, 2020 11:27 am
Attachments: Brian Pfall - Letter to Dr  Weingarten 2 10 20.pdf (406K)

---

Hi Brian,

Attached is the letter for Dr. Weingarten.  Any questions or problems, let me know.

Sincerely,
Dr. Grix

THE INFORMATION AND MATERIAL CONTAINED IN THIS E-MAIL ARE INTENDED ONLY FOR THE USE OF THE RECIPIENT NAMED ABOVE.  PERSONS RESPONSIBLE FOR DELIVERING THIS COMMUNICATION TO THE INTENDED RECIPIENT ARE INSTRUCTED NOT TO DISCLOSE, COPY OR DISTRIBUTE THIS COMMUNICATION AND ARE NOT AUTHORIZED TO TAKE ANY ACTION WITH RESPECT TO IT OTHER THAN TO ASSURE ITS PROPER DELIVERY TO THE PERSON TO WHOM IT IS ADDRESSED.  IF YOU ARE NOT THE RECIPIENT NAMED ABOVE, THEN YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, AND IT IS REQUESTED THAT YOU NOTIFY DR. MAUREEN GRIX, 516-746-3691 IMMEDIATELY BY TELEPHONE TO ARRANGE FOR ITS PROPER RETURN.

THIS E-MAIL CONTAINS PROTECTED HEALTH INFORMATION PROTECTED BY FEDERAL (HIPAA) AND NEW YORK STATE PRIVACY AND CONFIDENTIALITY LAWS AND REGULATIONS.  THIS IS STRICTLY CONFIDENTIAL MATERIAL AND IS THE INFORMATION OF ONLY THE PERSON OR ENTITY TO WHOM IT IS ADDRESSED.  NO RESPONSIBILITY CAN BE ACCEPTED IF IT IS MADE AVAILABLE TO ANY OTHER PERSON OR ENTITY.  FEDERAL AND NEW YORK STATE LAWS AND REGULATIONS PROHIBIT YOU FROM MAKING ANY FURTHER DISCLOSURE OF THIS INFORMATION UNLESS FURTHER DISCLOSURE IS EXPRESSLY PERMITTED BY WRITTEN AUTHORIZATION OF THE PERSON TO WHOM IT PERTAINS, OR IS OTHERWISE PERMITTED BY LAW.  RE-DISCLOSURE IN VIOLATION OF APPLICABLE LAWS AND REGULATIONS MAY RESULT IN A FINE OR JAIL SENTENCE OR BOTH.  IN CERTAIN INSTANCES, A GENERAL AUTHORIZATION FOR THE RELEASE OF HEALTH INFORMATION IS NOT SUFFICIENT AUTHORIZATION FOR DISCLOSURE.

A-3840

*Maureen C. Grix, Ph.D.*
LICENSED PSYCHOLOGIST

16 CARDINAL COURT
GLEN COVE, NEW YORK 11542

FEDERAL TAX ID #20-3123410
NYS LICENSE #014284

516-746-3691
FAX 516-801-3426

February 10, 2020

Alexander Weingarten, M.D.
2001 Marcus Avenue
New Hyde Park, NY 11042

RE: Brian Pfail

Dear Dr. Weingarten:

Brian Pfail has been in treatment with me since October 2, 2012. His current diagnoses are:

1. Diffuse Traumatic Brain Injury, with loss of consciousness of unspecified duration, sequel (S06.2x9S).
2. Major neurocognitive impairment due to TBI, with behavioral disturbance (F02.81)
3. Major depressive disorder, recurrent, severe, without psychotic features (F33.2)
4. Post-Traumatic Stress Disorder (F43.10)

Mr. Pfail has been suffering from both psychiatric and psychosocial sequelae of head injury since he was the victim of an assault in April 2007. He sustained a second head injury in 2014 which has also contributed to the sequelae with which he has been dealing. His symptoms are of an organic etiology combined with reactive symptoms to his injuries.

Mr. Pfail has also been suffering from Paruresis (Shy Bladder Syndrome) since childhood but it has been exacerbated since his second traumatic brain injury in 2014. There are three main triggers: 1) lack of privacy, 2) who is in or near the restroom when attempting to urinate and 3) emotions such as anxiety, fear or a sense of being pressured. It is known to be a very specific problem when there is a requirement to submit a urine sample. As such, please include this information in your records and advise your staff so that Mr. Pfail will not be made to feel any more uncomfortable than he already does regarding this problem.

Continued...

GRIX 623

A-3841

Thank you for your help regarding this matter. If you have any questions please feel free to call me.

Very truly yours,

*Maureen C. Grix*

Maureen C. Grix, Ph.D.
Clinical Neuropsychologist
Psychodynamic Psychotherapist

A-3842

## Telemedicine Informed Consent Form

I _BRIAN J. PFAIL_ , hereby consent to engaging in telemedicine with Maureen C. Grix, PhD, as part of my psychotherapy. I understand that "telemedicine" includes the practice of health care delivery, diagnosis, consultation, treatment, transfer of medical/mental health data, and education using interactive video, audio, or data communications.

I understand that I have the following rights with respect to telemedicine:

(1) I have the right to withhold or withdraw consent at any time without affecting my right to future care or treatment nor risking the loss or withdrawal of any program benefits to which I would otherwise be entitled.

(2) The laws that protect the confidentiality of my medical/mental health information also apply to telemedicine. As such, I understand that the information disclosed by me during the course of my therapy is generally confidential. However, there are both mandatory and permissive exceptions to confidentiality, including, but not limited to reporting child, elder, and dependent adult abuse; expressed threats of violence towards myself or an ascertainable victim; and where I make my mental or emotional state an issue in a legal proceeding.

(3) I understand that there are risks and consequences from telemedicine, including, but not limited to, the possibility, despite reasonable efforts on the part of my psychotherapist, that:
   a. the transmission of my medical information could be disrupted or distorted by technical failures
   b. the transmission of my medical information could be interrupted by unauthorized persons
   c. the electronic storage of my medical information could be accessed by unauthorized persons
   In addition, I understand that telemedicine based services and care may not be as complete as face-to-face services. I also understand that if my psychotherapist believes I would be better served by another form of psychotherapeutic services (e.g. face-to-face services) I will be referred to a psychotherapist who can provide such services in my area. Finally, I understand that there are potential risks and benefits associated with any form of psychotherapy, and that despite my efforts and the efforts of my psychotherapist, my condition may not be improved, and in some cases may even get worse.

(4) I understand that I may benefit from telemedicine, but that results cannot be guaranteed or assured.

(5) I understand that I have a right to access my medical/mental health information and copies of my records in accordance with the Health Insurance Portability and Accountability Act (HIPAA) and New York law.

I have read and understand the information provided above. I have discussed it with my psychotherapist, and all of my questions have been answered to my satisfaction.

_____
Signature

_2/26/19_
Date

GRIX                                                                 625

A-3843

**MAUREEN C. GRIX, Ph.D.**
**GARDEN CITY MEDICAL CENTER**
**520 FRANKLIN AVE. SUITE 211**
**GARDEN CITY, NY 11530**

516-746-3691

### Patient Authorization

In addition to my referring provider (name: _____ ) and insurer (which may be Medicare, No-Fault, Workers' Compensation or other third party re-imburser), this is authorization for Dr. Maureen Grix to speak with the following individuals to discuss issues related to my treatment:

1. Name _____GAD KLEIN, PhD_____
   Address _____
   Telephone: ____516 - 642 - 0191____

2. Name _____
   Address _____
   Telephone _____

3. Name _____
   Address _____
   Telephone _____

4. Name _____
   Address _____
   Telephone _____

5. Name _____
   Address _____
   Telephone _____

Signature: _____

Name: _____

Address: _____

Telephone: _____

Date: __7/18/18__

GRIX                                                                626

A-3844

**MAUREEN C. GRIX, Ph.D.**
**GARDEN CITY MEDICAL CENTER**
**520 FRANKLIN AVE. SUITE 211**
**GARDEN CITY, NY 11530**

516-746-3691

Patient Authorization

In addition to my referring provider (name: _____ ) and insurer (which may be Medicare, No-Fault, Workers' Compensation or other third party re-imburser), this is authorization for Dr. Maureen Grix to speak with the following individuals to discuss issues related to my treatment:

1. Name _Denise Galloway, Case Manager_
   Address _TBI Waiver Program_
   Telephone: _____

2. Name _Dr. Angulo_                                B.P.
   Address _Zucker Hillside / LIJ_
   Telephone _____ 3/2/16

3. Name _Fred Brewington  B.P  1/4/2017_
   Address _____
   Telephone _____

4. Name _Gregory Gunyan - M.D._
   Address _516 - 663 - 4965_
   Telephone _B.P. 3/9/17  2691_

5. Name _D. Lani Mc Elguin, MA, LMFT_
   Address _____
   Telephone _516 - 513 - 8354  B.P 1/24/18_

6. Officer Gurten,
   P.O.
   BI  3/13/18
   _____

7. Gail Compton,
   LMHC, CASAC
   B.P. 4/12/18

Signature: _____

Name: _____

Address: _____

Telephone: _____

Date: _4/13/18_

GRIX                                        627

A-3845

JUN-8-2015  10:14  FROM:DP          5167391544          TO:2807754          P.1/1
05/27/2015  08:26  5152949057          MAUREEN C.GRIX, PH.D          PAGE  02/02

FAX  280-7754

**MAUREEN C. GRIX, PH.D.**
**GARDEN CITY MEDICAL CENTER**
**620 FRANKLIN AVE. SUITE 211**
**GARDEN CITY, NY 11530**

516-746-3691

### Patient Authorization

In addition to my referring provider (name: _United HEALHCARE/OXFORD_) and insurer (which may be Medicare, No-Fault, Workers' Compensation or other third party re-imburser), this is authorization for Dr. Maureen Grix to speak with the following individuals to discuss issues related to my treatment:

1. Name _Ijeoma Njoku, MD_
   Address _7559 263rd St, Glen Oaks, NY 11004_
   Telephone: _718-470-8070_

2. Name _Jennifer Vitale, LCSW_
   Address _7559 263rd St, Glen Oaks, NY 11004_
   Telephone _718-470-8070_

3. Name _Icca Mandel, Ph.D_   MANDEL
   Address _7559 263rd St, Glen Oaks, NY 11004_
   Telephone _718-470-8688_

4. Name _Felice Borer, LCSW_
   Address _7559 263rd St, Glen Oaks, NY 11004_
   Telephone _718-470-8688_

5. Name _Melissa Acevedo, MD_
   Address _LIJ_                                    D.1.
   Telephone _718-470-8070_                         7/15/15

6. Edward Redmond,
              LCSW
       LIJ

Tel #:

_[signature]_
11/25/15

Signature: _[signature]_

Name: _Brian J. Pearl_

Address: _35 Roxbury Rd, Garden City NY 11530_

Telephone: _516-739-3252_

Date: _6/7/15_

A-3846

OCT-26-2012 09:27 FROM:DP          5167391544          TO:2949057          P.1/1
10/25/2012  23:45   5162949057          MAUREEN C. GRIX, PH.D          PAGE  82

**MAUREEN C. GRIX, Ph.D.**
**GARDEN CITY MEDICAL CENTER**
**930 FRANKLIN AVE. SUITE 211**
**GARDEN CITY, NY 11530**

10/26/12

516-746-3691

### Patient Authorization

In addition to my referring provider (name: _____ ) and insurer (which may be Medicare, No-Fault, Workers' Compensation or other third party re-imburser), this is authorization for Dr. Maureen Grix to speak with the following individuals to discuss issues related to my treatment:

1. Name _Dr. Gupta_
   Address _____
   Telephone: _____

2. Name _Dr. Klein_
   Address _____
   Telephone _____

3. Name _Dr. Michael Christofferson_ *
   Address _____
   Telephone _____

   Professor
4. Name _Susan Puno_          12/4/12 B.P.
   Address _Adelphi University_
   Telephone _____

5. Name _Ronald M. Pfail_          1/15/13 B.P.
   Address _35 Roxbury Road, Garden City NY 11530_
   Telephone _516-033-5268_

6. NAME _Eileen T. Pfail_  B.P.   Signature: _____
                              4/30/13
   ADDRESS _____          Name: _Brian J. Pfail_
   Telephone _516-445-0082 (c)_  Address: _35 Roxbury Road_

7. NAME _DR. STEVEN RUBIN_ BP.   Telephone: _516-739-3252_
                              4/30/13
   ADDRESS _ADELPHI UNIVERSITY_  Date: _10/2/12_
   Telephone _____

8. NAME _DR. LOUIS TEITELBAUM_          5/8/13

GRIX          629

A-3847

TRANSMISSION VERIFICATION REPORT

TIME : 10/25/2012 23:45

```
DATE,TIME          10/25 23:45
FAX NO./NAME       7391544
DURATION           00:00:42
PAGE(S)            02
RESULT             OK
MODE               STANDARD
                   ECM
```

A-3848

FAX COVER LETTER

MAUREEN C. GRIX, Ph.D.
GARDEN CITY MEDICAL CENTER
820 FRANKLIN AVE. SUITE 211
GARDEN CITY, NY 11530

FROM (NAME AND ADDRESS): _____

TELEPHONE: ▮▮▮▮▮▮▮ FAX: _516 - 294 - 9057_

PLEASE DELIVER THE ATTACHED TO:

NAME: _BRIAN PFAIL_  FAX NUMBER: _516- 039- 1544_
FROM: _____  TOTAL NUMBER OF PAGES: _2_
(including Fax Letter)

TIME SENT: _11:45 PM_  DATE: _10/25/12_

MESSAGE: _Brian- Please add your Professor's name to the attached PATIENT AUTHORIZATION FORM at #3. Sign + date it at #3 also + fax back to me at the fax # above. Any questions, please call. Dr. Grix_

IF YOU HAVE ANY PROBLEMS IN RECEIVING THE ATTACHED, PLEASE CONTACT
_DR. GRIX_  AT _516 - 046 - 3691_

## CONFIDENTIALITY NOTICE

The information and material contained in this fax message are intended only for the use of the recipient named above. Persons responsible for delivering this communication to the intended recipient are instructed not to disclose, copy or distribute this communication and are not authorized to take any action with respect to it other than to assure its proper delivery to the person to whom it is addressed. If you are not the recipient named above, then you have received this communication in error, and it is requested that you notify _DR. GRIX_ _516 - 046 - 3691_ immediately by telephone to arrange for its proper return.

This fax contains protected health information and has been disclosed to you from records protected by Federal (HIPAA) and New York State privacy and confidentiality laws and regulations. This is strictly confidential material and is for the information of only the person or entity to whom it is addressed. No responsibility can be accepted if it is made available to any other person or entity. Federal and New York State laws and regulations prohibit you from making any further disclosure of this information unless further disclosure is expressly permitted by the written authorization of the person to whom it pertains, or is otherwise permitted by law. Re-disclosure in violation of applicable laws and regulations may result in a fine or jail sentence or both. In certain instances, a general authorization for the release of health information is not sufficient authorization for further disclosure.

E

A-3849

OCT-26-2012 09:26 FROM:DP                5167391544          TO:2949057              P.1/1

**MAUREEN C. GRIX, Ph.D.**
**GARDEN CITY MEDICAL CENTER**
**530 FRANKLIN AVE. SUITE 211**
**GARDEN CITY, NY 11530**

10/26/12

516-746-3691

## Patient Authorization

In addition to my referring provider (name: _____ ) and insurer (which may be Medicare, No-Fault, Workers' Compensation or other third party re-imburser), this is authorization for Dr. Maureen Grix to speak with the following individuals to discuss issues related to my treatment:

1. Name  Dr. Gupta
   Address _____
   Telephone: _____

2. Name  Dr. Klein
   Address _____
   Telephone _____

3. Name  Dr. Michael Christofferson
   Address _____
   Telephone _____

4. Name  _____
   Address _____
   Telephone _____

5. Name  _____
   Address _____
   Telephone _____

Signature: _____

Name:  Brian J. Hall

Address:  35 Roxbury Road

Telephone:  516 - 739 - 3252

Date:  10/2/12

GRIX                                                        632

A-3850

**MAUREEN C. GRIX, Ph.D.**
**GARDEN CITY MEDICAL CENTER**
**820 FRANKLIN AVE. SUITE 211**
**GARDEN CITY, NY 11530**

516-746-3691

**Patient Authorization**

In addition to my referring provider (name: _____) and insurer (which may be Medicare, No-Fault, Workers' Compensation or other third party re-imburser), this is authorization for Dr. Maureen Grix to speak with the following individuals to discuss issues related to my treatment:

1. Name _Dr. Gupta_
   Address _____
   Telephone: _____

2. Name _Dr. Klein_
   Address _____
   Telephone _____

3. Name _____
   Address _____
   Telephone _____

4. Name _____
   Address _____
   Telephone _____

5. Name _____
   Address _____
   Telephone _____

Signature: _____

Name: _Brian J. Pfail_

Address: _35 Roxbury Road_

Telephone: _516-739-3252_

Date: _10/2/12_

GRIX                                                  633

A-3851

**Maureen C. Grix, Ph.D.**
**520 Franklin Avenue  Suite 211**
**Garden City, New York 11530**
**516-746-3691**

## SIGNATURE ON FILE

✓ I authorize use of this form for all of my insurance submissions.

✓ I authorize the release of information to all my Insurance Companies.

✓ I understand that I am responsible for my bill.

✓ I understand that missed sessions may be billed to me in their entirety and the 24 hour cancellation policy has been discussed with me.

✓ I authorize my doctor to act as my agent in helping me obtain payment from my Insurance Companies.

✓ I authorize payment direct to my doctor.

✓ I permit a copy of this authorization to be used in place of the original.

Name _Brian James Pfail_

Medicare or Insurance Identification # _818878558_

Signature _[signature]_ Date _10/2/12_

GRIX                                                                 634

A-3852

## Transaction Ledger for Brian Pfail

| Date | Amount | Total Charge | Patient | Billable Party | Transaction Type | Method of Payme |
|------|--------|--------------|---------|----------------|------------------|-----------------|
| 10/2/2012 | $200.00 | $200.00 | Brian Pfail | | Session | |
| 10/9/2012 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 10/16/2012 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 10/16/2012 | ($90.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 10/25/2012 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 10/25/2012 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 11/6/2012 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/6/2012 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 11/20/2012 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/27/2012 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/27/2012 | ($60.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 12/4/2012 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 12/4/2012 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 12/11/2012 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 12/11/2012 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 1/2/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 1/2/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 1/8/2013 | $85.00 | $150.00 | Brian Pfail | | Session | |
| 1/15/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 1/15/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 1/23/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 1/23/2013 | ($60.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 1/29/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 1/30/2013 | $175.00 | $175.00 | Brian Pfail | | Session | |
| 2/12/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 2/19/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 2/19/2013 | ($90.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 2/21/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 2/21/2013 | ($15.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 2/26/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 2/27/2013 | ($60.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 2/28/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 3/14/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 3/15/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 3/19/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 3/19/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 3/27/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 3/27/2013 | ($70.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 4/3/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 4/9/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 4/16/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 4/16/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 4/25/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 4/25/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| | $33,776.76 | $43,675.00 | | | | |

A-3853

## Transaction Ledger for Brian Pfail

| Check Number | Type Of Ad | Service | Ins. Amount | Primary Ins. / | Sec. Ins. Amo | Pat. Amount | Write-Off |
|---|---|---|---|---|---|---|---|
| | | 90801, Diagnostic Session | $170.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| | | 90806, Individual Psychotherapy 45 mins. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| | | 90806, Individual Psychotherapy 45 mins. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 3917 | | | $0.00 | $0.00 | $0.00 | ($90.00) | $0.00 |
| | | 90806, Individual Psychotherapy 45 mins. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 3931 | | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | | 90806, Individual Psychotherapy 45 mins. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 3934 | | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | | 90806, Individual Psychotherapy 45 mins. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| | | 90806, Individual Psychotherapy 45 mins. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 3949 | | | $0.00 | $0.00 | $0.00 | ($60.00) | $0.00 |
| | | 90806, Individual Psychotherapy 45 mins. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 3952 | | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | | 90806, Individual Psychotherapy 45 mins. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 3957 | | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 3967 | | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | | 90834, Psychotherapy, 45 Min. | $0.00 | $0.00 | $0.00 | $85.00 | $65.00 |
| | | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 3977 | | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 3981 | | | $0.00 | $0.00 | $0.00 | ($60.00) | $0.00 |
| 3994 | | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | | 90847, Family psytx w/patient | $145.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| | | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| | | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4016 | | | $0.00 | $0.00 | $0.00 | ($90.00) | $0.00 |
| | | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4020 | | | $0.00 | $0.00 | $0.00 | ($15.00) | $0.00 |
| | | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4026 | | | $0.00 | $0.00 | $0.00 | ($60.00) | $0.00 |
| | | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| | | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4038 | | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4043 | | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4059 | | | $0.00 | $0.00 | $0.00 | ($70.00) | $0.00 |
| 4061 | | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| | | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4076 | | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4086 | | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | | | $33,455.03 | $6,467.13 | $9,598.23 | $321.73 | $2,950.00 |

A-3854

## Transaction Ledger for Brian Pfail

| Applied Amou | Session Ref | Status |
|---|---|---|
| $30.00 | GJB | Kept and charged for |
| $30.00 | GJC | Kept and charged for |
| $30.00 | GJD | Kept and charged for |
| ($90.00) | | |
| $30.00 | GKO | Kept and charged for |
| ($30.00) | | |
| $30.00 | GLU | Kept and charged for |
| ($30.00) | | |
| $30.00 | GLV | Kept and charged for |
| $30.00 | GLW | Kept and charged for |
| ($60.00) | | |
| $30.00 | GOU | Kept and charged for |
| ($30.00) | | |
| $30.00 | GOV | Kept and charged for |
| ($30.00) | | |
| $30.00 | GPP | Kept and charged for |
| ($30.00) | | |
| $85.00 | GTL | Broken but charged anyway |
| $30.00 | GTM | Kept and charged for |
| ($30.00) | | |
| $30.00 | GTN | Kept and charged for |
| ($60.00) | | |
| ($30.00) | | |
| $30.00 | GTO | Kept and charged for |
| $30.00 | GWM | Kept and charged for |
| $30.00 | GWN | Kept and charged for |
| ($90.00) | | |
| $30.00 | GWO | Kept and charged for |
| ($15.00) | | |
| $30.00 | GWP | Kept and charged for |
| ($60.00) | | |
| $30.00 | GWQ | Kept and charged for |
| $30.00 | GZH | Kept and charged for |
| ($30.00) | | |
| $30.00 | GZI | Kept and charged for |
| ($30.00) | | |
| $30.00 | GZJ | Kept and charged for |
| ($70.00) | | |
| ($30.00) | | |
| $30.00 | HFI | Kept and charged for |
| $30.00 | HFJ | Kept and charged for |
| ($30.00) | | |
| $30.00 | HFK | Kept and charged for |
| ($30.00) | | |
| $0.00 | | |

GRIX                                            637

A-3855

| Date | ▲ Amount | Total Charge | Patient | Billable Party | Transaction Type | Method of Payme |
|---|---|---|---|---|---|---|
| 4/30/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 4/30/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 5/8/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 5/8/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 5/14/2013 | $175.00 | $175.00 | Brian Pfail | | Session | |
| 5/14/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 5/22/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 5/22/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 6/4/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 6/4/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 6/12/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 6/12/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 6/18/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 6/18/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 6/25/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 6/25/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 7/2/2013 | $0.00 | $0.00 | Brian Pfail | | Session | |
| 7/16/2013 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 7/16/2013 | ($30.00) | | Brian Pfail | Brian Pfail | Payment | Check |
| 9/30/2014 | $200.00 | $200.00 | Brian Pfail | | Session | |
| 10/8/2014 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 10/16/2014 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/7/2014 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/11/2014 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/13/2014 | $175.00 | $175.00 | Brian Pfail | | Session | |
| 11/19/2014 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/22/2014 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/26/2014 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/29/2014 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 12/2/2014 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 7/8/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 7/15/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 7/22/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 7/29/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 8/5/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 8/19/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 8/25/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 9/1/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 9/8/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 9/17/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 9/23/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 10/15/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/5/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/12/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| | $33,776.76 | $43,675.00 | | | | |

GRIX 638

A-3856

| Check Number | Type Of AdService | Ins. Amount | Primary Ins. | Sec. Ins. Amc | Pat. Amount | Write-Off |
|---|---|---|---|---|---|---|
| | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4088 | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4096 | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | 90847, Family psytx w/patient | $145.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4097 | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4104 | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4109 | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4114 | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4115 | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4117 | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $120.00 | $0.00 | $0.00 | $30.00 | $0.00 |
| 4128 | | $0.00 | $0.00 | $0.00 | ($30.00) | $0.00 |
| | 90791, Psych Diagn. Eval w/o Medical Svc | $200.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90847, Family psytx w/patient | $175.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | 90834, Psychotherapy, 45 Min. | $150.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | | $33,455.03 | $6,467.13 | $9,598.23 | $321.73 | $2,950.00 |

GRIX

639

A-3857

| Applied Amou | Session Ref | Status |
| --- | --- | --- |
| $30.00 | HFL | Kept and charged for |
| ($30.00) | | |
| $30.00 | HFM | Kept and charged for |
| ($30.00) | | |
| $30.00 | HFN | Kept and charged for |
| ($30.00) | | |
| $30.00 | HFO | Kept and charged for |
| ($30.00) | | |
| $30.00 | HFP | Kept and charged for |
| ($30.00) | | |
| $30.00 | HHQ | Kept and charged for |
| ($30.00) | | |
| $30.00 | HIU | Kept and charged for |
| ($30.00) | | |
| $30.00 | HKU | Kept and charged for |
| ($30.00) | | |
| $0.00 | HOZ | Canceled but NOT charged |
| $30.00 | HPA | Kept and charged for |
| ($30.00) | | |
| $0.00 | JIF | Kept and charged for |
| $0.00 | JII | Kept and charged for |
| $0.00 | JIJ | Kept and charged for |
| $0.00 | JIK | Kept and charged for |
| $0.00 | JIL | Kept and charged for |
| $0.00 | JIM | Kept and charged for |
| $0.00 | JIN | Kept and charged for |
| $0.00 | JJX | Kept and charged for |
| $0.00 | JIO | Kept and charged for |
| $0.00 | JJY | Kept and charged for |
| $0.00 | JIP | Kept and charged for |
| $0.00 | KFB | Kept and charged for |
| $0.00 | KFC | Kept and charged for |
| $0.00 | KFD | Kept and charged for |
| $0.00 | KFE | Kept and charged for |
| $0.00 | KFF | Kept and charged for |
| $0.00 | KFG | Kept and charged for |
| $0.00 | KFH | Kept and charged for |
| $0.00 | KFI | Kept and charged for |
| $0.00 | KFJ | Kept and charged for |
| $0.00 | KFK | Kept and charged for |
| $0.00 | KGU | Kept and charged for |
| $0.00 | KIM | Kept and charged for |
| $0.00 | KNX | Kept and charged for |
| $0.00 | KNY | Kept and charged for |
| $0.00 | | |

GRIX

640

A-3858

| Date | Amount | Total Charge | Patient | Billable Party | Transaction Type | Method of Payme |
|---|---|---|---|---|---|---|
| 11/18/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/25/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 12/2/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 12/16/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 12/23/2015 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 1/6/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 1/13/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 1/20/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 1/27/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 2/3/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 2/10/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 2/17/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 2/24/2016 | $0.00 | $0.00 | Brian Pfail | | Session | |
| 3/2/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 3/16/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 4/13/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 4/20/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 4/27/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 5/11/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 5/25/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 6/8/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 6/15/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 6/22/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 6/29/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 7/6/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 7/13/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 7/20/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 7/27/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 8/10/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 8/17/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 9/22/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 10/5/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 10/12/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 10/26/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/2/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/9/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/16/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 11/30/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 12/7/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 12/14/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 12/21/2016 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 1/4/2017 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 1/12/2017 | $150.00 | $150.00 | Brian Pfail | | Session | |
| 1/18/2017 | $150.00 | $150.00 | Brian Pfail | | Session | |
| | $33,776.76 | $43,675.00 | | | | |